UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ANTONIO L. GIORDANO, | : | |
| | : | Case No. 1:08-cv-00048-S-LDA |
| Plaintiff | : | Honorable William E. Smith |
| | : | Referral Judge: Honorable Lincoln D. |
| v. | : | Almond |
| | : | |
| MT. ST. FRANCIS ASSOCIATES, L.P., | : | |
| | : | (Formerly Rhode Island Superior Court |
| Defendant | : | P.M. No. P.B. 06-3301) |

---------------------------------------------------------

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| Intervenor-Plaintiff | : |
| | : |
| v. | : |
| | : |
| ANTONIO L. GIORDANO, | : |
| MT. ST. FRANCIS ASSOCIATES, L.P., | : |
| and JOSEPH FERRUCCI, ESQUIRE, as | : |
| Receiver, | : |
| | : |
| Intervenor-Defendants | : |

**BRIEF IN SUPPORT OF UNITED STATES' OBJECTION TO MOTION TO PROVE ADMINISTRATIVE CLAIM**

With the Court's permission granted at the in-chambers status conference held in the above-captioned proceeding on March 5, 2008, the Intervenor-Plaintiff United States of America submits this brief in support of its Objection to Motion to Prove Claim and Motion to Sell Real Estate, filed in the above-captioned proceeding (in state court) on February 7, 2008. Ex. 1 (United States' Objection).

This brief addresses only the Plaintiff's Motion to Prove the Administrative Claim of Antonio L. Giordano, which is set for hearing on March 26, 2008, and not the Receiver's

Petition to Sell Real Estate and Business Assets Free and Clear of Liens, which at this time is not set for hearing. Nonetheless, the United States maintains its objection to the Receiver's Petition.[1]

## STATEMENT OF FACTS

### A. Giordano's Negotiations With ASLC

1. In or about 2006, Plaintiff Antonio Giordano ("Giordano"), Defendant Mount St. Francis Associates, L.P. ("MSF"), and American Senior Living Corporation ("ASLC") were negotiating a potential purchase of MSF's assets by ASLC. Ex. 2 (Motion to Prove Claim), ¶ 1.

2. Ultimately, Giordano agreed with ASLC to structure the sale of MSF's assets as a sale through a receivership proceeding. Ex. 2, ¶ 2. On June 19, 2006, Giordano and MSF entered into an agreement pursuant to which ASLC agreed to a potential acquisition of MSF's assets (the "Nursing Home Agreement"). The agreement provided that: (1) MSF would file a petition for the operation of the healthcare facility located at 4 St. Joseph Street, Woonsocket, Rhode Island, commonly known as "Mt. St. Francis Health Center" (the "MSF Facility"), to be placed into receivership; (2) ASLC would manage the MSF Facility; (3) ASLC could, at its election, offer to purchase the MSF Facility upon the conditions that: (a) ASLC pay the Internal Revenue Service ("IRS") on behalf of MSF "an amount that satisfies any and all taxes, fines, and penalties owed by MSF, Mr. Giordano or John Montecalvo, as past due or pursuant to any court order or lien, as of the date hereof" (the "IRS Liabilities"); (b) ASLC assume a note and mortgage granted by MSF to Suburban Mortgage Associates, Inc.; (c) ASLC assume all

[1] As explained at the in-chambers status conference on March 6, 2008, the United States would be willing to discharge the Mt. St. Francis Facility from its federal tax liens, to facilitate the sale of the Facility, but only on the conditions specified at the status conference.

liabilities of MSF, other than the IRS Liabilities; and (d) ASLC pay certain pre-petition accounts receivable. Ex. 3 (Nursing Home Agreement).

3. On June 21, 2006, Giordano filed a petition in the Rhode Island Superior Court seeking the appointment of a receiver to take over the assets and operations of MSF. Ex. 4 (Receivership Petition).

4. Pursuant to Giordano's petition, the Superior Court appointed Joseph Ferrucci, Esquire, as Receiver, and ASLC has been managing the Facility ever since.

