STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS, SC. | SUPERIOR COURT

GOVERNMENT EXHIBIT 11

ANTONIO L. GIORDANO, Plaintiff

v. P.M. No.: P.B. 06-3301

MT. ST. FRANCIS ASSOCIATES, L.P., Defendant

**REAL ESTATE PURCHASE AND SALE AGREEMENT**

THIS AGREEMENT is made and entered into by and between Joseph P. Ferrucci, in his capacity as RECEIVER of MT. ST. FRANCIS ASSOCIATES, L.P., and not individually, with a mailing address for purposes of this Agreement c/o Ferrucci Russo PC, 55 Pine Street, Providence, Rhode Island 02903 (hereinafter referred to as "Receiver") and American Senior Living Communities I, LLC or its nominee with a mailing address for purposes of this Agreement at 185 Peirce Street, East Greenwich, Rhode Island 02818 (hereinafter referred to as "Buyer").

**WITNESSETH THAT**

1. **PREMISES**:

Receiver agrees to sell and convey to Buyer or Buyer's nominee, and Buyer or Buyer's nominee agrees to purchase, upon the terms and conditions hereinafter set forth, all of Receiver's right, title and interest as said Receiver of MT. ST. FRANCIS ASSOCIATES, L.P. in and to all of the business assets of every kind and description related to Mt. St. Francis Associates, L.P. (the "Defendant"), including, but not limited to: cash, accounts receivable, inventory, prepaids, land, building, building improvements, furniture, fixtures, supplies, machinery, equipment, other movable equipment, licenses and other assets as recorded or unrecorded at the time of closing, wherever located, including, without limitation the assets located at 4 St. Joseph Street, Woonsocket, Rhode Island and the trademark "Mt. St. Francis Health Center," excluding and excepting therefrom the Excluded Assets as defined below (the "Premises"), free and clear of liens, mortgages, encumbrances, claims and interest. Notwithstanding anything to the contrary contained herein, the Receiver's conveyance of the Premises does not include any leased equipment, machinery, or other leased assets, excepting those assets which are subject to a so-called "finance lease," which said assets shall be sold and transferred to Buyer in accordance with this Agreement free and clear of liens, claims and encumbrances, or any assets not owned by Defendant, and the proceeds of any of the foregoing (collectively, the "Excluded Assets"). The Buyer acknowledges that the transfer and conveyance of the Premises does not and shall not constitute a transfer or conveyance of any right, title or interest in the Excluded Assets.

2. **DATE OF THIS AGREEMENT**:

The Date of this Agreement shall be the date on which the Receiver signs this Agreement, as set forth immediately under the Receiver's signature below. The Receiver shall accept and sign this

Agreement within thirty (30) days of his receipt from Buyer. Further, within five (5) days of his acceptance and execution of this Agreement, the Receiver shall provide written notice to the Buyer acknowledging that the Receiver has accepted and executed this Agreement. In the event that the Receiver fails to timely accept and sign this Agreement as required in this paragraph 2, Buyer may, within Buyer's sole discretion, extend the date of acceptance by Receiver or notify the Receiver that this Agreement is null and void, and of no further force or effect.

3. **TITLE AND COURT APPROVAL**:

Conveyance of the Receiver's interest as aforesaid in the Premises shall be made by a Receiver's Deed ("Deed") in customary form, without covenants, warranties or representations of any kind whatsoever, conveying to the Buyer all of the Receiver's right, title and interest as said Receiver in and to the Premises, free and clear of all liens, mortgages, security interests, claims, encumbrances and interests specifically including, but not limited to, any and all statutory liens, judgment liens, claims for municipal real estate or tangible property taxes or other claims of the City of Woonsocket, Rhode Island. The conveyance and transfer of the Premises is expressly made subject to approval of the Providence County Superior Court for the State of Rhode Island in the receivership proceeding pending before that Court as docket number P.B. 06-3301 (the "Court"), after hearing with notice to all interested parties, authorizing and ordering the sale free and clear of all liens, mortgages, security interests, claims, encumbrances and interests, specifically including, but not limited to, any and all statutory liens, claims for municipal real estate or tangible property taxes or other claims of the City of Woonsocket, Rhode Island. The conveyance of the Premises shall be subject to all restrictions, easements and conditions of record, and subject to all applicable zoning and other federal, state and municipal laws and regulations.

Except to the extent to which the Buyer shall notify the Receiver, in writing, within fifteen (15) days after the date of Receiver's formal notification to Buyer of his acceptance of this Agreement, as required in Paragraph 2, herein, of any respect in which title to the Premises does not conform to the foregoing provisions, the Buyer shall be deemed to have waived any objections on account thereof, and the Buyer shall be obligated to accept title to the Premises subject to any such conditions.

Buyer acknowledges and understands that the consummation of this Agreement is subject to Court approval and that Receiver may be obligated to submit to the Court for its review and consideration any other offers for the Premises received by the Receiver subsequent to this Agreement for a purchase price higher than or on more advantageous terms than that set forth herein for the Court's review and consideration.

