UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ANTONIO L. GIORDANO,<br>Plaintiff<br>v.<br>MT. ST. FRANCIS ASSOCIATES, L.P.,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 08-48-S |

## DECLARATION OF ANTONIO L. GIORDANO

1. I am over eighteen years of age.

2. In 2006, I was negotiating with two separate entities for a potential sale of the assets of Mt. St. Francis Associates, L.P. ("Defendant"). One of the entities with whom I was negotiating was American Senior Living Corporation ("ASLC").

3. ASLC informed me that given Defendant's financial condition, ASLC wanted to structure the proposed transaction as a sale through a receivership proceeding.

4. Both ASLC and the other potential purchaser were willing to (a) assume the mortgage on Defendant's assets, (b) pay the administrative expenses, (c) pay the then-outstanding unsecured debt, and (d) manage Defendant's nursing home facility (the "Facility") post-petition.

5. One of the crucial issues that I was negotiating with ALSC and the other potential purchaser was payment of amounts due and owing to the U.S. Internal Revenue Service ("IRS"). ALSC was willing to pay the taxes due to the IRS; the other potential

purchaser was not. For that reason, ALSC's offer was better than the offer of the other potential purchaser.

6. Accordingly, on June 19, 2006, Defendant, ASLC and I entered into an agreement (the "Nursing Home Agreement") concerning ASLC's potential acquisition of Defendant's assets through a receivership proceeding. A true and accurate copy of the Nursing Home Agreement is attached as Exhibit A to the Motion to Prove the Administrative Claim of Antonio L. Giordano (dated January 28, 2008; originally filed in Superior Court).

7. The terms of the Nursing Home Agreement include the following: (a) Defendant would be petitioned into receivership (§ 1); (b) ASLC would manage the Facility post-petition (§ 2); (c) as manager of the Facility, ASLC would pay the post-petition payroll and other taxes owed to the IRS and to the State of Rhode Island (§ 2(b)(v)); (d) as manager of the Facility, ASLC would pay certain pre-petition accounts payable (§ 2(b)(vi)); and (e) ASLC could, at its election, submit an offer to purchase the Facility, subject to certain terms and conditions (§ 3). As an express condition of ASLC submitting an offer to purchase the Facility, ASLC agreed to pay certain obligations to the IRS (§ 3(a)(ii)) and certain pre-petition accounts payable (§ 3(a)(iv)). I subsequently agreed to limit ASLC's obligation to pay the IRS to $2.2 million.

8. Pursuant to the terms of the Nursing Home Agreement, on or about June 20, 2006, I filed a petition for the appointment of a Receiver for Defendant. I filed that petition in reliance on the provisions of the Nursing Home Agreement, especially the provisions that require ASLC to pay certain amounts owed to the IRS as a condition of acquiring the Facility.

9. As of the filing of the petition for the appointment of a Receiver for Defendant (and at all times prior thereto), Defendant's mortgage payments were current. Post-petition, ASLC managed the Facility.

10. I remain ready, willing and able to perform under the terms of the Nursing Home Agreement. However, ASLC informed me, through counsel, that it is unable and unwilling to submit an offer that complies with all of the terms of the Nursing Home Agreement. ASLC specifically informed me, through counsel, that it is unable to make the required payment to the IRS.

11. Because the terms of the Nursing Home Agreement require ASLC to make a payment to the IRS as a condition of acquiring the Facility, and because ASLC cannot make the required payment to the IRS, ASLC informed me, through counsel, that it would not acquire the Facility unless I released ASLC from any liability under the terms of the Nursing Home Agreement. Given that my release of ASLC is necessary for a sale to ASLC to occur, ASLC and I entered into negotiations (through counsel) concerning potential termination of the Nursing Home Agreement and a potential new agreement.

12. ASLC and I negotiated the payment amount, and ultimately agreed on $900,000. ASLC informed me that it wanted to pay the $900,000 into Defendant's receivership estate and to have me make claim to that money. Accordingly, ASLC agreed to include in its offer a payment of $900,000 into the receivership estate, distribution of which would be subject to an Order of the Court. I agreed that if my administrative claim for $900,000 were approved and paid, I would release ASLC and the Receiver from any liability under the Nursing Home Agreement.

13. If my administrative claim is approved (regardless of whether it is ultimately paid), I will release ASLC and the Receiver from any and all liability under the Nursing Home Agreement. That release would enable ASLC to purchase the Facility, which, in turn, would preserve the jobs of Defendant's employees and avoid relocating the patients who currently live in the Facility.

I, Antonio L. Giordano, declare under penalty of perjury that the foregoing is true and correct.

Antonio L. Giordano

ANTONIO L. GIORDANO

Executed on March 17, 2008

*447109_1*