UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ANTONIO L. GIORDANO, Plaintiff | : | |
| v. | : | C.A. No. 08-48-S |
| MT. ST. FRANCIS ASSOCIATES, L.P., Defendant. | : | |

**PROPOSED FINDINGS OF FACT AND**
**CONCLUSIONS OF LAW OF ANTONIO L. GIORDANO**

Plaintiff Antonio L. Giordano ("Mr. Giordano") respectfully submits these Proposed Findings of Fact and Conclusions of Law in support of his Motion for approval of an administrative claim.

## I. PROPOSED FINDINGS OF FACT[1]

1. In 2006, Mr. Giordano was negotiating with two separate entities for a potential sale of the assets of Mt. St. Francis Associates, L.P. ("Defendant"). Declaration of Antonio L. Giordano ("Decl.")at ¶ 2. One of those entities was ASLC. Id.; Motion to Prove the Administrative Claim of Antonio L. Giordano ("Motion," dated January 28, 2008) at ¶ 1.

2. ASLC informed Mr. Giordano that in light of Defendant's financial condition, ASLC wanted to structure the proposed transaction as a sale through a receivership proceeding. Decl. at ¶ 3.

[1] The following proposed findings of fact are in addition to the ones set forth in the Joint Proposed Findings of Fact, which will be subsequently filed.

3. Both ASLC and the other potential purchaser were willing to (1) assume the mortgage on Defendant's assets, (2) pay the administrative expenses, (3) pay the then-outstanding unsecured debt, and (4) manage Defendant's nursing home facility (the "Facility") post-petition. Decl. at ¶ 4.

4. One of the crucial issues that Mr. Giordano was negotiating with ALSC and the other potential purchaser was payment of amounts due and owing to the U.S. Internal Revenue Service ("IRS"). Decl. at ¶ 5; Motion at ¶ 2.

5. ALSC was willing to pay the taxes due to the IRS; the other potential purchaser was not. For that reason, ALSC's offer was better than the offer of the other potential purchaser. Decl. at ¶ 5.

6. On June 19, 2006, Defendant, ASLC and Mr. Giordano entered into an agreement (the "Nursing Home Agreement") concerning ASLC's potential acquisition of Defendant's assets through a receivership proceeding. Decl. at ¶ 6; Motion at ¶ 2; Receiver's Petition to Sell Real Estate and Business Assets Free and Clear of Liens ("Petition to Sell," dated January 28, 2008) at ¶ 3.

7. The terms of the Nursing Home Agreement include the following: (1) Defendant would be petitioned into receivership (§ 1); (2) ASLC would manage the Facility post-petition (§ 2); (3) as manager of the Facility, ASLC would pay the post-petition payroll and other taxes owed to the IRS and to the State of Rhode Island (§ 2(b)(v)); (4) as manager of the Facility, ASLC would pay certain pre-petition accounts payable (§ 2(b)(vi)); and (5) ASLC could, at its election, submit an offer to purchase the Facility, subject to certain terms and conditions (§ 3). Decl. at ¶ 7; Motion at ¶ 2; Petition to Sell at ¶ 3.

8. Under the Nursing Home Agreement, as an express condition of ASLC submitting an offer to purchase the Facility, ASLC agreed to pay certain obligations to the IRS (§ 3(a)(ii)) and certain pre-petition accounts payable (§ 3(a)(iv)). Decl. at ¶ 7; Motion at ¶ 2; Petition to Sell at ¶ 3.

9. Pursuant to the terms of the Nursing Home Agreement, on or about June 20, 2006, Mr. Giordano filed a petition for the appointment of a Receiver for Defendant. Decl. at ¶ 8; Motion at ¶ 3.

10. Mr. Giordano filed the petition for the appointment of a Receiver for Defendant in reliance on the provisions of the Nursing Home Agreement, especially the provisions that require ASLC to pay certain amounts owed to the IRS as a condition of acquiring the Facility. Decl. at ¶ 8.

11. As of the filing of the petition for the appointment of a Receiver for Defendant (and at all times prior thereto), Defendant's mortgage payments were current. Decl. at ¶ 9.

12. Mr. Giordano remains ready, willing and able to perform under the terms of the Nursing Home Agreement. Decl. at ¶ 10; Motion at ¶ 5.

13. ASLC informed Mr. Giordano, through counsel, that ASLC is unable and unwilling to submit an offer that complies with all of the terms of the Nursing Home Agreement. Decl. at ¶ 10; Motion at ¶ 5; see Petition to Sell at ¶ 3. ASLC specifically informed Mr. Giordano, through counsel, that it is unable to make the required payment to the IRS. Decl. at ¶ 10; Motion at ¶ 5; see Petition to Sell at ¶ 3.

14. ASLC informed Mr. Giordano, through counsel, that because the terms of the Nursing Home Agreement require ASLC to make a payment to the IRS as a condition

of acquiring the Facility, and because ASLC cannot make the required payment to the IRS, ASLC would not acquire the Facility unless Mr. Giordano released ASLC from any liability under the terms of the Nursing Home Agreement. Decl. at ¶ 11.

