UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ANTONIO L. GIORDANO, | : | |
| | : | Case No. 1:08-cv-00048-S-LDA |
| Plaintiff, | : | Honorable William E. Smith |
| | : | Referral Judge: Honorable Lincoln D. |
| v. | : | Almond |
| | : | |
| MT. ST. FRANCIS ASSOCIATES, L.P., | : | |
| | : | (Formerly Rhode Island Superior Court |
| Defendant. | : | P.M. No. P.B. 06-3301) |

**UNITED STATES' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

As requested at the in-chambers status conference held in the above-captioned proceeding on March 6, 2008, creditor the United States of America submits these proposed findings of fact and conclusions of law, with regard to the Motion to Prove the Administrative Claim of Antonio L. Giordano, filed in the above-captioned proceeding (in state court) on February 7, 2008.

**FINDINGS OF FACT**

1. In or about 2006, Defendant Mount St. Francis Associates, L.P. ("MSF") owned and operated the healthcare facility located at 4 St. Joseph Street, Woonsocket, Rhode Island, commonly known as "Mt. St. Francis Health Center" (the "Facility"). Joint Proposed Findings of Fact ("Jt. Find.") ¶ 1.

2. In or about 2006, Plaintiff Antonio L. Giordano ("Mr. Giordano"), Defendant MSF, and American Senior Living Corporation ("ASLC") were negotiating a potential purchase of MSF's assets by ASLC. Jt. Find. ¶ 2.

3. On June 19, 2006, MSF, ASLC and Mr. Giordano entered into an agreement (the "Nursing Home Agreement") concerning ASLC's potential acquisition of MSF's assets through a receivership proceeding. Jt. Find. ¶ 3; Exhibit 3 to Brief in Support of United States' Objection to Motion to Prove Administrative Claim ("Ex. 3 to U.S. Brief") (Nursing Home Agreement).

4. The terms of the Nursing Home Agreement included the following: (1) MSF would file a petition for the operation of the Facility to be placed into receivership (§ 1); (2) ASLC would submit an offer to the Receiver for ASLC to manage the Facility post-petition subject to certain terms and conditions (§ 2); and (3) ASLC could, at its election, offer to purchase the Facility, subject to certain terms and conditions (§ 3).

5. Under the Nursing Home Agreement, ASLC could submit an offer to purchase the Facility upon the conditions that: (a) ASLC pay the IRS "on behalf of MSF an amount that satisfies any and all taxes, fines, and penalties owed by MSF, Mr. Giordano or John Montecalvo, as past due or pursuant to any court order or lien, as of the date hereof" (the "IRS Liabilities"); (b) ASLC assume a note and mortgage granted by MSF to Suburban Mortgage Associates, Inc.; (c) ASLC assume all liabilities of MSF, other than the IRS Liabilities; and (d) ASLC pay certain pre-petition accounts payable. Ex. 3 to U.S. Brief, ¶ 3(a).

7. On or about June 21, 2006, Mr. Giordano filed a petition in the Rhode Island Superior Court for the appointment of a receiver for MSF. Jt. Find. ¶ 4.

8. Pursuant to Mr. Giordano's petition, the Superior Court appointed Joseph Ferrucci, Esquire, as Receiver, and ASLC has been managing the Facility ever since. Jt. Find. ¶ 5.

9. On January 28, 2008, ASLC and the Receiver agreed, subject to court approval, for ASLC to purchase the assets of MSF without paying the IRS Liabilities (the "Purchase and Sale Agreement"). Ex. 11 to U.S. Brief (Purchase and Sale Agreement).

10. The Purchase and Sale Agreement provides, among other terms, that (a) ASLC shall assume notes and mortgages granted by MSF to Suburban Mortgage Associates, Inc., now assigned to Midland Loan Services, Inc., in the total amount of approximately $9,300,000.00, (b) ASLC shall forgive and convert to equity purported claims against the receivership for priority administrative operating loans in excess of $600,000, (c) at closing, ASLC shall pay to the receivership estate $900,000 (the "Closing Payment"), and (d) at closing, ASLC shall pay the unpaid fees of the Receiver. Ex. 11 to U.S. Brief, ¶ 5.

11. The Purchase and Sale Agreement also provides, among other terms, that ASLC's obligation to make the Closing Payment and to close is conditioned upon receiving a release from Giordano in favor of ASLC of "any claims purportedly arising out of" the Nursing Home Agreement, and upon a court order confirming that the purchase of the assets "shall likewise be free and clear of any and all claims including those under the Agreement." Ex. 11 to U.S. Brief, ¶ 5(iii).

