EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ANTONIO L. GIORDANO,<br>Plaintiff<br><br>v.<br><br>MT. ST. FRANCIS ASSOCIATES, L.P.,<br>Defendant | : | C.A. No.: 08-48/S |
| UNITED STATES OF AMERICA,<br>Interpleader-Plaintiff<br><br>v.<br><br>ANTONIO L. GIORDANO,<br>MT. ST. FRANCIS ASSOCIATES, L.P.<br>And JOSEPH FERRUCCI, ESQUIRE,<br>as Receiver | : | |

## REAL ESTATE PURCHASE AND SALE AGREEMENT

THIS AGREEMENT is made and entered into by and between Joseph P. Ferrucci, in his capacity as RECEIVER of MT. ST. FRANCIS ASSOCIATES, L.P., and not individually, with a mailing address for purposes of this Agreement c/o Ferrucci Russo PC, 55 Pine Street, Providence, Rhode Island 02903 (hereinafter referred to as "Receiver") and American Senior Living Communities RI I, LLC or its nominee with a mailing address for purposes of this Agreement at 185 Peirce Street, East Greenwich, Rhode Island 02818 (hereinafter referred to as "Buyer").

WHEREAS, Buyer submitted a prior offer to purchase the Premises (hereinafter defined), including the nursing home facility known as "Mount Saint Francis Health Center" (the "Prior Offer").

WHEREAS, Buyer expressly reserved the right in the Prior Offer to withdraw the Prior Offer in the event that the Court had not approved the proposed sale of the Premises to the Buyer as contemplated under the Prior Offer on or before February 15, 2008.

WHEREAS, the Court did not approve the sale of the Premises to Buyer as contemplated under the Prior Offer on or before February 15, 2008, due to, among other reasons, delay associated with the United States of America's removal of this matter to the U.S. District Court for the District of Rhode Island and Buyer has exercised its right to withdraw the Prior Offer.

WHEREAS, Buyer has presented Receiver with a revised Offer to purchase the Premises (the "Offer"), which Offer supercedes and nullifies any prior offers and/or agreements relating to the Premises which Buyer was and/or is a party to.

**WITNESSETH THAT**

1. **PREMISES**:

Receiver agrees to sell and convey to Buyer or Buyer's nominee, and Buyer or Buyer's nominee agrees to purchase, upon the terms and conditions hereinafter set forth, all of Receiver's right, title and interest as said Receiver of MT. ST. FRANCIS ASSOCIATES, L.P. in and to all of the business assets of every kind and description related to Mt. St. Francis Associates, L.P. (the "Defendant"), including, but not limited to: cash, accounts receivable, inventory, prepaids, land, building, building improvements, furniture, fixtures, supplies, machinery, equipment, other movable equipment, licenses and other assets as recorded or unrecorded at the time of closing, wherever located, including, without limitation the assets located at 4 St. Joseph Street, Woonsocket, Rhode Island and the trademark "Mt. St. Francis Health Center," excluding and excepting therefrom the Excluded Assets as defined below (the "Premises"), free and clear of liens, mortgages, encumbrances, claims, pre-petition liabilities and interest. Notwithstanding anything to the contrary contained herein, the Receiver's conveyance of the Premises does not include any leased equipment, machinery, or other leased assets, excepting those assets which are subject to a so-called "finance lease," which said assets shall be sold and transferred to Buyer in accordance with this Agreement free and clear of liens, claims and encumbrances, or any assets not owned by Defendant, and the proceeds of any of the foregoing or claims that Defendant may have against insiders, lenders or principals of Defendant up to the date of the Court's approval of this Agreement (collectively, the "Excluded Assets"). The Buyer acknowledges that the transfer and conveyance of the Premises does not and shall not constitute a transfer or conveyance of any right, title or interest in the Excluded Assets.

2. **DATE OF THIS AGREEMENT**:

The Date of this Agreement shall be the date on which the Receiver signs this Agreement, as set forth immediately under the Receiver's signature below. The Receiver shall accept and sign this Agreement within ten (10) days of his receipt from Buyer. Further, within five (5) days of his acceptance and execution of this Agreement, the Receiver shall provide written notice to the Buyer acknowledging that the Receiver has accepted and executed this Agreement. In the event that the Receiver fails to timely accept and sign this Agreement as required in this paragraph 2, Buyer may, within Buyer's sole discretion, extend the date of acceptance by Receiver or notify the Receiver that this Agreement is null and void, and of no further force or effect.