**B. Giordano's Criminal Case**

5. At the same time Giordano was negotiating with ASLC, on June 8, 2006, the United States filed an Information and Plea Agreement in United States District Court. Exs. 5 & 6. The Information charged Giordano with equity skimming in violation of 12 U.S.C. § 1715z-19. The Information alleged that Giordano,[2] as agent, manager, and person in custody, control and possession of three nursing homes, including Mount St. Francis, had diverted $780,539.00 of Housing and Urban Development (HUD) funds meant for the reasonable and necessary expenses of the nursing homes to his own personal use at a time when the mortgage notes were in default and the nursing homes were in a nonsurplus cash position. The Plea Agreement detailed that Giordano agreed to plead guilty to the charge in the Information and to

[2] The Information also charged John Montecalvo, Giordano's business partner.

make restitution to the nursing homes, including $382,700.00 in restitution to the Internal Revenue Service toward payment of employment taxes which Mount St. Francis owed.[3]

6. On June 29, 2006, Giordano pleaded guilty to the Information and on September 15, 2006, the Court sentenced Giordano to a term of imprisonment of thirty months, a term of supervised release of two years, a fine of $100,000.00 and restitution in the amount of $780,539.00. Exs. 8 & 9. Giordano paid his restitution in full and on November 6, 2006, the United States filed a Notice of Satisfaction of Judgment. Ex. 10.

**C. Current Status**

7. On January 28, 2008, ASLC and the Receiver agreed, subject to court approval, for ASLC to purchase the assets of MSF without paying the IRS Liabilities (the "Purchase and Sale Agreement"). Ex. 11 (Purchase and Sale).

8. The Purchase and Sale Agreement provides, among other terms, that (a) ASLC shall assume notes and mortgages granted by MSF to Suburban Mortgage Associates, Inc., now assigned to Midland Loan Services, Inc., in the total amount of approximately $9,300,000.00, (b) ASLC shall forgive and convert to equity purported claims against the receivership for priority administrative operating loans in excess of $600,000, (c) at closing, ASLC shall pay to the receivership estate $900,000 (the "Closing Payment"), and (d) at closing, ASLC shall pay the unpaid fees of the Receiver. Ex. 11, ¶ 5.

[3] On June 21, 2006, the United States filed an Amended Plea Agreement which removed the condition that its agreement with Giordano was contingent upon his co-defendant, Montecalvo, also pleading guilty. Ex. 7.

9. The Purchase and Sale Agreement also provides, among other terms, that ASLC's obligation to make the Closing Payment and to close is conditioned upon receiving a release from Giordano in favor of ASLC of "any claims purportedly arising out of" the Nursing Home Agreement, and upon a court order confirming that the purchase of the assets "shall likewise be free and clear of any and all claims including those under the Agreement." Ex. 11, ¶ 5(iii).

10. On February 11, 2008, the Superior Court permitted the United States to intervene in these proceedings, and on February 13, 2008, the United States removed the case to this Court. Docket # 1.

11. On March 12, 2008, this Court entered an order appointing Joseph P. Ferrucci as the Receiver of MSF, and confirming all previous orders of the Rhode Island Superior Court. Docket # 17.

## GIORDANO'S MOTION TO PROVE ADMINISTRATIVE CLAIM

Upon information and belief, on January 28, 2008, the same day that the Receiver signed the Purchase and Sale Agreement, Giordano filed his Motion to Prove the Administrative Claim of Antonio L. Giordano ("Plaintiff's Motion"). Ex. 2 (Motion to Prove Claim). The motion argues that Giordano should be allowed an administrative claim in the amount of $900,000, conveniently equal to the Closing Price, in exchange for granting ASLC and the Receiver a release of any liability under the Nursing Home Agreement. Ex. 2, ¶¶ 8, 12. Giordano asserts that the release would facilitate ASLC's acquisition of the MSF Facility, which would benefit the receivership estate, thereby making Giordano's administrative claim proper. *See* Ex. 2, ¶ 8, 9, 12. In other words, Giordano argues that his purported administrative claim is a proper cost to the receivership of selling the MSF Facility to ASLC.