Buyer and Receiver hereby acknowledge and agree that Buyer's obligation to purchase the Premises as set forth herein is expressly conditioned upon Receiver obtaining, on or before March 20, 2008, an agreement from the Internal Revenue Service (the "IRS") to discharge or otherwise satisfy or remove at the Closing the IRS liens recorded against the Premises. In the event that the Receiver is unable to obtain the foregoing, then this Agreement, in the sole discretion of Buyer, shall be terminable upon Buyer delivering to the Receiver, on or before April 1, 2008, a written notice of termination. In the event of such termination, this Agreement shall be null and void, and of no further force or effect.

4. **POSSESSION**:

Upon conveyance of title to the Premises, full possession of the Premises shall be delivered to the Buyer in the same condition in which the same are as of the date of this Agreement, reasonable use and wear and damage by fire, the elements or other casualty otherwise covered by insurance excepted.

5. **PURCHASE PRICE**:

The agreed total consideration to be paid or performed by Buyer for the acquisition of all of Defendant's assets shall be as follows:

(i). Buyer shall assume all of the existing indebtedness relating to those promissory notes originally granted by Defendant in favor of Suburban Mortgage Associates, Inc., as assigned to Midland Loan Services, Inc. (the "Notes") totaling approximately NINE MILLION THREE HUNDRED THOUSAND AND 00/100 DOLLARS ($9,300,000.00), which Notes are secured by mortgages on the the Premises. To the extent that the Court may, at any time hereafter, conclude that some or all of the mortgage liens securing said Notes are invalid or should be subordinated to some other debt(s) or claim(s), then Buyer shall make payments on the Notes, when and as same become due and payable, directly to the Receivership Estate.

(ii). Buyer shall forgive, and therefore convert to equity, the liabilities owed to Buyer for priority administrative operating loans made to the Receiver for the period beginning June 21, 2006 up to and including acquisition, totaling as of the date of this Agreement approximately SIX HUNDRED THIRTY-EIGHT THOUSAND TWO HUNDRED SIXTY-NINE AND 49/100 DOLLARS ($638,269.49), plus additional projected priority administrative operating loans from the date of this Agreement through Closing.

(iii). Buyer shall, at Closing, pay to the Receivership Estate the sum of NINE HUNDRED THOUSAND AND 00/100 DOLLARS ($900,000.00)(the "Closing Payment"). Buyer's obligation to make the Closing Payment and to Close is expressly conditioned upon (i) receiving from Plaintiff at the Closing a release in favor of Buyer of any claims purportedly arising out of that certain pre-receivership Agreement (the "Agreement") by and among Buyer, Plaintiff, and Defendant relating to the purchase of Defendant's Assets (a proposed form of which is submitted herewith as Exhibit 1), and (ii) an order of the Court confirming that Buyer's acquisition of Defendant's assets shall likewise be free and clear of any and all claims including those under the Agreement. Buyer acknowledges and agrees that Plaintiff shall not be obligated to deliver said release to Buyer until and unless the Receiver has also negotiated and obtained from Plaintiff at Closing a release of claims, in form and substance satisfactory to the Receiver, in favor of the Receiver. In the event that the Receiver is unable, on or before the Closing, to obtain such release from Plaintiff, then Buyer shall, without any penalty to Buyer, have no obligation to close, and the Receiver shall return to the Buyer the deposit paid hereunder, if any, with interest earned thereon, if any. Buyer agrees not to object to any application by Plaintiff or any other party relating to the Receiver's use of the Closing Payment to pay any claims asserted in the Receivership. The payment of the Closing Payment by Buyer to the Receiver at Closing shall be considered as a contribution of Buyer's equity towards the purchase of the Premises.

(iv). Subject to Court approval, Buyer shall pay the Court-approved and unpaid fees owed to the Receiver as of the date of the Closing. The payment of said unpaid fees by Buyer to the Receiver shall be considered as a contribution of Buyer's equity towards the purchase of the Premises.

6. **THE CLOSING**:

Provided that the Court Order approving the sale is not the subject of an injunction or stay prohibiting consummation of the sale contemplated in this Agreement, the Closing is to be held at Ferrucci Russo P.C., 55 Pine Street, Providence, Rhode Island 02903, as follows:

(a) If the Buyer did not check Box B of Section 21 below, at 10:00 a.m. on the second business day following the twentieth day after entry of the Court Order approving this Agreement; OR

(b) If the Buyer checked Box B of Section 21 below, on the later of (i) the date described in Section 6(a), above, or (ii) the tenth business day following approval by the Rhode Island Department of Health ("RIDOH") of the Buyer's application for transfer of RIDOH Nursing Home License No. LTC00650 issued to the Defendant (the "License"); OR

(c) On such other date as agreed to by the parties.

At the Closing, Buyer shall make any payments required as set forth in Section 5 hereof by certified check or wire transfer.