15. Given that Mr. Giordano's release of ASLC is necessary for a sale to ASLC to occur, ASLC and Mr. Giordano entered into negotiations (through counsel) concerning potential termination of the Nursing Home Agreement and a potential new, post-petition agreement. Decl. at ¶ 11; Motion at ¶ 6.

16. ASLC and Mr. Giordano negotiated the payment amount, and ultimately agreed on $900,000. Decl. at ¶ 12; Motion at ¶ 6.

17. ASLC informed Mr. Giordano that it wanted to pay the $900,000 into Defendant's receivership estate and to have Mr. Giordano make claim to that money. Decl. at ¶ 12.

18. Accordingly, ASLC agreed to include in its offer a payment of $900,000 into the receivership estate, distribution of which would be subject to an Order of the Court. Decl. at ¶ 12; Motion at ¶ 6. Mr. Giordano agreed that if his administrative claim for $900,000 were approved and paid, Mr. Giordano would release ASLC and the Receiver from any liability under the Nursing Home Agreement. Decl. at ¶ 12.

19. For purposes of facilitating the sale of the Facility, if Mr. Giordano's administrative claim is approved, Mr. Giordano will release ASLC and the Receiver from any and all liability under the Nursing Home Agreement, regardless of whether Mr. Giordano's administrative claim is ultimately paid. Decl. at ¶ 13.

20. The Facility (and the tangible and intangible personal property associated therewith) is the sole asset of this receivership estate. Petition to Sell at ¶ 1.

21. Under the terms of ASLC's proposed purchase of the Facility, ASLC would (in addition to paying $900,000 into the receivership estate) do the following: (a) assume certain HUD-granted mortgage obligations of approximately $9.3 million; (b) forgive, and have converted to equity, approximately $638,269.49 (as of on or about January 24, 2008) in administrative operating loans that ASLC made to the Receiver; (c) pay all administrative costs and expenses, adjustments and costs at closing; and (d) assume all post-receivership accounts payable that ASLC has generated and for which it is responsible. Real Estate Purchase and Sale Agreement ("P&S Agreement," attached as Exhibit B to the Petition to Sell) at ¶¶ 5, 7; Petition to Sell at ¶ 3; Motion at ¶ 6.

22. Under the terms of ASLC's proposed purchase of the Facility, ASLC would assume 100% of the mortgage obligation, which would satisfy the receivership estate's obligation with respect to that debt. P&S Agreement at ¶ 5(i).

23. ASLC will not purchase the facility unless Mr. Giordano releases the Receiver and ASLC from any and all liability under the Nursing Home Agreement. P&S Agreement at ¶ 5(iii); Decl. at ¶ 11.

24. Mr. Giordano's release would enable ASLC to purchase the Facility, which, in turn, would preserve the jobs of Defendant's employees and avoid relocating the patients who currently live in the Facility. Decl. at ¶¶ 11, 13; Motion at ¶¶ 8, 12; see P&S Agreement at ¶ 5(iii).

25. ASLC's purchase of the Facility would benefit this receivership estate. Petition to Sell at ¶ 4; Decl. at ¶ 13; Motion at ¶¶ 6, 12.

26. Because Mr. Giordano's release would enable ASLC to purchase the Facility, Mr. Giordano's release would benefit this receivership estate. Decl. at ¶¶ 11, 13; Motion at ¶¶ 8, 12.

27. Mr. Giordano is providing a benefit to the receivership estate by providing, post-petition, a release of the Receiver and ASLC. Decl. at ¶¶ 11, 13; Motion at ¶¶ 8, 12.

28. Mr. Giordano's release maximizes the value of the Facility by enabling ASLC to purchase it as a going concern for more than $10 million in value.[2] In contrast, if ASLC does not purchase the Facility, it likely would be closed and liquidated for millions of dollars less. The Court-Appointed Receiver's Response to the United States' Objection to Motion to Prove Administrative Claim at ¶ 2.

29. ASLC's payment of $900,000 into the receivership estate would be a direct result of, and solely attributable to, Mr. Giordano's release of the Receiver and ASLC. That payment was negotiated specifically and expressly in return for that release. Decl. at ¶¶ 11-12; Motion at ¶ 6.

30. Mr. Giordano's administrative claim arises post-petition, from his post-petition release of the Receiver and ASLC. Decl. at ¶¶ 11, 13; Motion at ¶¶ 8, 12.

## II. PROPOSED CONCLUSIONS OF LAW

1. Section 503(b) of the Bankruptcy Code addresses administrative expenses. Although that section sets forth enumerated items that qualify as administrative expenses, that list is not exclusive. Rather, that provision states that "there shall be allowed, administrative expenses . . .including" the enumerated list of items. See 11 U.S.C.

[2] ASLC would assume approximately $9.3 million in debt, forgive more than $635,000 in loans it made to the Receiver, and pay administrative expenses. P&S Agreement at ¶¶ 5(i), 7; Petition to Sell at ¶ 3.