12. On or about January 28, 2008, Mr. Giordano filed a Motion to Prove the Administrative Claim of Antonio L. Giordano ("Motion to Prove Claim"). Ex. 2 to U.S. Brief (Motion to Prove Claim).

13. The Motion to Prove Claim argues that Mr. Giordano should be allowed an administrative claim in the amount of $900,000, equal to the Closing Price, in exchange for

granting ASLC and the Receiver a release of any liability under the Nursing Home Agreement. Motion to Prove Claim, ¶¶ 8, 12.

14. Mr. Giordano asserts that the release would facilitate ASLC's acquisition of the MSF Facility, which would benefit the receivership estate, thereby making Mr. Giordano's administrative claim proper. *See* Motion to Prove Claim, ¶¶ 8, 9, 12.

15. Mr. Giordano states that if his administrative claim is approved, the $900,000 Closing Payment will be paid to his "secured creditors," the beneficiaries of which are Mr. Giordano's children, in repayment of advances for (1) restitution paid by Mr. Giordano to the State of Rhode Island Department of Human Services Medicaid Program; (2) restitution paid by Mr. Giordano to the Rhode Island Alliance for Better Long Term Care; (3) fines paid by Mr. Giordano to the United States; and (4) debt owed by Mr. Giordano to the Rhode Island Depositors Economic Protection Corporation. Motion to Prove Claim, ¶ 7.

16. On February 7, 2008, the United States of America filed an objection to the Motion to Prove Claim. Ex. 1 to U.S. Brief.

17. On February 7, 2008, the Secretary of Housing and Urban Development filed an objection to the Motion to Prove Claim.

18. On or about February 7, 2008, creditor O. Ahlborg & Sons, Inc. filed a "Limited and Conditional Objection" to the Motion to Prove Claim.

19. On or about February 8, 2008, creditor Suburban Mortgage Associates, Incorporated filed a "Limited Objection" to the Motion to Prove Claim.

20. On February 11, 2008, the Superior Court permitted the United States to intervene in these proceedings, and on February 13, 2008, the United States removed the case to this Court. Docket # 1; Jt. Find. ¶ 6.

21. On March 12, 2008, this Court entered an order appointing Joseph P. Ferrucci, Esquire, as the Receiver of MSF, and confirming all previous orders of the Rhode Island Superior Court. Docket # 17; Jt. Find. ¶ 7.

22. On March 12, 2008, the United States filed a brief in support of its objection to the Motion to Prove Claim. Docket # 18.

23. On March 19, 2008, the Receiver filed a response to the United States' objection, in which Suburban Mortgage Associates, Incorporated joined. Docket # 19, 20.

24. The Receiver (joined by Suburban Mortgage Associates, Incorporated) argues in part that the United States lacks standing to object to the Motion to Prove Claim.

25. On March 19, 2008, Mr. Giordano filed a Supplemental Memorandum in Support of the Motion to Prove the Administrative Claim of Antonio L. Giordano, accompanied by a Declaration of Antonio L. Giordano. Docket # 21.

26. In his supplemental memorandum, Mr. Giordano asserts in part that his asserted administrative claim arises not from on the Nursing Home Agreement, but from a post-petition agreement between Mr. Giordano and ASLC under which ASLC would pay Mr. Giordano $900,000, through the receivership, in exchange for a release under the Nursing Home Agreement. *See* Docket # 21, pp. 4, 7, 10.

## CONCLUSIONS OF LAW

27. The United States has standing to object to Mr. Giordano's Motion to Prove Claim. Mr. Giordano attempts in his motion to prime the United States' alleged federal tax liens with his alleged administrative claim, and he intends to do so again even if his purported administrative claim were approved without any determination as to the relative priorities of the United States' alleged liens and the purported administrative claim. Such judicial approval of the purported administrative claim without consideration of the United States' objection could require the United States to litigate the factually intensive issue of whether the purported administrative claim confers a direct benefit on the United States (which the United States asserts it does not), without resort to the legal arguments contained in the United States' objection and supporting brief. Finally, approval of Mr. Giordano's purported administrative claim could conceivably prejudice the United States in arguing that the purported administrative claim is subordinate to its alleged federal tax liens, because such approval would include a determination that the purported administrative claim benefits the receivership estate.

28. Rhode Island receivership law, which is largely informed by federal bankruptcy law, controls whether Mr. Giordano has an administrative claim in this receivership. *See* F.R.C.P. Rule 66; 28 U.S.C. § 959(b); *United States v. F.D.I.C.*., 899 F. Supp. 50, 54 (D.R.I. 1995).