3. **TITLE AND COURT APPROVAL**:

Conveyance of the Receiver's interest as aforesaid in the Premises shall be made by a Receiver's Deed ("Deed") in customary form, without covenants, warranties or representations of any kind whatsoever, conveying to the Buyer all of the Receiver's right, title and interest as said Receiver

in and to the Premises, free and clear of all liens, mortgages, security interests, claims, encumbrances and interests specifically including, but not limited to, any and all statutory liens, judgment liens, claims for municipal real estate or tangible property taxes or other claims of the City of Woonsocket, Rhode Island. The conveyance and transfer of the Premises is expressly made subject to approval of the United States District Court, District of Rhode Island, in the receivership proceeding pending before that Court as case number 1:08-cv-00048-S-LDA (formerly Rhode Island Superior Court, docket number P.B. 06-3301) (the "Court"), after hearing with notice to all interested parties, authorizing and ordering the sale free and clear of all liens, mortgages, security interests, claims, encumbrances and interests, specifically including, but not limited to, any and all statutory liens, claims for municipal real estate or tangible property taxes or other claims of the City of Woonsocket, Rhode Island, but subject in all respects to paragraph 5(i) hereof. The conveyance of the Premises shall be subject to all restrictions, easements and conditions of record, and subject to all applicable zoning and other federal, state and municipal laws and regulations.

Except to the extent to which the Buyer shall notify the Receiver, in writing, within fifteen (15) days from the date of the Court's approval of this Agreement of any objectionable title condition, the Buyer shall be deemed to have waived any objections on account thereof, and the Buyer shall be obligated to accept title to the Premises subject to any such conditions.

Buyer acknowledges and understands that the consummation of this Agreement is subject to Court approval and that Receiver is obligated to submit to the Court for its review and consideration any other offers for the Premises received by the Receiver subsequent to this Agreement for a purchase price higher than or on more advantageous terms than that set forth herein for the Court's review and consideration.

Buyer's obligations to purchase under this Agreement are expressly conditioned upon Buyer having first received any and all approvals from the RIDOH necessary to approve a change in effective control for the Premises from Defendant to Buyer.

Buyer and Receiver hereby acknowledge and agree that Buyer's obligation to purchase the Premises as set forth herein is expressly conditioned upon the approval by the United States Department of Housing and Urban Development ("HUD") of: (1) a Transfer of Physical Assets to Buyer in connection with the sale of Assets (including the Nursing Home Facility); (2) the so-called 223(a)(7) refinance application of Buyer with respect to the Assets secured by the Mortgage Loans (as hereinafter defined in Section 5), or some other refinancing option that may be proposed by HUD that is acceptable to Buyer in its reasonable discretion; and (3) the assumption of the Mortgage Loans by Buyer.

**4. <u>POSSESSION</u>:**

Upon conveyance of title to the Premises, full possession of the Premises shall be delivered to the Buyer in the same condition in which the same are as of the date of this Agreement, reasonable use and wear and damage by fire, the elements or other casualty otherwise covered by insurance excepted.

5. **PURCHASE PRICE:**

The agreed total consideration to be paid or performed by Buyer for the acquisition of all of Defendant's assets referenced in paragraph 1 hereof shall be as follows:

(i). Buyer shall assume all of the existing indebtedness relating to those promissory notes originally granted by Defendant in favor of Suburban Mortgage Associates, Inc., as assigned to Midland Loan Services, Inc. (the "Notes") totaling approximately NINE MILLION THREE HUNDRED THOUSAND AND 00/100 DOLLARS ($9,300,000.00), which Notes are secured by mortgages on the Premises. To the extent that the Court may, at any time hereafter, conclude that some or all of the mortgage liens securing said Notes are invalid or should be subordinated to some other debt(s) or claim(s), then Buyer shall make payments on the Notes, when and as same become due and payable, directly to the Receivership Estate or its successor or assignee. The assumption of the Notes by Buyer shall be considered as a contribution of Buyer's equity towards the purchase of the Premises.

(ii). Buyer shall forgive, and therefore convert to equity, the liabilities owed to Buyer for priority administrative operating loans made to the Receiver for the period beginning June 21, 2006 up to and including acquisition, totaling as of the date of this Agreement approximately SIX HUNDRED THIRTY-EIGHT THOUSAND TWO HUNDRED SIXTY-NINE AND 49/100 DOLLARS ($638,269.49), plus interest accrued to the date of the Closing.