Giordano baldly asserts that he would not have filed this receivership action without the provisions of the Nursing Home Agreement requiring ASLC to offer to pay the IRS Obligations, as part of any offer to purchase the MSF Facility. Ex. 2, ¶ 10. In addition, Giordano states that he has fully performed under the Nursing Home Agreement, and that he "has agreed to terminate the Nursing Home Agreement and to require a far smaller payment from ASLC." *See* Ex. 2, ¶¶ 3, 10, 11. Giordano's Motion does not explain any purported legal significance of these additional assertions.

Giordano states that if his administrative claim is approved, the $900,000 Closing Payment will be paid to his "secured creditors," the beneficiaries of which are Giordano's children, in repayment of advances for (1) restitution paid by Giordano to the State of Rhode Island Department of Human Services Medicaid Program; (2) restitution paid by Giordano to the Rhode Island Alliance for Better Long Term Care; (3) fines paid by Giordano to the United States; and (4) debt owed by Giordano to the Rhode Island Depositors Economic Protection Corporation. Ex. 2, ¶ 7.

## ARGUMENT

### A. Applicable Law

The question arises whether federal or Rhode Island law applies in determining whether Giordano has a valid administrative claim in these proceedings. Rule 66 of the Federal Rules of Civil Procedure provides in part that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." With an exception not relevant here, 28 U.S.C. § 959(b) provides that a receiver "appointed in any cause pending in any court of the United States, . . . , shall manage and operate

the property in his possession . . . according to the requirements of the valid laws of the State in which such property is situated, . . . ." Thus, Rhode Island receivership law should apply in determining whether Giordano has an administrative claim.

In determining whether a capital gains tax was an administrative expense under Rhode Island receivership law, however, this Court noted as follows:

> Rhode Island has no statute that sets forth the priority of claims in receivership proceedings. As a result, Rhode Island courts deciding issues in this area frequently look to federal bankruptcy law for guidance. *Leonard Levin Co. v. Star Jewelry Co., Inc.*, 54 R.I. 465 (R.I. 1934).

*United States v. F.D.I.C.*., 899 F. Supp. 50, 54 (D.R.I. 1995). Accordingly, although Rhode Island law is controlling, the propriety of Giordano's purported administrative claim is also informed by federal bankruptcy law.

**B. Currently, Giordano Has No *Claim* Against the Receivership, Let Alone an Administrative Claim**

As an initial matter, the United States notes that at this time, and based on the evidence in the United States' possession, Giordano has no *claim* against the MSF receivership, let alone an administrative claim. Section 101(5) of the Bankruptcy Code, Title 11, United States Code, very broadly defines a claim as any "right to payment." Although this definition is broad, "a claim is distinguishable from an ownership interest in the debtor . . . ." 2-101 Collier on Bankruptcy (15th Ed. Rev.), ¶ 101.05. Giordano has no existing claim against the receivership estate because he has no "right to payment" from the estate, other than as the general partner of MSF.

Giordano cannot plausibly assert an existing claim based on ASLC's breach of the Nursing Home Agreement, because neither MSF nor the Receiver is liable for ASLC's breach. *See* Ex. 3 (Nursing Home Agreement); 75 C.J.S. Receivers § 290 ("A claim, . . . , must be one

against the corporation or person whose property is in receivership.") (citing *Marlin v. Harrison*, 218 Ark. 531 (1951)); Am. Jur. 2d Receivers § 191 ("a claim must be one against the corporation or person whose property is in receivership, or against the receiver."). If anything, ASLC's breach of the Nursing Home Agreement provides MSF and the Receiver with a claim against ASLC for breach of contract, rather than providing any party with a claim against the estate.