Notwithstanding the foregoing, if the Closing does not occur on or prior to, June 1, 2008, then the Receiver may, at his option, terminate this Agreement by written notice to the Buyer; provided, however, that, unless he first obtains Court approval after notice and hearing to Buyer, the Receiver shall not terminate this Agreement on or after June 1, 2008, in the event that Buyer has, before that date, filed an application with RIDOH for the transfer of the License and such application remains pending before RIDOH and is diligently being pursued by Buyer. In the event of a termination as provided herein, the Receiver shall return to the Buyer the deposit paid hereunder, if any, with interest earned thereon, if any.

It is agreed and understood that **TIME IS OF THE ESSENCE** of this Agreement.

At Closing, Buyer shall provide Receiver with a copy of the Municipal Lien Certificate or other evidence of payment of taxes reasonably satisfactory to Receiver, and the basis for the computation of all adjustments and other entries on the Settlement Statement. At the Closing the Buyer's net proceeds check shall be delivered to the Receiver and held in escrow pending recording of the Deed, at which time such funds shall be released from escrow. Buyer agrees to record the Deed in the appropriate recording office forthwith after delivery of same. This provision shall be deemed to survive the Closing. Buyer shall notify Receiver forthwith of the recording of the Deed.

7. **ADJUSTMENTS**:

Any and all costs for rents, fuels, water charges, and sewer use charges, if any, relating to the Premises for any period of time prior to this Closing shall be Paid by Buyer at this Closing.

Any assessments constituting a lien on the Premises for any period of time prior to or after the Closing shall be assumed and paid by the Buyer. Buyer hereby agrees to assume and pay when due all taxes and assessments which are allowed as a credit against the Purchase Price. Buyer shall be responsible for payment of all documentary transfer stamps and statutory recordings, fees and costs.

Real estate taxes, tangible property taxes, and fire district taxes assessed upon the Premises for any period of time prior to or after the Closing shall be assumed and paid by the Buyer.

For the avoidance of doubt, the Buyer hereby acknowledges and agrees that the Receiver will not be responsible to pay costs or expenses with respect to the Premises arising prior to the Closing and Buyer hereby agrees to assume and discharge the same.

8. **EXTENSION OF CLOSING**:

If the Receiver shall be unable to give title to Buyer, or to make conveyance, or to deliver possession of the Premises, all as in accordance with this Agreement, or if at the time of the Closing, the Premises does not conform with the provisions of this Agreement, then the Receiver shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the Premises conform to the provisions hereof, as the case may be, in which event the Closing hereunder shall be extended by thirty (30) days. It is understood and agreed that Receiver shall not be under any obligation to attempt to cure by litigation or otherwise any defect which may be found to exist in the title to the Premises or to remove any encumbrances upon the title to the Premises not voluntarily placed thereon by the Receiver subsequent to the date hereof or to correct any violations of subdivision, plat, zoning, building, minimum housing standard regulations or other similar restrictions or regulations. This paragraph is also not intended to apply to any damage to the Premises caused by fire or other casualty, as to which the provision of a Paragraph hereof entitled "10. INSURANCE" shall apply. The Buyer may, however, with the Receiver's consent, elect to waive any such defects and accept such title to the Premises as the Receiver is able to convey, without any warranty as to such conditions and without a reduction of the Purchase Price, and an acceptance of the Deed by the Buyer shall be deemed full performance and discharge of all the obligations of the Receiver under this Agreement.

9. **RECEIVER'S TENDER OF DEED.**

The tender of the Deed by the Receiver and acceptance by Buyer shall be deemed full performance and discharge of every agreement and obligation of the Receiver contained or expressed in this Agreement.

10. **INSURANCE**:

Until delivery of the Deed to Buyer, the buildings on the Premises shall be insured by Receiver against loss by fire, under the same policy as exists at present, and in case of any loss or other casualty in an amount not less than existing as of the date of this Agreement, occurring between the date of this Agreement and the delivery of the Deed., In the event of any such loss or other casualty, Buyer shall remain bound to purchase the Premises, and Receiver agrees to pay over or assign to Buyer upon payment of the remainder of the Purchase Price all sums recovered or recoverable on account of said insurance, plus the deductible amount, if any, unless the Receiver shall have restored the premises to their former condition in which event the proceeds shall be retained by Receiver.

In the event of any loss or casualty occurring after Court approval of this Agreement and prior to delivery of the Deed in an amount in excess of presently existing insurance, the Receiver shall have the option of, but shall have no obligation of, (a) restoring the Premises to the same condition in which they were on the date of this Agreement, reasonable wear and tear excepted; or (b) reducing the Purchase Price by the amount of such damage, as said amount may be agreed to by the parties; or (c) failing such agreement, seek a determination from the Court as to the treatment of such loss or casualty. In the event that Receiver elects not to restore the Premises and not to reduce the Purchase Price as herein provided, then either party may terminate this Agreement. In the event this Agreement is terminated, the Receiver shall refund the Deposit, if any, to the Buyer with interest earned thereon, if any, and all obligations of the parties hereto shall cease and this Agreement shall become null and void, without recourse to either party hereto.