§ 503(b); 3 Norton Bankruptcy Law & Practice § 49:22 (3rd ed.) ("Recovery of administrative expenses is not limited to the categories of specific expenses delimited in Code § 503(b).").[3]

2. The First Circuit has held that an indispensable requirement for allowing an administrative claim is that the estate must receive a benefit. See Woburn Assocs. v. Kahn, 954 F.2d 1, 5 (1st Cir. 1992); In re Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976). Thus, the crucial issue is whether the claimed administrative expense directly and substantially benefits the estate.

3. Mr. Giordano's release is necessary for ASLC to purchase the Facility, so that release constitutes an "actual, necessary cost[] and expense[] of preserving the estate." 11 U.S.C. § 503(b)(1)(A).

4. Maximizing the value of the estate's assets falls within the scope of "preserving the estate."

5. Mr. Giordano's release is akin to other services that are "necessary" for the sale of an estate's assets. Courts have long held that services that are provided in connection with selling the assets of an estate qualify as administrative expenses.[4] Just as the services of brokers, appraisers and auctioneers are "necessary" to maximize the value of an estate's assets, so, too is Mr. Giordano's release "necessary" (indeed, indispensable) to maximize the value of the Facility.

6. Mr. Giordano's release constitutes one of the "actual, necessary costs and expenses of preserving the estate" and satisfies the standard for an administrative claim.

---

[3] Under the Bankruptcy Code, the word "including" is "not limiting." 11 U.S.C. § 102(3).

[4] See Berman v. Palmetto Apartments Corp., 153 F.2d 192, 193-94 (6th Cir. 1946) (real estate broker was "instrumental" in obtaining offer to purchase the estate's assets); In re James, 203 B.R. 449, 455 (Bankr. W.D. Mo. 1997) (auctioneer's services were "necessary" and "benefited the Debtors' estate").

7. Given that it was Mr. Giordano's efforts that created the $900.000 pool of money, and given the substantial benefit that the estate would receive through ASLC's purchase of the Facility, $900,000 is the appropriate valuation of Mr. Giordano's post-petition release and the appropriate amount for his administrative claim.

8. Accordingly, Mr. Giordano's motion for an administrative claim is approved in the amount of $900,000.

Respectfully submitted,

ANTONIO L. GIORDANO
By his Attorneys:

/s/ Joseph Avanzato
JOSEPH AVANZATO (#4774)
javanzato@apslaw.com
EDWARD L. MAGGIACOMO (#0438)
ROBERT I. STOLZMAN (#3530)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345
Tel: 401-274-7200
Fax: 401-751-0604
Dated: March 21, 2008

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 21st day of March, 2008, I sent a true copy of the foregoing pleading by electronic means (ECF) to the following:

Jeffrey Brenner, Esq.
Nixon Peabody LLP
One Citizens Plaza, Suite 500
Providence, RI 02903
jbrenner@nixonpeabody.com

Allan M. Shine, Esq.
Winograd Shine & Zacks
123 Dyer Street
Providence, RI 02903
ashine@wszlaw.com

James E. Brown, Esq.
U.S. Department of Justice, Tax Division
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
james.e.brown2@usdoj.gov

Dulce Donovan, Esq.
Assistant U.S. Attorney
Chief, Civil Division
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
dulce.donovan@usdoj.gov

Joseph Ferrucci, Esq.
jferrucci@frlawri.com
Christopher Mulhearn, Esq.
cmulhearn@frlawri.com
Ferrucci Russo P.C.
55 Pine Street
Providence, RI 02903

Douglas A. Giron, Esq.
Schechtman Halperin Savage LLP
1080 Main Street
Pawtucket, RI 02906
dgiron@shslawfirm.com

Christopher Little, Esq.
clittle@lmkbw.com
R. Thomas Dunn, Esq.
tdunn@lmkbw.com
Little, Medeiros, Kinder, Bulman
& Whitney, P.C.
72 Pine Street, 5th Floor
Providence, RI 02903.

Ly Nguyen, Esq.
Assistant U.S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
ly.nguyen@usdoj.gov

The undersigned further certifies that on the 21st day of March, 2008, I sent a true copy of the foregoing pleading by First Class mail, postage prepaid to the following:

Genevieve M. Martin, Esq.
Assistant Attorney General
150 South Main Street
Providence, RI 02903-1345

MMJUA of RI
One Turks Head Building
Suite 200
Providence, RI 02903

Terry Biafore, Sr.
Babcock & Hellwell, Inc.
138 Main Street
Wakefield, RI 02879

Division of Taxation
State of Rhode Island
1 Capitol Hill, Suite 7
Providence, RI 02908

Charles A. Lovell, Esq.
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

Jonathan Savage, Esq.
Schechtman Halperin Savage
1080 Main Street
Pawtucket, RI 02860

Marc D. Wallick, Esq.
Wallick & Associates Ltd.
51 Jefferson Boulevard
Warwick, RI 02888

Maureen Hobson, Esq.
R.I. Department of Health
3 Capitol Hill, Room 404
Providence, RI 02908

Deborah B. Buffi, Esq.
Deputy Chief Legal Counsel
R.I. Department of Human Services
600 New London Ave., BDG 57
Cranston, RI 02920.

Lisa Daniels-Burgo, Esq.
HUD
121 South Main Street, Suite 300
Providence, RI 02903

/s/ Joseph Avanzato

*446870_1*