29. Mr. Giordano has the burden of proving his entitlement to an administrative claim, subject to a strict construction of the administrative expense priority, and subject to additional scrutiny because Mr. Giordano is an insider of MSF. *See, e.g.*, *Woburn Associates v. Kahn (In re: Hemingway Transport, Inc.*, 954 F.2d 1, 4-5 (1st Cir. 1992); *In re: RJC Industries,*

*Inc. v. Lombardozzi*, 369 B.R. 845, 851 (USBC, Midd. Dist. Penn. 2006); *In re C.E.N., Inc.*, 86 B.R. 303, 306 (USBC, D. ME 1988).

30. In bankruptcy, Mr. Giordano's asserted right to payment from the receivership would be tested for administrative claim status under 11 U.S.C. § 503(b)(1)(A), which allows as administrative expenses "the actual, necessary costs and expenses of preserving the estate . . . ." Examples of such expenses include "outlays for repairs, upkeep, freight, insuring the value of the property [. . .] [t]he actual and necessary expenditures of the trustee in operating the business of the estate, for storage of property, for rent and for other goods and services incidental to protecting, conserving, maintaining and rehabilitating the estate . . ." 4-503 Collier on Bankruptcy (15th Ed. Rev.), ¶ 503.06[1].

31. An administrative claim is allowable under 11 U.S.C. § 503(b)(1)(A) only if "(1) the right to payment arose from a postpetition transaction with the debtor estate, rather than from a prepetition transaction with the debtor, and (2) the consideration supporting the right to payment was beneficial to the estate of the debtor." *Woburn Associates v. Kahn (In re: Hemingway Transport, Inc.*, 954 F.2d 1, 4-5 (1st Cir. 1992) (citations omitted).

32. The mere fact that if Mr. Giordano's asserted administrative claim were approved, a sale of the MSF Facility to ASLC pursuant to the Purchase and Sale Agreement might go through, does not make Mr. Giordano's administrative claim allowable. The public interest in the continuation of the MSF Facility as a going concern does not give ASLC and Mr. Giordano the right to dictate how this receivership is administered.

33. Mr. Giordano's asserted administrative claim is not allowable because Mr. Giordano has no claim against, *i.e.*, no right to payment from, the MSF receivership. *See* 11 U.S.C. § 101(5).

34. Mr. Giordano's asserted administrative claim is not allowable because it does not arise from a post-petition transaction with the Receiver. *See Woburn Associates,* 954 F.2d 1, 5. The United States asserts that Mr. Giordano's purported administrative claim must be disallowed because, *inter alia*, it arose from the Nursing Home Agreement, which is a pre-petition transaction. Even accepting Mr. Giordano's rebuttal position that his purported administrative claim arises from a post-petition agreement between ASLC and Mr. Giordano, however, Mr. Giordano's alleged administrative claim is still not allowable. An administrative claim must arise from a post-petition transaction *with the receiver*, and cannot be based on a transaction between the claimant and a potential third party buyer (which would not even give rise to a *claim* against the receivership estate, let alone an administrative claim). *See Woburn Associates v. Kahn (In re: Hemingway Transport, Inc.*, 954 F.2d 1, 5 (1st Cir. 1992); *see also*, 75 C.J.S. Receivers § 290 ("A claim, . . . , must be one against the corporation or person whose property is in receivership.") (citing *Marlin v. Harrison*, 218 Ark. 531 (1951)); Am. Jur. 2d Receivers § 191 ("a claim must be one against the corporation or person whose property is in receivership, or against the receiver.").

35. It would not be a "necessary" cost of "preserving the estate," as required for administrative expense status under 11 U.S.C. § 503(b)(1)(A), for the Receiver to incur a liability to Mr. Giordano in exchange for a release under the Nursing Home Agreement. In this

case, preserving the estate means protecting and operating the MSF Facility, and it does not include facilitating the sale of the MSF Facility to ASLC, a particular buyer, by paying off an insider.

In this regard, Mr. Giordano's reliance on cases allowing as administrative expenses the costs of employing professional persons to sell estate property, pursuant to 11 U.S.C. §§ 327 and 330 (or its predecessors), *see In re James*, 203 B.R. 449 (Bankr. W.D. Mo. 1997), *Berman v. Palmetto Apartments Corp.*, 153 F.2d 192 (6th Cir. 1946), is inapposite. Such expenses are allowable under 11 U.S.C. § 503(b)(2), not 11 U.S.C. § 503(b)(1)(A), and they can only be incurred by employing *disinterested* persons, with prior court approval. 11 U.S.C. § 327(a); *see also*, 11 U.S.C. § 328(c).