(iii). Buyer shall, at Closing, pay to the Receivership Estate the sum of NINE HUNDRED THOUSAND AND 00/100 DOLLARS ($900,000.00), to be reduced by, in order of priority, (i) administrative fees and expenses of the Receiver in this proceeding; (ii) valid municipal lien amounts, if any, owing to the City of Woonsocket; and (iii) all outstanding principal owed relating to any unpaid mortgage payments due at the time of the Closing under those certain mortgage loans currently held by Midland Loan Services, Inc., assignee of Suburban Mortgage Associates, Inc (the "Mortgage Loans")(with all outstanding interest owed on said unpaid mortgage payments due at the time of the Closing to be forever waived and forgiven), which unpaid mortgage principal payments shall be assumed by Buyer at the time of the Closing (the "Closing Payment"). Buyer's obligation to make the Closing Payment and to Close is expressly conditioned upon (i) receipt of an order of the Court confirming that Buyer's acquisition of the Premises shall be free and clear of any and all claims, except as set forth herein, and (ii) the payment of all valid municipal liens, if any, of the City of Woonsocket (the "City") attaching to the Assets (the "Municipal Liens") from the Closing Payment, in such amount (1) to cause the City to discharge and release said Municipal Liens, or (2) so that the Receiver shall be able convey the Assets to the Buyer free and clear of any and all Municipal Liens. The Order approving sale shall provide that Buyer shall have no obligation to pay said Municipal Liens from its own funds. The payment of the Closing Payment by Buyer to the Receiver and Buyer's assumption of the outstanding mortgage principal payments at Closing shall be considered as a contribution of Buyer's equity towards the purchase of the Premises.

(iv). Buyer shall pay, in addition to the amount set forth in Section 5(iii) above, the Court-approved and unpaid fees owed to the Receiver as of the date of the Closing up to the sum of $150,000.00. The payment of said unpaid fees by Buyer to the Receiver shall be considered as

a contribution of Buyer's equity towards the purchase of the Premises. Buyer shall not be responsible for any unpaid or additional fees and expenses of the Receiver on or after the date of the Closing.

(v). Buyer's obligation to make the Closing Payment and to Close pursuant to this Agreement is expressly conditioned on the Court's approval, as an administrative priority post-petition expense of the Receivership of the unpaid fees at the time of the Closing of ASLC Management of RI I, LLC ("Manager") for managing the Facility pursuant to that certain Management Agreement between Receiver and Manager dated June 21, 2006 (the "Management Agreement"), subject in all respects to the priorities referenced in Section 5(iii) above.

**6. <u>THE CLOSING</u>:**

Provided that the Court Order approving the sale is not the subject of an injunction or stay prohibiting consummation of the sale contemplated in this Agreement, the closing of the sale of the Premises to Buyer (the "Closing") is to be held at Ferrucci Russo P.C., 55 Pine Street, Providence, Rhode Island 02903, on the tenth (10th) day following the date the last approval set forth in paragraph 3 hereof is obtained.

At the Closing, Buyer shall make any payments required as set forth in Section 5 hereof, unless sooner paid, by certified check or wire transfer.

Buyer shall have no obligation to close until and unless all other conditions precedent to Buyer's obligations to perform under this Agreement shall have occurred, as described in paragraph 23 hereof.

Notwithstanding the foregoing, if the Closing does not occur on or prior to, September 30, 2008, despite Buyer's diligent efforts, then the Buyer shall have the right, in its sole and absolute discretion, either (i) to terminate this Agreement upon notice to the Receiver, in which case the Agreement shall be null and void, and of no further force or effect; or (ii) extend this Agreement on a month-to-month basis for up to a total of three consecutive months (or up until and including December 31, 2008). Buyer shall elect to extend or terminate the Agreement by providing written notice to the Receiver of such election on or before September 15, 2008, and at least five calendar days prior to the first day of any month thereafter while the Agreement remains in effect. In the event of a termination as provided herein, the Receiver shall return to the Buyer the deposit paid hereunder, if any, with interest earned thereon, if any.

It is agreed and understood that **TIME IS OF THE ESSENCE** of this Agreement.

At Closing, Buyer shall provide Receiver with the basis for the computation of all adjustments and other entries on the Settlement Statement. At the Closing the Buyer's net proceeds check shall be delivered to the Receiver and held in escrow pending recording of the Deed, at which time such funds shall be released from escrow. Buyer agrees to record the Deed in the appropriate recording office forthwith after delivery of same. This provision shall be deemed to survive the Closing. Buyer shall notify Receiver forthwith of the recording of the Deed.