Giordano's Motion seems to concede that, rather than being based on an existing claim, the motion is a request for the Court's advance approval, as an administrative claim, of a cost *proposed* to be incurred by the receivership. *See* Ex. 2 (Motion to Prove Claim), ¶¶ 8, 12 ("*If* this administrative claim is approved, Plaintiff *will* release both ASLC and the Receiver from any and all liability, if any, under the Nursing Home Agreement") (emphasis added). Nowhere in Giordano's Motion does Giordano assert that the receivership is currently indebted to him.[4]

The question, then, is whether it would be proper for the Receiver to incur as an administrative expense a $900,000 liability to Giordano, in exchange for Giordano's agreement to release ASLC (and the Receiver, although as just noted, as a matter of law, Giordano clearly has no rights against the Receiver under the Nursing Home Agreement) from any liability under the Nursing Home Agreement.

---

[4] In this respect, Giordano's Motion is analogous to a motion under 11 U.S.C. § 364(b), for a court's permission for a bankruptcy trustee to incur administrative expenses outside the ordinary course of the debtor's business.

**C. A Payment by the Receiver to Giordano, in Exchange for a Release, Would Not Be An Administrative Claim**

In bankruptcy, a payment to Giordano in exchange for a release of liability under the Nursing Home Agreement would be tested for administrative claim status under 11 U.S.C. § 503(b)(1)(A). That section allows as administrative expenses "the actual, necessary costs and expenses of preserving the estate . . . ." Examples of such expenses include "outlays for repairs, upkeep, freight, insuring the value of the property [. . .] [t]he actual and necessary expenditures of the trustee in operating the business of the estate, for storage of property, for rent and for other goods and services incidental to protecting, conserving, maintaining and rehabilitating the estate . . ." 4-503 Collier on Bankruptcy (15th Ed. Rev.), ¶ 503.06[1].

The First Circuit has described a creditor's right to administrative expense priority under 11 U.S.C. § 503(b)(1)(A) as follows:

> The traditional presumption favoring ratable distribution among all holders of unsecured claims counsels strict construction of the Bankruptcy Code provisions governing requests for priority payment of administrative expenses. *See Southern Ry. Co. v. Johnson Bronze Co.*, 758 F.2d 137, 141 (3d Cir. 1985); *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 658 F.2d 1149, 1163 (7th Cir.), *cert. denied*, 455 U.S. 1000 (1981), *cert. denied sub nom.*, *Railway Labor Executives Ass'n. v. Ogilvie*, 455 U.S. 1000, 71 L. Ed. 2d 867, 102 S. Ct. 1632 (1982); *In re Philadelphia Mortgage Trust*, 117 Bankr. 820, 825 (Bankr. E.D. Pa. 1990); *In re Massetti*, 95 Bankr. 360, 363 (Bankr. E.D. Pa. 1989); *In re SMB Holdings, Inc.*, 77 Bankr. 29, 32 (Bankr. W.D. Pa. 1987) (conferral of administrative expense priority where not clearly entitled under the Code dilutes priorities scheme prescribed by Congress). The burden of proving entitlement to priority payment as an administrative expense therefore rests with the party requesting it. *See Woods v. City Nat. Bank & Trust Co.*, 312 U.S. 262, 268, 85 L. Ed. 820, 61 S. Ct. 493 (1941); *In re Patch Graphics*, 58 Bankr. 743, 745 (Bankr. W.D. Wis. 1986).
>
> The Bankruptcy Code permits top priority payment of "actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case," 11 U.S.C. § 503(b)(1)(A), as a means of enabling the debtor estate to acquire the

> requisite postpetition credit with which to preserve itself after the filing of the petition. Preservation of the estate includes protection of the assets of the estate, as well as postpetition operation of the business of the debtor. *See, e.g.*, *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir. 1976); *In re Jar-tran, Inc.*, 732 F.2d 584, 586 (7th Cir. 1984); *In re Pierce Coal & Constr., Inc.*, 65 Bankr. 521, 530 (Bankr. D. W.Va. 1986)
>
> As a general rule, a request for priority payment of an administrative expense pursuant to Bankruptcy Code § 503(a) may qualify if (1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor. *See In re Mammoth Mart, Inc.*, 536 F.2d at 954; *see also Jartran*, 732 F.2d at 587.