11. **DEFAULT**:

If the Buyer shall default in the performance of Buyer's obligations hereunder, the Receiver shall have the right to resell the Premises without notice to the Buyer and without previously tendering a Deed to the Buyer. Such resale shall not in any way release the Buyer from liability for breach of contract and, in the event of such default, the Receiver shall have the right, whether the Real Estate is resold or not, to retain the Deposit, if any, and any interest earned thereon as liquidated damages, and not as a penalty, or as security for payment by the Buyer of any additional damages to which the Receiver may be entitled by reason of the Buyer's default, as the Receiver may elect, without prejudice to or waiver of any rights to other or further damages or to pursue any other remedy, legal or equitable, which shall accrue to Receiver by reason of Buyer's default.

12. **BROKERS AND AGENTS**:

Receiver and Buyer warrant and represent, each to the other that no real estate broker-initiated or otherwise brought about this transaction. Buyer agrees to indemnify Receiver against, and to hold Receiver harmless from any and all cost, expense or liability based upon or related to a claim for a brokerage commission or finder's fees in connection with the transaction contemplated hereby to the extent such liability shall be based upon arrangements or agreements made or claimed by third parties to have been made by or on behalf of the Buyer and not disclosed in this Agreement.

13. **NOTICES**:

All notices as required in this Agreement must be in writing. All notices shall be conveyed by certified mail or personal delivery. Notice by certified mail will be effective upon sending. Notice by personal delivery will be effective upon delivery to the other party. Notices to the Receiver and the Buyer must be addressed to the addresses that appear in the first paragraph of this Agreement.

**14. BUYER REQUIRED TO COMPLY WITH ZONING:**

Buyers of real estate in the State of Rhode Island are legally obligated to comply with all local real estate ordinances, including, but not limited to, ordinances on the number of related persons who may legally reside in a dwelling, as well as ordinances on the number of dwelling units permitted under the local zoning ordinances.

**15. RADON GAS:**

Radon gas has been determined to exist in the State of Rhode Island. The Buyer acknowledges that the Receiver has no obligation whatsoever to perform any tests for radon, and that such testing, if any, shall be solely at Buyer's expense. The Receiver makes no representation whatsoever concerning the existence or absence of radon in the Premises. The discovery of radon shall in no way relieve the Buyer from its performance and/or obligations under this Agreement.

**16. LEAD POISONING DISCLOSURE:**

The Buyer acknowledges that the Receiver shall have no obligation whatsoever to perform any risk assessments or inspections for lead-based paint hazards within the Premises. Any such inspections or risk assessments shall be done solely at the Buyer's election and expense. Buyer acknowledges that Buyer has been advised that Receiver has no reports or information concerning lead-based hazards within the Premises, and that Receiver makes no representations concerning the existence or absence of lead-based paint within the Premises. The discovery of any lead-based paint hazards shall in no way relieve the Buyer from its performance and/or obligations under this Agreement.

**17. NO ENVIRONMENTAL CONDITION:**

Buyer acknowledges that Buyer may conduct any environmental site assessments or studies of any kind, which Buyer deems advisable and/or necessary, at Buyer's sole expense. However, Buyer expressly acknowledges and agrees that the conveyance contemplated hereunder is not conditioned in any way whatsoever upon the Receiver's conducting or performing any cleanup or remedial action of any kind or nature on the Premises and Buyer agrees to accept the Premises "as is," including all environmental conditions of the Premises.

Buyer shall, prior to conducting any on-site environmental site assessments as the Premises, obtain Receivers written consent. Receiver's consent may be conditioned upon delivery by Receiver of a certificate of liability insurance in such amounts as may be reasonably acceptable to the Receiver, naming the Receiver as an additional insured and named payee.

Buyer hereby agrees to indemnify and hold harmless Receiver from and against any and all claims, charges, losses, costs and other liabilities arising from or in any manner relating to injuries to persons or the Premises in connection with Buyer's environmental site assessment(s). Without in any manner limiting the foregoing, Buyer agrees that it will immediately restore the Premises to the condition it was in, prior to the commencement of Buyer's site assessment(s), including, without limitation, the repair, replacement or restoration of any damage to the Premises.

The provisions of this Section 17, shall survive the termination of this Agreement and/or the delivery of the Deed by the Receiver.

**18. WETLANDS DISCLOSURE:**

All or part of the Premises may have been previously determined by the Rhode Island Department of Environmental Protection to be a wetland, pond, bank, bog, salt marsh, swamp, meadow, or flat as these terms are defined in Chapter 1 of Title 2 of the Rhode Island General Laws. The parties hereto acknowledge that it shall be Buyer's sole responsibility to conduct any independent examination to determine whether the Premises are in an area determined to be a Wetlands pursuant to such statutory provisions.