36. For the foregoing reasons, it is not necessary for the Court to reach the question whether Mr. Giordano has proven, or could prove, that the alleged consideration supporting his purported claim, namely a release of any claims under the Nursing Home Agreement, would benefit the receivership estate. Determining the value to the receivership estate, if any, of Mr. Giordano's proposed release is a potentially complex factual issue, the resolution of which could require an evidentiary hearing preceded by discovery, perhaps including expert discovery. Based on principles of contract law, however, the value of the release to ASLC, and certainly to the estate, appears to be much less than $900,000, and perhaps zero, because the Nursing Home Agreement merely gave ASLC an option to offer to purchase the MSF Facility, and did not

*require* ASLC to make an offer.[1] Moreover, Mr. Giordano could never plausibly assert a claim against the estate based on ASLC's breach of the Nursing Home Agreement, because neither MSF nor the Receiver would be liable for a breach by ASLC. If anything, ASLC's breach of the Nursing Home Agreement would provide MSF and the Receiver with a claim against ASLC, rather than providing any party with a claim against the estate.

37. For the foregoing reasons, the Motion to Prove the Administrative Claim of Antonio L. Giordano is denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

*/s/ James E. Brown*
JAMES E. BROWN
Trial Attorney
U.S. Department of Justice, Tax Division
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6053
Facsimile: (202) 514-5238
Email: James.E.Brown2@usdoj.gov

---

[1] Mr. Giordano's assertions that the $900,000 Closing Payment "was negotiated specifically and expressly in return for that release," and that "the only reason that ASLC would make that payment is in return for Mr. Giordano's release," are based entirely on Mr. Giordano's Declaration, attached to his supplemental memorandum filed on March 19, 2008. No explanation is offered as to why, in that case, the $900,000 was included in the Purchase and Sale Agreement between ASLC and the Receiver, instead of being the subject of a separate written agreement between Mr. Giordano and ASLC. In addition, if the Court were to rely on Mr. Giordano's affidavit, the United States and other creditors would be entitled to discovery and an opportunity to submit evidence in opposition. *See, e.g.*, *CIA Petrolera Caribe, Inc. v. Arco Carribean, Inc.*, 754 F.2d 404, 408-410 (1st Cir. 1985).

**CERTIFICATE OF SERVICE**

I CERTIFY that service of the foregoing UNITED STATES' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW, has been made on this 24th day of March, 2008, by filing a copy with the Clerk of Court using the CM/ECF system, which should send electronic copies of the filing to the following CM/ECF participants:

Christopher Little, Esq.
Little, Medeiros, Kinder, Bulman
& Whitney, P.C.
72 Pine Street, 5th Floor
Providence, RI 02903

Allan M. Shine, Esq.
Winograd Shine & Zacks
123 Dyer Street
Providence, RI 02903

Douglas A. Giron, Esq.
Schechtman Halperin Savage LLP
1080 Main Street
Pawtucket, RI 02906

Jeffrey Brenner, Esq.
Nixon Peabody LLP
One Citizens Plaza, Ste. 500
Providence, RI 02903

Joseph Ferrucci, Esq.
Ferrucci Russo P.C.
55 Pine Street
Providence, RI 02903

Joseph Avanzato, Esquire
Adler Pollock & Sheehan, P.C.
One Citizens Plaza, 8th Floor
Providence, Rhode Island 02903-1345

I FURTHER CERTIFY that service of the foregoing UNITED STATES' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW, has been made on this 24th day of March, 2008, by depositing a copy in the United States mail, first class postage prepaid, addressed to the following:

Edward L. Maggiacomo, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Charles A. Lovell
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

Genevieve M. Martin, Esq.
Assistant Attorney General
150 South Main Street
Providence, RI 02903

Jonathan Savage, Esq.
Schechtman Halperin Savage
1080 Main Street
Pawtucket, RI 02860

Terry Biafore, Sr.
Babcock & Hellwell, Inc.
138 Main Street
Wakefield, RI 02879

Deborah B. Buffi, Esq.
Deputy Chief Legal Counsel
R.I. Department of Human Services
600 New London Ave., BDG 57
Cranston, RI 02920

Marc D. Wallick, Esq.
Wallick & Associates Ltd.
51 Jefferson Boulevard
Warwick, RI 02888

Maureen Hobson, Esq.
R.I. Department of Health
3 Capital Hill, Room 404
Providence, RI 02908

Lisa Daniels-Burgo, Esq.
HUD
121 South Main Street, Ste. 300
Providence, RI 02903

MMJUA of Rhode Island
1 Turks Head Building, Suite 200
Providence, Rhode Island 02903

Division of Taxation
State of Rhode Island
1 Capitol Hill, Ste. 7
Providence, RI 02909

*/s/ James E. Brown*
JAMES E. BROWN
Trial Attorney
U.S. Department of Justice, Tax Division
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6053
Facsimile: (202) 514-5238
Email: James.E.Brown2@usdoj.gov