## 7. ADJUSTMENTS:

Any and all costs for rents, fuels, water charges, and sewer use charges, if any, relating to the Premises for any period of time prior to this Closing shall be paid by Buyer at the Closing.

Any assessments constituting a lien on the Premises for any period of time prior to or after the Closing shall be assumed and paid by the Buyer. Buyer hereby agrees to assume and pay when due all taxes and assessments which are allowed as a credit against the Purchase Price. Buyer shall be responsible for payment of all documentary transfer stamps and statutory recordings, fees and costs.

Real estate taxes, tangible property taxes, and fire district taxes assessed upon the Premises for any period of time prior to or after the Closing shall be assumed and paid by the Buyer.

For the avoidance of doubt, the Buyer hereby acknowledges and agrees that the Receiver will not be responsible to pay costs or expenses with respect to the Premises arising prior to the Closing and Buyer hereby agrees to assume and discharge the same.

## 8. EXTENSION OF MANAGEMENT AGREEMENT:

As a condition precedent to Buyer's obligation to perform under this Agreement, the Court, at or before the time that it approves the purchase contemplated in this Agreement, shall, by order, extend the Management Agreement on terms reasonably satisfactory to Buyer.

## 9. EXTENSION OF CLOSING:

If the Receiver shall be unable to give title to Buyer, or to make conveyance, or to deliver possession of the Premises, all as in accordance with this Agreement, or if at the time of the Closing, the Premises does not conform with the provisions of this Agreement, then the Receiver shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the Premises conform to the provisions hereof, as the case may be, in which event the Closing hereunder shall be extended by thirty (30) days. It is understood and agreed that Receiver shall not be under any obligation to attempt to cure by litigation or otherwise any defect which may be found to exist in the title to the Premises or to remove any encumbrances upon the title to the Premises not voluntarily placed thereon by the Receiver subsequent to the date hereof or to correct any violations of subdivision, plat, zoning, building, minimum housing standard regulations or other similar restrictions or regulations. This paragraph is also not intended to apply to any damage to the Premises caused by fire or other casualty, as to which the provision of a Paragraph hereof entitled "11. INSURANCE" shall apply. The Buyer may, however, with the Receiver's consent, elect to waive any such defects and accept such title to the Premises as the Receiver is able to convey, without any warranty as to such conditions and without a reduction of the Purchase Price, and an acceptance of the Deed by the Buyer shall be deemed full performance and discharge of all the obligations of the Receiver under this Agreement.

**10. RECEIVER'S TENDER OF DEED.**

The tender of the Deed by the Receiver and acceptance by Buyer shall be deemed full performance and discharge of every agreement and obligation of the Receiver contained or expressed in this Agreement.

**11. INSURANCE:**

Until delivery of the Deed to Buyer, the buildings on the Premises shall be insured by Receiver against loss by fire, under the same policy as exists at present, and in case of any loss or other casualty in an amount not less than existing as of the date of this Agreement, occurring between the date of this Agreement and the delivery of the Deed. In the event of any such loss or other casualty, Buyer shall remain bound to purchase the Premises, and Receiver agrees to pay over or assign to Buyer upon payment of the remainder of the Purchase Price all sums recovered or recoverable on account of said insurance, plus the deductible amount, if any, unless the Receiver shall have restored the premises to their former condition in which event the proceeds shall be retained by Receiver.

In the event of any loss or casualty occurring after Court approval of this Agreement and prior to delivery of the Deed in an amount in excess of presently existing insurance, the Receiver shall have the option of, but shall have no obligation of, (a) restoring the Premises to the same condition in which they were on the date of this Agreement, reasonable wear and tear excepted; or (b) reducing the Purchase Price by the amount of such damage, as said amount may be agreed to by the parties; or (c) failing such agreement, seek a determination from the Court as to the treatment of such loss or casualty. In the event that Receiver elects not to restore the Premises and not to reduce the Purchase Price as herein provided, then either party may terminate this Agreement. In the event this Agreement is terminated, the Receiver shall refund the Deposit, if any, to the Buyer with interest earned thereon, if any, and all obligations of the parties hereto shall cease and this Agreement shall become null and void, without recourse to either party hereto.

**12. DEFAULT:**

If the Buyer shall default in the performance of Buyer's obligations hereunder, the Receiver shall have the right to resell the Premises without notice to the Buyer and without previously tendering a Deed to the Buyer. Such resale shall not in any way release the Buyer from liability for breach of contract and, in the event of such default, the Receiver shall have the right, whether the Real Estate is resold or not, to retain the Deposit, if any, and any interest earned thereon as liquidated damages, and not as a penalty, or as security for payment by the Buyer of any additional damages to which the Receiver may be entitled by reason of the Buyer's default, as the Receiver may elect, without prejudice to or waiver of any rights to other or further damages or to pursue any other remedy, legal or equitable, which shall accrue to Receiver by reason of Buyer's default.