*Woburn Associates v. Kahn (In re: Hemingway Transport, Inc.*, 954 F.2d 1, 4-5 (1st Cir. 1992); *accord, Mason v. Official Comm. Of Unsecured Creditors (In re: FBI Distribution Corp.),* 330 F.3d 36, 42 (1st Cir. 2003).[5]

In addition to Giordano bearing the burden of proof in this matter, subject to a strict construction of the administrative expense priority, Giordano's asserted administrative expense is subject to additional scrutiny because he is an insider of MSF. *See, e.g.*, *In re: RJC Industries, Inc. v. Lombardozzi*, 369 B.R. 845, 851 (USBC, Midd. Dist. Penn. 2006) ("Insider transactions are carefully scrutinized"); *In re C.E.N., Inc.*, 86 B.R. 303, 306 (USBC, D. ME 1988) (applying heightened scrutiny in rejecting an insider's administrative claim for advances for expenses); *Pepper v. Litton*, 308 U.S. 295, 306 (1939).

---

[5] The list of types of administrative expense set forth in 11 U.S.C. § 503(b) is not exclusive, and the courts have recognized a narrow type of expense eligible for administrative claim treatment under 11 U.S.C. § 503(a), even though such expenses are not listed in § 503(b). Such expenses, however, are limited to amounts due to persons injured by a debtor-in-possession's operation of a business. *See, Woburn Associates*, 954 F.2d at 5; *Reading Co. v. Brown*, 391 U.S. 471 (1968).

Giordano's refusal to permit ASLC's purchase of the MSF Facility by granting a release under the Nursing Home Agreement, unless he receives the entire $900,000 Closing Payment, certainly doesn't look like an administrative claim - - it looks like a clever attempt by Giordano and ASLC to ensure that neither the United States nor any other creditor of MSF will receive a penny from MSF's receivership, and that the United States will bear the cost of ASLC's breach of the Nursing Home Agreement. More importantly, however, under the foregoing standards, it is not an administrative claim.

First, paying Giordano for a release is not a "necessary" cost of "preserving the estate." "Preservation of the estate includes protection of the assets of the estate, as well as postpetition operation of the business of the debtor." *Woburn Associates*, 954 F.2d at 5. In this receivership, then, preserving the estate means protecting and operating the MSF Facility. The undersigned attorney for the United States is aware of no authority for expanding the administrative expense priority to include the direct costs of *selling* a business, let alone an extraordinary cost of selling a business to *a particular buyer*. The expense proposed by Giordano would only be incurred in a sale to ASLC, and not in a sale to any other buyer. Therefore, even if "preserving the estate" included selling the MSF Facility, paying Giordano for a release is not a "necessary" cost of doing so.

Second, Giordano's purported claim would arise from the Nursing Home Agreement, which was a prepetition transaction, instead of arising from a postpetition transaction with the Receiver, as required for administrative claim status.

Third, as explained at section D, below, Giordano has failed to carry his burden of proving that the alleged consideration supporting his purported claim, namely a release of any claims under the Nursing Home Agreement, would benefit the receivership estate.

Finally, if approved, Giordano's administrative claim would completely undermine the "traditional presumption favoring ratable distribution among unsecured creditors," without promoting the purpose of administrative claim priority, which is to enable an estate to obtain credit from third parties suppliers. The effect would be to favor an insider, based on alleged contract rights obtained through a prepetition contract with a third party, at the expense of all of MSF's actual prepetition creditors.