**19. RESTRICTIONS OR LEGISLATIVE/GOVERNMENTAL ACTION:**

Buyer is responsible for investigating whether there are any restrictions or legislative/governmental actions, present or proposed, which affect or would affect the use of the Premises and Buyer acknowledges that it has not relied on any advice or any representations by Receiver, his employees, attorneys, officers, directors, consultants, agents, or any other representatives of Receiver in this transaction with regard to same.

**20. ACCURATE DISCLOSURE OF SELLING PRICE:**

Except as modified herein, Buyer and Receiver acknowledge that this Agreement accurately reflects the gross sale price as indicated above in this Agreement. Buyer and Receiver understand and agree that this information shall be disclosed to the Internal Revenue Service as required by law.

**21. CONDITIONS:**

A ☐ THE OBLIGATIONS OF THE BUYER HEREUNDER ARE CONDITIONED UPON THE ENTRY OF A COURT ORDER APPROVING THE SALE OF THE PERSONAL PROPERTY OF THE DEFENDANTS TO THE BUYER PURSUANT TO A CERTAIN OFFER TO PURCHASE (PERSONAL PROPERTY) SUBMITTED BY THE BUYER SIMULTANEOUSLY HEREWITH.

B ☐ THE OBLIGATIONS OF THE BUYER HEREUNDER ARE CONDITIONED UPON THE ENTRY OF A COURT ORDER APPROVING THE SALE OF THE PERSONAL PROPERTY OF THE DEFENDANTS TO THE BUYER PURSUANT TO A CERTAIN

OFFER TO PURCHASE (LICENSE) SUBMITTED BY THE BUYER SIMULTANEOUSLY HEREWITH.

C. The obligations of the Buyer hereunder are expressly conditioned upon Buyer having first received any and all approvals from the RIDOH necessary to approve a change in effective control for the Premises from Defendant to Buyer.

22. **NO WARRANTIES AND REPRESENTATIONS AND NO RELIANCE ON OTHERS**:

Buyer has entered into this Agreement based on Buyer's independent review and investigation of the Premises and not on any representation made by the Receiver or any of Receiver's employees, officers, directors, shareholders, attorneys, consultants, agents or any other representatives. THIS MEANS THAT THE PREMISES IS BEING SOLD "AS IS", "WHERE IS", AND "WITH ALL FAULTS".

Buyer specifically acknowledges that the property shall be sold to Buyer "as is", "where is", and "with all faults" and that no warranties or representations or covenants of any kind, expressed or implied, have been or will be made by Receiver or any other party with respect to the physical, operating or any other condition of the Premises, or repair of the Premises, or utilities or sewer systems servicing the same or the use or operation to which the Premises may be put by Buyer, or the applicability of or compliance with applicable federal, state, county, city or other public authorities having or claiming jurisdiction over the Premises or any laws, statutes, codes, ordinances or regulations of any government authority, including without limitation, zoning, land use, building and fire safety, and environmental laws, including, without limitation, all laws, ordinances and regulations concerning hazardous waste and toxic substances, odors, noise, air emissions, discharge of water, chemicals and/or air pollution, or otherwise.

Buyer acknowledges that there have been no representations or warranties as to quality, quantity, durability, condition, merchantability, fitness for any particular purpose, or any other aspects of the Premises. Buyer acknowledges that it has not been influenced to enter into this transaction by the Receiver or his attorneys, or their employees, agents, consultants or any other representatives, and that Buyer has not received nor relied upon any statements or representations made by the Receiver or his attorneys, or their employees, agents, consultants or representatives.

Receiver specifically disclaims all warranties imposed by statute or otherwise and makes no warranty of habitability, merchantability or fitness of the Premises for a particular purpose. The terms and provisions of this section shall survive the Closing.

23. **AMENDMENTS**:

This Agreement may not be amended or modified except pursuant to a written instrument executed by both Buyer and Receiver.

24. **CONSTRUCTION OF AGREEMENT**:

This Agreement may be executed in one or more counterparts and each shall be deemed to be an original, and shall be binding upon and inure to the benefit of the respective heirs, executors and/or administrators, successors, and/or assigns, of the respective parties hereto, subject to the express conditions stated herein. This Agreement and the interpretation hereof shall be governed by the laws of the State of Rhode Island and the parties expressly agree that the Court shall have jurisdiction to resolve any and all disputes arising under this Agreement, to interpret any terms hereof, and to enforce any and all provisions of this Agreement.

## 25. <u>ENTIRE AGREEMENT</u>:

The parties hereto, each declare that this Agreement and any other agreements entered into in connection herewith contain the entire agreement between the parties, and that it is subject to no understandings, conditions or representations other than those expressly stated herein or therein. All understandings and agreements heretofore had between the parties, if any, are extinguished and are of no force and effect whatsoever except as the same may be expressly set forth in this Agreement or any other agreement entered into between the Parties in connection herewith. This Agreement is entered into by the Buyer after full investigation of the Premises, and no reliance is made by the Buyer upon any statements or representations not made in this Agreement.