## 13. BREAK-UP FEE:

As a condition to Buyer's obligation to perform under this Agreement, the Court, at the time that it approves the purchase contemplated in this Agreement, shall approve the payment of a Break-Up Fee to Buyer in the event that it is not ultimately the successful bidder for the Assets, and shall confirm that Buyer is entitled to the payment of the Break-Up Fee specified as per the terms of Article 4.5 of the Management Agreement.

## 14. BROKERS AND AGENTS:

Receiver and Buyer warrant and represent, each to the other that no real estate broker-initiated or otherwise brought about this transaction. Buyer agrees to indemnify Receiver against, and to hold Receiver harmless from any and all cost, expense or liability based upon or related to a claim for a brokerage commission or finder's fees in connection with the transaction contemplated hereby to the extent such liability shall be based upon arrangements or agreements made or claimed by third parties to have been made by or on behalf of the Buyer and not disclosed in this Agreement.

## 15. NOTICES:

All notices as required in this Agreement must be in writing. All notices shall be conveyed by certified mail or personal delivery. Notice by certified mail will be effective upon sending. Notice by personal delivery will be effective upon delivery to the other party. Notices to the Receiver and the Buyer must be addressed to the addresses that appear in the first paragraph of this Agreement.

## 16. BUYER REQUIRED TO COMPLY WITH ZONING:

Buyers of real estate in the State of Rhode Island are legally obligated to comply with all local real estate ordinances, including, but not limited to, ordinances on the number of related persons who may legally reside in a dwelling, as well as ordinances on the number of dwelling units permitted under the local zoning ordinances.

## 17. RADON GAS:

Radon gas has been determined to exist in the State of Rhode Island. The Buyer acknowledges that the Receiver has no obligation whatsoever to perform any tests for radon, and that such testing, if any, shall be solely at Buyer's expense. The Receiver makes no representation whatsoever concerning the existence or absence of radon in the Premises. The discovery of radon shall in no way relieve the Buyer from its performance and/or obligations under this Agreement.

## 18. LEAD POISONING DISCLOSURE:

The Buyer acknowledges that the Receiver shall have no obligation whatsoever to perform any risk assessments or inspections for lead-based paint hazards within the Premises. Any such inspections or risk assessments shall be done solely at the Buyer's election and expense. Buyer

acknowledges that Buyer has been advised that Receiver has no reports or information concerning lead-based hazards within the Premises, and that Receiver makes no representations concerning the existence or absence of lead-based paint within the Premises. The discovery of any lead-based paint hazards shall in no way relieve the Buyer from its performance and/or obligations under this Agreement.

**19. NO ENVIRONMENTAL CONDITION:**

Buyer acknowledges that Buyer may conduct any environmental site assessments or studies of any kind, which Buyer deems advisable and/or necessary, at Buyer's sole expense. However, Buyer expressly acknowledges and agrees that the conveyance contemplated hereunder is not conditioned in any way whatsoever upon the Receiver's conducting or performing any cleanup or remedial action of any kind or nature on the Premises and Buyer agrees to accept the Premises "as is," including all environmental conditions of the Premises.

Buyer shall, prior to conducting any on-site environmental site assessments as the Premises, obtain Receivers written consent. Receiver's consent may be conditioned upon delivery by Receiver of a certificate of liability insurance in such amounts as is normal and customary for Skilled Nursing Facilities, naming the Receiver as an additional insured and named payee.

Buyer hereby agrees to indemnify and hold harmless Receiver from and against any and all claims, charges, losses, costs and other liabilities arising from or in any manner relating to injuries to persons or the Premises in connection with Buyer's environmental site assessment(s). Without in any manner limiting the foregoing, Buyer agrees that it will immediately restore the Premises to the condition it was in, prior to the commencement of Buyer's site assessment(s), including, without limitation, the repair, replacement or restoration of any damage to the Premises. Buyer and Receiver agree that the facility maintains Insurance that covers these types of claims, charges, losses, costs and other liabilities arising from or in any manner relating to injuries to persons or the Premises in connection with Buyer's environmental site assessment(s). Such insurance shall be accessed first for such claims, charges, losses, costs and other liabilities.

The provisions of this Section 19, shall survive the termination of this Agreement and/or the delivery of the Deed by the Receiver.