**D. Even if Some Payment to Giordano for a Release Could Be an Administrative Claim, Its Proper Amount Would Be Much Less Than $900,000**

For the foregoing reasons, as a matter of law, any payment by the Receiver to Giordano, in exchange for Giordano's release of any claims for breach of the Nursing Home Agreement, would not be an administrative claim. Even if such a payment could be an administrative claim, however, it would only be allowable to the extent of the value to the estate of the release. *See Mass. Div. of Employment and Training v. Boston Reg. Med. Ctr., Inc. (In re: Boston Regional Medical Center, Inc.)*, 291 F.3d 111, 124 (1st Cir. 2002) ([a contract to provide services for the debtor-in-possession] "qualifies for priority 'only to the extent that the consideration supporting the claimant's right to payment was both supplied to and beneficial to the debtor-in-possession in the operation of the business.'") (citing *Cramer v. Mammoth Mart. Inc. (In re Mammoth Mart, Inc.)*, 536 F.2d 950, 954 (1st Cir. 1976)).

Determining the value to the receivership estate, if any, of Giordano's proposed release, is a potentially complex factual issue, the resolution of which could require an evidentiary hearing preceded by discovery, perhaps including expert discovery. The United States notes, however, that based on principles of contract law, the value of the release to ASLC, and certainly to the estate, appears to be much less than $900,000, and may even be 0.[6] That is because the Nursing Home Agreement merely gave ASLC an option to offer to purchase the MSF Facility, and did not *require* ASLC to make an offer. ASLC did agree that it would not submit any offer to purchase the MSF Facility other than on the terms set forth in the agreement, and it appears that ASLC has breached this provision. Ex. 3 (Nursing Home Agreement), § 3(c). It is not clear, however, whether Giordano could prove any damages as a result of ASLC's breach. Giordano emphasizes that he relied on the Nursing Home Agreement in filing the receivership petition, but this is a dubious claim given that Giordano asserted under oath in the petition other motives for filing the petition. Ex. 4 (Receivership Petition).

### E. Even if Some Payment to Giordano for a Release Could Be an Administrative Claim, it Could Not Be Paid From the IRS's Secured Claim

Even if Giordano's Motion were granted in whole or in part, Giordano's administrative claim could not be paid from property or rights to property of the estate on which the United States has federal tax liens, for distribution to Giordano's children, because the expense of paying Giordano for a release would confer no direct benefit on the United States. *See*, *United States v. F.D.I.C.*, 899 F. Supp. 50, 55 (D. R.I. 1995) ("Under both federal bankruptcy law and

[6] Giordano offers no explanation as to why his purported claim should be exactly equal to the $900,000 Closing Payment, which is ostensibly the entire value of the MSF Facility after the assumption of certain debts of MSF.

Rhode Island case law, the touchstone for determining whether an operating expense of a receivership may be deducted from the proceeds of the secured creditor's collateral is whether the expense conferred a direct benefit upon the secured creditor"); *South County Sand & Gravel Co., Inc. v. Bituminous Pavers Co.*, 108 R.I. 239, 244-245 (Supreme Court of Rhode Island 1971).

## CONCLUSION

Plaintiff Giordano, MSF's general partner, has no claim in these receivership proceedings. Nonetheless, he argues that he should be entitled to the entire $900,000 Closing Payment, in preference to the United States and other creditors of the receivership estate, based on his refusal to allow ASLC's purchase of the MSF Facility to proceed. This refusal is purportedly based on valuable rights under the Nursing Home Agreement, but on closer inspection, those rights appear spurious. Giordano's asserted administrative claim comes across as an insider's grab for the $900,000 Closing Payment, to the detriment of actual creditors of the estate, and in particular the United States.

Moreover, as a matter of black letter law, not surprisingly, any liability incurred by the estate to Giordano, in exchange for his release of rights under the Nursing Home Agreement, would be about as far from a priority administrative claim as could be. Giordano is an insider, rather than a third party supplier. It is not a necessary cost of maintaining and operating the MSF Facility for the Receiver to incur a liability to Giordano. Furthermore, the genesis of Giordano's purported claim is a prepetition contract with a third party, and not, as required, a postpetition contract with the Receiver.