## 26. <u>PROHIBITION AGAINST RECORDING</u>:

This Agreement may not be recorded in the Records of Land Evidence of the municipality in which the Premises is located. IN THE EVENT OF ANY RECORDING OF THIS AGREEMENT, AT THE OPTION OF THE RECEIVER, THE BUYER WILL CONCLUSIVELY BE DEEMED IN DEFAULT HEREUNDER ENTITLING THE RECEIVER TO EXERCISE ALL RIGHTS AND REMEDIES HEREUNDER FOR BUYER'S DEFAULT. In addition, any third party may conclusively rely upon an affidavit executed and recorded by the Receiver in said Land Evidence records stating the Receiver has elected to hold the Buyer in default, as conclusively establishing that the Buyer has no further right, title, or interest under this Agreement or to the Premises, all of which will be deemed released and conveyed to Receiver.

## 27. <u>NO PERSONAL LIABILITY:</u>

Notwithstanding anything herein to the contrary, the Receiver's execution of this Agreement is solely in his capacity as Receiver and shall not render the Receiver personally liable in any way whatsoever.

[SIGNATURES ON FOLLING PAGE]

WITNESS the signatures of the above parties on the date set forth below.

Buyer:

**American Senior Living Communities RI I, LLC**

By ______________________

Title EVP/CFO

JEFFREY A. BARNHILL
Print Name of Above Signatory

20-5148359
Buyer's Federal Tax ID Number

401-398-7131 401-398-7513
Phone Number Fax Number

185 PEIRCE ST
Address

EAST GREENWICH, RI 02818
City, State, Zip Code

1/24/08
Date

**Witness to Above Signature**

______________________

**Seller:**

______________________

Joseph P. Ferrucci, Esq., as and only as Receiver of Mt. St. Francis Associates, L.P., and not individually

* subject to Court approval

Dated: 1/28/08

# Legal Description

## Exhibit A

A certain parcel of land together with all buildings and improvements thereon situated on the easterly side of Maple Street in the City of Woonsocket, County of Providence and State of Rhode Island, bounded and described as follows:

Beginning at the southwest corner of Saint Joseph Street and Maple Street, thence running northerly bounding westerly by the easterly line of Maple Street three hundred forty (340.00) feet to a corner, thence turning an interior angle of ninety (90°-00'-00") degrees and running easterly bounding northerly by land now or formerly of Jean Baptiste, Jr. and Irene F. Ethier a distance of one hundred fifty (150.00) feet to a corner, thence turning an interior angle of two hundred seventy (270°-00'-00") and running northerly bounding westerly by land now or formerly of Jean Baptiste, Jr. and Irene F. Ethier a distance of fifty (50.00) feet to a corner, thence turning an interior angle of ninety (90°-00'-00") and running easterly bounding northerly by land now or formerly of Richard A. and Jeanne L. Houle a distance of one hundred fifty (150.00) feet to a corner, thence turning an interior angle of ninety (90°-00'-00") and running southerly bounding easterly by land now or formerly of Robert A. Montanari et. al. a distance of three hundred ninety (390.00) feet to a corner and the northerly line of Saint Joseph Street, thence turning an interior angle of ninety (90°-00'-00") and running westerly bounding southerly by the northerly line of Saint Joseph Street a distance of three hundred (300.00) feet to a corner and point and place of beginning.

PROPERTY ADDRESS:

4 St. Joseph Street
Woonsocket, RI

STATE OF RHODE ISLAND
PROVIDENCE, S.C.

SUPERIOR COURT

| | | |
|---|---|---|
| ANTONIO L. GIORDANO<br>Plaintiff<br><br>v.<br><br>MT. ST. FRANCIS ASSOCIATES, L.P.<br>Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>: | P.M. No. P.B. 06-3301 |

**OFFER TO PURCHASE**

To Joseph P. Ferrucci, Receiver of the above-named Defendant:

The undersigned or its assignee or designee ("Buyer") does hereby offer to pay that sum or value set forth on **Schedule A** submitted herewith[1] for all of your right, title, and interest as Receiver, free and clear of liens and encumbrances, in and to all of the business assets of every kind and description related to Defendant, Mt. St. Francis Associates, L.P., including, but not limited to: cash, account receivables, inventory, prepaids, land, building, building improvements, furniture, fixtures, supplies, machinery, equipment, other movable equipment, licenses and other assets as recorded or unrecorded at the time of closing, located at 4 St. Joseph Street, Woonsocket, Rhode Island and the trademark Mt. St. Francis Health Center, excluding and excepting therefrom the Excluded Assets as defined below.