**20. WETLANDS DISCLOSURE:**

All or part of the Premises may have been previously determined by the Rhode Island Department of Environmental Protection to be a wetland, pond, bank, bog, salt marsh, swamp, meadow, or flat as these terms are defined in Chapter 1 of Title 2 of the Rhode Island General Laws. The parties hereto acknowledge that it shall be Buyer's sole responsibility to conduct any independent examination to determine whether the Premises are in an area determined to be a Wetlands pursuant to such statutory provisions.

**21. RESTRICTIONS OR LEGISLATIVE/GOVERNMENTAL ACTION:**

Buyer is responsible for investigating whether there are any restrictions or legislative/governmental actions, present or proposed, which affect or would affect the use of the Premises and Buyer acknowledges that it has not relied on any advice or any representations by Receiver, his employees, attorneys, officers, directors, consultants, agents, or any other representatives of Receiver in this transaction with regard to same.

**22. ACCURATE DISCLOSURE OF SELLING PRICE:**

Except as modified herein, Buyer and Receiver acknowledge that this Agreement accurately reflects the gross sale price as indicated above in this Agreement. Buyer and Receiver understand and agree that this information shall be disclosed to the Internal Revenue Service as required by law.

**23. CONDITIONS:**

Buyer's obligations under this Agreement are expressly conditioned upon Buyer having first received any and all approvals from the RIDOH necessary to approve a change in effective control for the Premises from Defendant to Buyer and Buyer's receipt from the RIDOH and/or any other State or Federal agencies that have jurisdiction thereof all approvals necessary for Buyer, from and after the date of the Closing, to place into service, license and use up to 194 licensed, Medicaid and Medicare dually certified, beds at the Nursing Home Facility.

Buyer and Receiver hereby acknowledge and agree that Buyer's obligation to purchase the Premises as set forth herein is expressly conditioned upon HUD's approval of: (1) a Transfer of Physical Assets to Buyer in connection with the sale of Assets (including the Nursing Home Facility); (2) the so-called 223(a)(7) refinance application of Buyer with respect to the Assets secured by the Mortgage Loans, or some other refinancing option that may be proposed by HUD that is acceptable to Buyer in its discretion; and (3) the assumption of the Mortgage Loans by Buyer.

Buyer's Offer and obligations under this Agreement are further subject to the condition, to be approved by the Court, that there shall be no further advertisement seeking additional bids for the purchase of Defendant's assets that are the subject hereof given Buyer's concern that such advertising would substantially devalue the Nursing Home.

**24. NO WARRANTIES AND REPRESENTATIONS AND NO RELIANCE ON OTHERS:**

Buyer has entered into this Agreement based on Buyer's independent review and investigation of the Premises and not on any representation made by the Receiver or any of Receiver's employees, officers, directors, shareholders, attorneys, consultants, agents or any other representatives. THIS MEANS THAT THE PREMISES IS BEING SOLD "AS IS", "WHERE IS", AND "WITH ALL FAULTS".

Buyer specifically acknowledges that the property shall be sold to Buyer "as is", "where is", and "with all faults" and that no warranties or representations or covenants of any kind, expressed or implied, have been or will be made by Receiver or any other party with respect to the physical, operating or any other condition of the Premises, or repair of the Premises, or utilities or sewer systems servicing the same or the use or operation to which the Premises may be put by Buyer, or the applicability of or compliance with applicable federal, state, county, city or other public authorities having or claiming jurisdiction over the Premises or any laws, statutes, codes, ordinances or regulations of any government authority, including without limitation, zoning, land use, building and fire safety, and environmental laws, including, without limitation, all laws, ordinances and regulations concerning hazardous waste and toxic substances, odors, noise, air emissions, discharge of water, chemicals and/or air pollution, or otherwise.

Buyer acknowledges that there have been no representations or warranties as to quality, quantity, durability, condition, merchantability, fitness for any particular purpose, or any other aspects of the Premises. Buyer acknowledges that it has not been influenced to enter into this transaction by the Receiver or his attorneys, or their employees, agents, consultants or any other representatives, and that Buyer has not received nor relied upon any statements or representations made by the Receiver or his attorneys, or their employees, agents, consultants or representatives.

Receiver specifically disclaims all warranties imposed by statute or otherwise and makes no warranty of habitability, merchantability or fitness of the Premises for a particular purpose. The terms and provisions of this section shall survive the Closing.

**25. AMENDMENTS:**

This Agreement may not be amended or modified except pursuant to a written instrument executed by both Buyer and Receiver.