Even if some payment to Giordano for a release could be an administrative claim, Giordano has failed to carry his burden of proving that the release has *any* value to the estate (or to ASLC for that matter), let alone a value of $900,000. Finally, no portion of Giordano's administrative claim could come out of the United States' secured claim against the estate, because Giordano's release would confer no direct benefit on the United States.[7]

For the reason set forth herein, and in the United States' Objection to Motion to Prove Claim and Motion to Sell Real Estate, Plaintiff's Motion to Prove the Administrative Claim of Antonio L. Giordano should be denied.

ROBERT CLARK CORRENTE
United States Attorney

DULCE DONOVAN
Assistant U. S. Attorney
Chief, Civil Division
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (fax)
Email: dulce.donovan@usdoj.gov

*/s/ James E. Brown*
JAMES E. BROWN
Trial Attorney
U.S. Department of Justice, Tax Division
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6053
Facsimile: (202) 514-5238
Email: James.E.Brown2@usdoj.gov

[7] The United States also notes that, for the reasons given in ¶ 9 of the United States' Objection, any administrative claim of Giordano's in these proceedings should be equitably subordinated, if not otherwise subordinated, to the United States' secured claim against the estate, due to Giordano's wrongful conduct.

**CERTIFICATE OF SERVICE**

I CERTIFY that service of the foregoing BRIEF IN SUPPORT OF UNITED STATES' OBJECTION TO MOTION TO PROVE CLAIM, with Exhibits, has been made on this 12th day of March, 2008, by filing a copy with the Clerk of Court using the CM/ECF system, which should send electronic copies of the filing to the following CM/ECF participants:

Christopher Little, Esq.
Little, Medeiros, Kinder, Bulman
& Whitney, P.C.
72 Pine Street, 5th Floor
Providence, RI 02903

Allan M. Shine, Esq.
Winograd Shine & Zacks
123 Dyer Street
Providence, RI 02903

Douglas A. Giron, Esq.
Schechtman Halperin Savage LLP
1080 Main Street
Pawtucket, RI 02906

Jeffrey Brenner, Esq.
Nixon Peabody LLP
One Citizens Plaza, Ste. 500
Providence, RI 02903

Joseph Ferrucci, Esq.
Ferrucci Russo P.C.
55 Pine Street
Providence, RI 02903

I FURTHER CERTIFY that service of the foregoing BRIEF IN SUPPORT OF UNITED STATES' OBJECTION TO MOTION TO PROVE CLAIM, with Exhibits, has been made on this 12th day of March, 2008, by depositing a copy in the United States mail, first class postage prepaid, addressed to the following:

Edward L. Maggiacomo, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Charles A. Lovell
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

Genevieve M. Martin, Esq.
Assistant Attorney General
150 South Main Street
Providence, RI 02903

Jonathan Savage, Esq.
Schechtman Halperin Savage
1080 Main Street
Pawtucket, RI 02860

Terry Biafore, Sr.
Babcock & Hellwell, Inc.
138 Main Street
Wakefield, RI 02879

Deborah B. Buffi, Esq.
Deputy Chief Legal Counsel
R.I. Department of Human Services
600 New London Ave., BDG 57
Cranston, RI 02920

Marc D. Wallick, Esq.
Wallick & Associates Ltd.
51 Jefferson Boulevard
Warwick, RI 02888

Maureen Hobson, Esq.
R.I. Department of Health
3 Capital Hill, Room 404
Providence, RI 02908

Lisa Daniels-Burgo, Esq.
HUD
121 South Main Street, Ste. 300
Providence, RI 02903

Jane E. Joly
Accounting Manager Client Rep
MMJUA of RI
10 Weybosset Street, Ste. 502
Providence, RI 02903

Division of Taxation
State of Rhode Island
1 Capitol Hill, Ste. 7
Providence, RI 02909

*/s/ James E. Brown*

JAMES E. BROWN
Trial Attorney
U.S. Department of Justice, Tax Division
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6053
Facsimile: (202) 514-5238
Email: James.E.Brown2@usdoj.gov