The Buyer expressly acknowledges and agrees that the following described assets are expressly excluded from the sale contemplated herein, which assets are hereinafter referred to as "Excluded Assets:" all choses-in-action, and any and all claims of any kind or nature of the Receiver or the Receivership Estate of Defendant against any member, partner, employee, or other insider of Defendant, including but not limited to, any and all claims against any such parties for breach of fiduciary duties, and any and all claims of any kind or nature against any entities or individuals relative to preferential transfers, fraudulent conveyances, breach of duty to

[1] Due to the nature of this Offer and uncertainty of the yet-to-be negotiated terms, the amount of this Offer, although calculated to include normal and customary transaction costs, is a good faith estimate and may be subject to additional adjustment.

Defendant and/or its creditors or equitable subordination, all employee benefit plans including, but not limited to any retirement, health or welfare plans, all employment agreements, any leased equipment, machinery, or other leased assets or assets not owned by Defendant, and the proceeds of any of the foregoing Excluded Assets.

This Offer fully and completely expresses the parties' agreement, and all understandings and agreements heretofore had between the parties, if any are extinguished and of no force and effect except to the extent such are expressly set forth herein, and this Offer is entered into after full investigation by the Buyer of Defendant's business, assets and books and records, and no reliance is made by Buyer upon any statements or representations not embodied in this Offer.

If you are agreeable to accepting this Offer on the terms herein stated, please indicate below. This Offer and the agreement between the parties is subject to and contingent upon approval of the Providence County Superior Court in the receivership proceeding of the Defendant.

The Buyer understands that the Receiver and Court may entertain any higher Offers for the Personal Property prior to Court approval of this Offer. In the event that this Offer is approved by said Court, and the court Order approving the sale is not the subject of an injunction or stay prohibiting consummation of the sale contemplated in this Offer, the balance of the purchase price shall be paid to Receiver by wire transfer, cashier's check or bank check deposited with a mutually agreeable Escrow Agent or documented with a mutually agreeable Indemnification Agreement on the closing date set forth in the Real Estate Purchase and Sale Agreement submitted by Buyer simultaneously herewith, or on such earlier date as agreed to by the parties.

Such date shall hereinafter be referred to as the "Closing Date". The closing on the sale of the Personal Property shall take place at Ferrucci Russo PC, 55 Pine Street, Providence, Rhode Island.

It is agreed and understood that time is of the essence. If the Buyer shall fail to pay the balance of the purchase price on or prior to the Closing Date, the Receiver may, at his option, resell the Personal Property, without notice to the Buyer, and without previously tendering the Personal Property to the Buyer. Such resale shall not, however, release the Buyer from liability for breach of the terms of this Offer and, in case of such default, the Receiver shall have the right to retain the deposit towards the payment of any damages to which the Receiver may be entitled by reason of said default, without prejudice to any right to other or further damages or to pursue

any remedy, legal and/or equitable, which may accrue to the Receiver by reason of such default. If Court approval of this Offer is not obtained within 90 days from the date of the Receiver's acceptance hereof, the Receiver may, at his option, terminate this Offer, whereupon the Receiver shall return to the Buyer the deposit paid hereunder, with interest earned thereon, if any.

This Offer and transfers resulting from this Offer are and shall be made without any representations or warranties whatsoever, by or from the Receiver, including but not limited to, any representations or warranties, expressed or implied, concerning quantity, quality, durability, condition, merchantability, fitness for any purpose, or any other aspects of said Personal Property, and the Personal Property is sold "as is" and "where is".

**[SIGNATURES ON FOLLOWING PAGE]**

WITNESS the signatures of the above parties on the date set forth below.

Buyer:

**American Senior Living Communities RI I, LLC**

By: [signature]

Title EVP/CFO

JEFFREY A. GARMILL

Print Name of Above Signatory

20-5148359

Buyer's Federal Tax ID Number

401-398-7131 401-398-7513

Phone Number Fax Number

185 PEARCE ST

Address

EAST GREENWICH, RI 02818

City, State, Zip Code

1/24/08

Date

Witness to Above Signature

[signature]

Seller:

[signature]

Joseph P. Ferrucci, Esq., as and only as Receiver of Mt. St. Francis Associates, L.P., and not individually

* subject to court approval

Dated: 1/28/08

**SCHEDULE A**

For the financial terms of its offer, the Buyer proposes to undertake or pay the following obligations:

1. Buyer hereby offers to assume all of the existing indebtedness relating to those promissory notes originally granted by Defendant in favor of Suburban Mortgage Associates, Inc., as assigned to Midland Loan Services, Inc. (the "Notes"), totaling approximately NINE MILLION, THREE HUNDRED THOUSAND AND 00/100 DOLLARS ($9,300,000.00), which Notes are secured by mortgages on the existing assets of the Defendant's nursing home facility (the "Facility"). To the extent that the Court may, at any time hereafter, conclude that some or all of the mortgage liens securing said Notes are invalid or should be subordinated to some other debt(s) or claim(s), then Buyer shall make payments on the Notes, when and as same become due and payable, directly to the Receivership Estate.