**26. CONSTRUCTION OF AGREEMENT:**

This Agreement may be executed in one or more counterparts and each shall be deemed to be an original, and shall be binding upon and inure to the benefit of the respective heirs, executors and/or administrators, successors, and/or assigns, of the respective parties hereto, subject to the express conditions stated herein. This Agreement and the interpretation hereof shall be governed by the laws of the State of Rhode Island and the parties expressly agree that the Court shall have jurisdiction to resolve any and all disputes arising under this Agreement, to interpret any terms hereof, and to enforce any and all provisions of this Agreement.

**27. ENTIRE AGREEMENT:**

The parties hereto, each declare that this Agreement and any other agreements entered into in connection herewith contain the entire agreement between the parties, and that it is subject to no understandings, conditions or representations other than those expressly stated herein or therein. All understandings and agreements heretofore had between the parties, if any, are extinguished and are of no force and effect whatsoever except as the same may be expressly set forth in this Agreement or any other agreement entered into between the Parties in connection herewith. This Agreement is entered into by the Buyer after full investigation of the Premises, and no reliance is

made by the Buyer upon any statements or representations not made in this Agreement. Nothing in this Agreement shall be construed to confer any rights on any third parties.

**28. PROHIBITION AGAINST RECORDING:**

This Agreement may not be recorded in the Records of Land Evidence of the municipality in which the Premises is located. IN THE EVENT OF ANY RECORDING OF THIS AGREEMENT, AT THE OPTION OF THE RECEIVER, THE BUYER WILL CONCLUSIVELY BE DEEMED IN DEFAULT HEREUNDER ENTITLING THE RECEIVER TO EXERCISE ALL RIGHTS AND REMEDIES HEREUNDER FOR BUYER'S DEFAULT. In addition, any third party may conclusively rely upon an affidavit executed and recorded by the Receiver in said Land Evidence records stating the Receiver has elected to hold the Buyer in default, as conclusively establishing that the Buyer has no further right, title, or interest under this Agreement or to the Premises, all of which will be deemed released and conveyed to Receiver.

**29. NO PERSONAL LIABILITY:**

Notwithstanding anything herein to the contrary, the Receiver's execution of this Agreement is solely in his capacity as Receiver and shall not render the Receiver personally liable in any way whatsoever.

[SIGNATURES ON FOLLING PAGE]

WITNESS the signatures of the above parties on the date set forth below.

Buyer:

**American Senior Living Communities RI I, LLC**

By ______________________

Title EVP/CFO

JEFFREY A. BARNHILL
Print Name of Above Signatory

20-5148359
Buyer's Federal Tax ID Number

401-398-7131 401-398-7313
Phone Number Fax Number

620 MAIN STREET, 3B
Address

EAST GREENWICH, RI 02818
City, State, Zip Code

6/9/08
Date

**Witness to Above Signature**

______________________

**Seller:**

______________________
Joseph P. Ferrucci, Esq., as and only as Receiver of Mt. St. Francis Associates, L.P., and not individually

Dated: 6/9/08

**EXHIBIT "A"**

Legal Description

PROPERTY ADDRESS:

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
ATTORNEYS AT LAW

1300 MOUNT KEMBLE AVENUE
P O. BOX 2075
MORRISTOWN, NEW JERSEY 07962-2075
(973) 993-8100
FACSIMILE (973) 425-0161

JOHN P LEONARD
Direct dial: (973) 425-8855
jleonard@mdmlaw com

June 9, 2008

**VIA FACSIMILE and ELECTRONIC MAIL**

Joseph P. Ferrucci, Esq.
Ferrucci Russo, P.C.
55 Pine Street
Providence RI, 02903

**RE: Giordano v. Mt. St. Francis Associates, L.P.**
**C.A. No. 08-48S**
**MDMC File No.: A0422-1008**

Dear Mr. Ferrucci:

We represent American Senior Living Communities RI I, LLC ("ASLC-RI"). ASLC-RI has authorized us to submit the attached proposed Real Estate Purchase and Sale Agreement (the "Agreement") to you in your capacity as Receiver of Defendant Mt. St. Francis Associates, L.P. (Defendant) as ASLC-RI's best offer to purchase all of the assets of Defendant, as more fully defined in the Agreement.