2. Buyer hereby offers to forgive, and therefore convert to equity, the liabilities owed to Buyer for priority administrative operating loans made to the Receiver for the period beginning June 21, 2006 up to and including acquisition, currently totaling approximately SIX HUNDRED THIRTY-EIGHT THOUSAND TWO HUNDRED SIXTY-NINE AND 49/100 DOLLARS ($638,269.49), plus additional projected priority administrative operating loans from the date of this Offer through Closing.

3. Buyer hereby offers, at Closing, to pay to the Receivership Estate the sum of NINE HUNDRED THOUSAND AND 00/100 DOLLARS ($900,000.00)(the "Closing Payment"), which funds shall be available to the Receiver to pay, as may be directed by the Court, any claims asserted in the Receivership proceedings. Buyer's obligation to make the Closing Payment and to close on this Offer is expressly conditioned upon (i) receiving from Plaintiff at the Closing a release in favor of Buyer of any claims purportedly arising out of that certain pre-receivership Agreement

(the "Agreement") between and among Buyer, Plaintiff, and Defendant relating to the purchase of Defendant's Assets (a proposed form of which release is submitted herewith as Exhibit 1), and (ii) an order of the Court confirming that Buyer's acquisition of Defendant's assets shall likewise be free and clear of any and all claims of Defendant arising out of the Agreement. Buyer acknowledges and agrees that Plaintiff shall not be obligated to deliver said release to Buyer until and unless the Receiver has also negotiated and obtained from Plaintiff at Closing a release of claims, in form and substance satisfactory to the Receiver, in favor of the Receiver. In the event that the Receiver is unable, on or before the Closing Date, to obtain such release from Plaintiff, then Buyer shall have no obligation to close on this Offer. Buyer agrees not to object to any application by Plaintiff or any other party relating to the Receiver's use of the Closing Payment to pay any claims asserted in the Receivership. The payment of the Closing Payment by Buyer to the Receiver at Closing shall be considered as a contribution of Buyer's equity towards the purchase of Defendant's Assets.

4. Buyer hereby offers to pay such unpaid fees and expenses owed to the Receiver as are approved by the Court as of the date of the Closing. The payment of said unpaid fees by Buyer to the Receiver shall be considered as a contribution of Buyer's equity towards the purchase of Defendant's Assets.

5. Buyer hereby expressly reserves the right to withdraw this Offer if the Court does not approve same on or before February 15, 2008.

6. In the event of Court approval of this Offer, Buyer further expressly reserves the right to withdraw this Offer if the Receiver is unable to obtain from the Internal Revenue Service (the "IRS"), on or before March 20, 2008, an agreement to discharge (or otherwise remove or satisfy) at the Closing the IRS liens recorded against the Facility.

7. Buyer's obligation to close on this Offer is expressly conditioned upon Buyer having first received any and all approvals from the State of Rhode Island Department of Health necessary to approve a change in effective control for the Facility from Defendant to Buyer.

8. This Offer is expressly subject to the condition, to be approved by the Court, that there shall be no competitive bidding for the sale of Defendant's assets that are the subject hereof.

**EXHIBIT 1**

**RELEASE OF CLAIMS**

The undersigned **Antonio L. Giordano** (hereinafter referred to as "Releasor"), in consideration of One Dollar ($1.00) and other valuable consideration to Releasor paid, the receipt and sufficiency of which are hereby acknowledged, for himself and his heirs, administrators, executors, trustees, employees, agents, attorneys, successors, and assigns, does hereby release and forever discharge **American Senior Living Communities RI I, LLC**, and any of its officers, directors, shareholders, trustees, employees, agents, attorneys, affiliates, successors, and assigns (hereinafter referred to as "ASLC" or "Releasee"), of and from any and all claims, demands, actions and causes of action of any name and nature, from the beginning of the World to this date, regardless whether now known or asserted, which Releasor now has or might have against said Releasee, including but not limited to any such claims pertaining to, arising out of, or on account of that certain Mt. St. Francis Agreement (the "Agreement"), dated as of or about June 19, 2006, between and among Releasor, Mt. St. Francis Associates, L.P. ("MSF"), and Releasee pertaining to the acquisition of MSF's assets.

And further Releasor understands and agrees that this Release is in full and final settlement of doubtful and disputed claims, and that this Release is not to be construed as any admission of liability on the part of the Releasee, by whom liability is expressly denied.

Releasor states that he has carefully read the foregoing Release, knows and understands the contents thereof, has reviewed the same with an attorney-at-law of his choosing, and signs the same as his free act and deed.

Releasor warrants and represents that he has not transferred or assigned the claims which are being released pursuant to this Release.

This Release contains the entire agreement between the parties herein and the terms of this Release are contractual and not a mere recital.

Witness Releasor's hand and seal this ____ day of _________ 2008.

**WITNESS:** **ANTONIO L. GIORDANO**

_____________________________ _____________________________