As you are well aware, the Receivership Estate has now been the subject of prolonged and costly litigation dating back to June 21, 2006. At the outset of the litigation, an affiliate of ASLC-RI, ASLC Management of RI, I, LLC ("ASLC Management"), was appointed to act as manager of the nursing home owned and operated by Defendant (the "Nursing Home"), charged with overseeing its day-to-day operations. Over the past two years and as this litigation has continued to drag on, ASLC Management has employed its best efforts to improve the conditions and operations of the Nursing Home, maintain the level of care provided to the Nursing Home's patients and, when necessary, forward loans to the Nursing Home to cover its operating shortfalls. At all times, ASLC Management continued to provide these services and financial support with the understanding that ASLC-RI would ultimately submit an offer to purchase the Nursing Home, which, if accepted by the Court, would result in ASLC-RI assuming ownership of the Nursing Home.

Due to factors outside of ASLC-RI's control, not the least of which being the prolongation of the litigation, the Nursing Home continues to suffer declines in census and overall financial operations. Based on the negative impact of these outside forces on the value of

the Nursing Home, ASLC-RI ultimately submitted an offer to purchase the facility for an amount that was less than the value of the Nursing Home that was initially contemplated when the litigation was first initiated. Almost immediately following ASLC-RI's submission of its offer to purchase the Nursing Home to you in your capacity as Receiver and your filing of a Petition to Approve the sale to the State Court initially charged with overseeing this matter, the United States of America filed a motion to intervene and then a motion to remove the matter to Federal Court. As anyone involved with this matter knows, these actions by the United States had a devastating impact on the day-to-day operations of the facility – primarily by causing a steep decline in census at the Nursing Home, as the public and referring health care providers started to question the long term outlook and stability of the facility. The United States' actions have caused the Nursing Home to again operate with a significant financial shortfall that has left the facility unable to make its required mortgage payments and stay current with the management fees owed to ASLC Management.

In light of the malingering and deleterious actions of the interested parties to this action and the negative impact that those actions have had on the operations and overall value of the Nursing Home, ASLC-RI has been left with little choice but to withdraw its prior offer to purchase the Nursing Home as it is no longer economically feasible to purchase the facility at the previously submitted terms.

Notwithstanding the foregoing and in spite of everything that has taken place throughout the litigation, ASLC-RI has authorized us to submit the attached Agreement as a revised offer to purchase the Nursing Home under terms that still provide significant value to the Receivership Estate. In fact, considering that the most recent appraisal of the facility indicated a value of approximately only $4.9 million, ASLC-RI's offer – providing the Estate over $11 million in value for the Nursing Home – far exceeds both the facility's fair market value and any other potential bids that could even hoped to be received for the facility. Frankly, if ASLC-RI's purchase of the facility cannot be accomplished within the timeframes and under the terms set forth in the attached Agreement, then ASLC-RI intends to withdraw its generous offer and pursue the facility at a later time – when any and all prospective purchasers will be bidding in relation to the actual value of the facility, i.e., some $6 million less than ASLC-RI's current offer.

With respect to Mr. Giordano's continued threats of filing a lawsuit against ASLC-RI based on the terms of its offer, we feel that position is ludicrous insofar as it is the only offer to purchase the facility has received coupled with the fact that the offer far exceeds the value of the Nursing Home. It is important to remember that ASLC-RI can discontinue its efforts to purchase the Nursing Home without ever subjecting itself to the threats of litigation from Mr. Giordano. We believe Mr. Giordano's claims should either be raised to Judge Smith in the form of an objection or deemed waived by operation of law. In the event an objection is filed, we hope His Honor will recognize that such an objection would need to be resolved on the merits or waived in order for our client to proceed with the purchase. Otherwise, we suspect litigation will be pursued subsequent to the Court's approval but prior to closing in some misguided attempt to

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP



obtain leverage over the purchasers. Frankly, prior discussions regarding allowing Mr. Giordano to have an administrative claim for some amount of money, although unordinary, are acceptable to our client. We suspect, however, that any such claim would probably not be allowed or, if allowed, will prevent or postpone the closing while litigation ensues between Mr. Giordano and the United States.

ASLC-RI's purchase of the Nursing Home is undeniably a positive for all of the entities and individuals concerned. We also believe it is a positive for the community as well. Unfortunately, the amount of time that has passed has a placed an enormous, and unforeseen, financial burden on our clients. Nevertheless, they remain committed to purchase the Nursing Home and hope the current purchase offer and proposal is acceptable to His Honor and all interested parties.

Needless to say, should you have any questions or require any additional information prior to submitting this offer to the Court, please do not hesitate to contact me.

Very truly yours,

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

John P. Leonard

Enclosures - Real Estate Purchase and Sale Agreement
- Fourth Extension Agreement