BK0999PG0[illegible]

# Regulatory Agreement for Multifamily Housing Projects

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

**Under Sections 207, 220, 221(d)(4), 231 and 232, Except Nonprofits**

Project No. 016-43077 / 016-15011 → See 1st Amendment to Regulatory Agreement attach

Mortgagee Suburban Mortgage Associates Incorporated

Amount of Mortgage Note $8,622,900 and $ 1,103,600.00 Date July 14, 1995

Mortgage: Recorded: Woonsocket State Rhode Island County Providence Date July 14, 1995
Book 999 Page 67

Originally endorsed for insurance under Section 232

This Agreement entered into this 13th day of July, 19 95, between Mt. Saint Francis Associates whose address is 4 St. Joseph Street, Woonsocket, RI 02895

their successors, heirs, and assigns (jointly and severally, hereinafter referred to as Owners) and the undersigned Secretary of Housing and Urban Development and his successors (hereinafter referred to as Secretary).

In consideration of the endorsement for insurance by the Secretary of the above described note or in consideration of the consent of the Secretary to the transfer of the mortgaged property or the sale and conveyance of the mortgaged property by the Secretary, and in order to comply with the requirements of the National Housing Act, as amended, and the Regulations adopted by the Secretary pursuant thereto, Owners agree for themselves, their successors, heirs and assigns, that in connection with the mortgaged property and the project operated thereon and so long as the contract of mortgage insurance continues in effect, and during such further period of time as the Secretary shall be the owner, holder or reinsurer of the mortgage, or during any time the Secretary is obligated to insure a mortgage on the mortgage property:

1. Owners, except as limited by paragraph 17 hereof, assume and agree to make promptly all payments due under the note and mortgage.

2. (a) Owners shall establish or continue to maintain a reserve fund for replacements by the allocation to such reserve fund in a separate account with the mortgagee or in a safe and responsible depository designated by the mortgagee, concurrently with the beginning of payments towards amortization of the principal of the mortgage insured or held by the Secretary of an amount equal to $ 4,508.75 per month unless a different date or amount is approved in writing by the Secretary.

Such fund, whether in the form of a cash deposit or invested in obligations of, or fully guaranteed as to principal by, the United States of America shall at all times be under the control of the mortgagee. Disbursements from such fund, whether for the purpose of effecting replacement of structural elements and mechanical equipment of the project or for any other purpose, may be made only after receiving the consent in writing of the Secretary. In the event that the owner is unable to make a mortgage note payment on the due date and that payment cannot be made prior to the due day of the next such installment or when the mortgagee has agreed to forgo making an election to assign the mortgage to the Secretary based on a monetary default, or to withdraw an election already made, the Secretary is authorized to instruct the mortgagee to withdraw funds from the reserve fund for replacements to be applied to the mortgage payment in order to prevent or cure the default. In addition, in the event of a default in the terms of the mortgage, pursuant to which the loan has been accelerated, the Secretary may apply or authorize the application of the balance in such fund to the amount due on the mortgage debt as accelerated.

(b) Where Owners are acquiring a project already subject to an insured mortgage, the reserve fund for replacements to be established will be equal to the amount due to be in such fund under existing agreements or charter provisions at the time Owners acquire such project, and payments hereunder shall begin with the first payment due on the mortgage after acquisition, unless some other method of establishing and maintaining the fund is approved in writing by the Secretary.

3. Real property covered by the mortgage and this agreement is described in Schedule A attached hereto.

~~(This paragraph 4 is not applicable to cases insured under Section 232)~~

~~4. (a) Owners shall make dwelling accommodations and services~~ ~~of the project available to occupants at charges not exceeding those established in accordance with a rental schedule approved in writing by the Secretary, for any project subject to regulation of rent by the Secretary. Accommodations shall not be rented for a period of less than thirty (30) days, or, unless the mortgage is insured under Section 231, for more than three years. Commercial facilities shall be rented for such use and upon such terms as approved by the Secretary. Subleasing of dwelling accommodations, except for subleases of single dwelling accommodations by the tenant thereof, shall be prohibited without prior written approval of Owners and the Secretary and any lease shall so provide. Upon discovery of any unapproved sublease, Owners shall immediately demand cancellation and notify the Secretary thereof.~~

~~(b) Upon prior written approval by the Secretary, Owners may charge to and receive from any tenant such amounts as from time to time may be mutually agreed upon between the tenant and the Owners for any facilities and/or services which may be furnished by the Owners or others to such tenant upon his request, in addition to the facilities and services included in the approved rental sche[...] charges for facilities and services is not [...] project not subject to regulation of rent [...]~~

GOVERNMENT EXHIBIT 1

~~(c) For any project subject to regulation of rent by the~~ Secretary, the Secretary will at any time entertain a written request for a [illegible] at any time entertain a written request for a rent increase properly supported by substantiating evidence and within a reasonable time shall:

(i) Approve a rental schedule that is necessary to compensate for any net increase, occurring since the last approved rental schedule, in taxes (other than income taxes) and operating and maintenance cost over which Owners have no effective control or;

(ii) Deny the increase stating the reasons therefor.

5. (a) If the mortgage is originally a Secretary-held purchase money mortgage, or is originally endorsed for insurance under any Section other than Sections 231 or 232 and is not designed primarily for occupancy by elderly persons, Owners shall not in selecting tenants discriminate against any person or persons by reason of the fact that there are children in the family.

(b) If the mortgage is originally endorsed for insurance under Section 221, Owners shall in selecting tenants give to displaced persons or families an absolute preference or priority of occupancy which shall be accomplished as follows:

(1) For a period of sixty (60) days from the date of original offering, unless a shorter period of time is approved in writing by the Secretary, all units shall be held for such preferred applicants, after which time any remaining unrented units may be rented to non-preferred applicants;

(2) Thereafter, and on a continuing basis, such preferred applicants shall be given preference over non-preferred applicants in their placement on a waiting list to be maintained by the Owners; and

(3) Through such further provisions agreed to in writing by the parties.

(c) Without the prior written approval of the Secretary not more than 25% of the number of units in a project insured under Section 231 shall be occupied by persons other than elderly persons.

(d) All advertising or efforts to rent a project insured under Section 231 shall reflect a bona fide effort of the Owners to ~~obtain occupancy by elderly persons.~~

6. Owners shall not without the prior written approval of the Secretary:

(a) Convey, transfer, or encumber any of the mortgaged property, or permit the conveyance, transfer or encumbrance of such property.

(b) Assign, transfer, dispose of, or encumber any personal property of the project, including rents, or pay out any funds except from surplus cash, except for reasonable operating expenses and necessary repairs.

(c) Convey, assign, or transfer any beneficial interest in any trust holding title to the property, or the interest of any general partner in a partnership owning the property, or any right to manage or receive the rents and profits from the mortgaged property.

(d) Remodel, add to, reconstruct, or demolish any part of the mortgaged property or subtract from any real or personal property of the project.

(e) Make, or receive and [illegible] of assets or any income of any kind of the project except surplus cash and except on the following conditions:

(1) All distributions shall be made only as of and after the end of a semiannual or annual fiscal period, and only as permitted by the law of the applicable jurisdiction;

(2) No distribution shall be made from borrowed funds, prior to the completion of the project or when there is any default under this Agreement or under the note or mortgage;

(3) Any distribution of any funds of the project, which the party receiving such funds is not entitled to retain hereunder, shall be held in trust separate and apart from any other funds; and

(4) There shall have been compliance with all outstanding notices of requirements for proper maintenance of the project.

(f) Engage, except for natural persons, in any other business or activity, including the operation of any other rental project, or incur any liability or obligation not in connection with the project.

(g) Require, as a condition of the occupancy or leasing of any unit in the project, any consideration or deposit other than the prepayment of the first month's rent plus a security deposit in an amount not in excess of one month's rent to guarantee the performance of the covenants of the lease. Any funds collected as security deposits shall be kept separate and apart from all other funds of the project in a trust account the amount of which shall at all times equal or exceed the aggregate of all outstanding obligations under said account.

(h) Permit the use of the dwelling accommodations or nursing facilities of the project for any purpose except the use which was originally intended, or permit commercial use greater than that originally approved by the Secretary.

7. Owners shall maintain the mortgaged premises, accommodations and the grounds and equipment appurtenant thereto, in good repair and condition. In the event all or any of the buildings covered by the mortgage shall be destroyed or damaged by fire or other casualty, the money derived from any insurance on the property shall be applied in accordance with the terms of the mortgage.

8. Owners shall not file any petition in bankruptcy or for a receiver or in insolvency or for reorganization or composition, or make any assignment for the benefit of creditors or to a trustee for creditors, or permit an adjudication in bankruptcy or the taking possession of the mortgaged property or any part thereof by a receiver or the seizure and sale of the mortgaged property or any part thereof under judicial process or pursuant to any power of sale, and fail to have such adverse actions set aside within forty-five (45) days.

9. (a) Any management contract entered into by Owners or any of them involving the project shall contain a provision that, in the event of default hereunder, it shall be subject to termination without penalty upon written request by the Secretary. Upon such request Owners shall immediately arrange to terminate the contract within a period of not more than thirty (30) days and shall make arrangements satisfactory to the Secretary for continuing proper management of the project.

(b) Payment for services, supplies, or materials shall not exceed the amount ordinarily paid for such services, supplies, or materials in the area where the services are rendered or the supplies or materials furnished.

(c) The mortgaged property, equipment, buildings, plans, offices, apparatus, devices, books, contracts, records, documents, and other papers relating thereto shall at all times be maintained in reasonable condition for proper audit and subject to examination and inspection at any reasonable time by the Secretary or his duly authorized agents. Owners shall keep copies of all written contracts or other instruments which affect the mortgaged property, all or any of which may be subject to inspection and examination by the Secretary or his duly authorized agents.

(d) The books and accounts of the operations of the mortgaged property and of the project shall be kept in accordance with the requirements of the Secretary.

(e) Within sixty (60) days following the end of each fiscal year the Secretary shall be furnished with a complete annual financial report based upon an examination of the books and records of mortgagor prepared in accordance with the requirements of the Secretary, prepared and certified to by an officer or responsible Owner and, when required by the Secretary, prepared and certified by a Certified Public Accountant, or other person acceptable to the Secretary.

(f) At request of the Secretary, his agents, employees, or attorneys, the Owners shall furnish monthly occupancy reports and shall give specific answers to questions upon which information is desired from time to time relative to income, assets, liabilities, contracts, operation, and condition of the property and the status of the insured mortgage.

(g) All rents and other receipts of the project shall be deposited in the name of the project in a financial institution, whose deposits are insured by an agency of the Federal Government. Such funds shall be withdrawn only in accordance with the provisions of this Agreement for expenses of the project or for distributions of surplus cash as permitted by paragraph 6(e) above. Any Owner receiving funds of the project other than by such distribution of surplus cash shall immediately deposit such funds in the project bank account and failing so to do in violation of this Agreement shall hold such funds in trust. Any Owner receiving property of the project in violation of this Agreement shall hold such funds in trust. At such time as the Owners shall have lost control and/or possession of the project, all funds held in trust shall be delivered to the mortgagee to the extent that the mortgage indebtedness has not been satisfied.

(h) If the mortgage is insured under Section 232:

1. The Owners or lessees shall at all times maintain in full force and effect from the state or other licensing authority such license as may be required to operate the project as a nursing home and shall not lease all or part of the project except on terms approved by the Secretary.

2. The Owners shall suitably equip the project for nursing home operations.

3. The Owners shall execute a Security Agreement and Financing Statement (or other form of chattel lien) upon all items of equipment, except as the Secretary may exempt, which are not incorporated as security for the insured mortgage. The Security Agreement and Financing Statement shall constitute a first lien upon such equipment and shall run in favor of the mortgagee as additional security for the insured mortgage.

(i) If the mortgage is insured under Section 231, Owners or lessees shall at all times maintain in full force and effect from the state or other licensing authority such license as may be required to operate the project as housing for the elderly.

10. Owners will comply with the provisions of any Federal, State, or local law prohibiting discrimination in housing on the grounds of race, color, religion or creed, sex, or national origin, including Title VIII of the Civil Rights Act of 1968 (Public Law 90-284; 82 Stat. 73), as amended, Executive Order 11063, and all requirements imposed by or pursuant to the regulations of the Department of Housing and Urban Development implementing these authorities (including 24 CFR Parts 100, 107 and 110, and Subparts I and M of Part 200).

11. Upon a violation of any of the above provisions of this Agreement by Owners, the Secretary may give written notice thereof, to Owners, by registered or certified mail, addressed to the addresses stated in this Agreement, or such other addresses as may subsequently, upon appropriate written notice thereof to the Secretary, be designated by the Owners as their legal business address. If such violation is not corrected to the satisfaction of the Secretary within thirty (30) days after the date such notice is mailed or within such further time as the Secretary determines is necessary to correct the violation, without further notice the Secretary may declare a default under this Agreement effective on the date of such declaration of default and upon such default the Secretary may:

(a) (i) If the Secretary holds the note – declare the whole of said indebtedness immediately due and payable and then proceed with the foreclosure of the mortgage;

(ii) If said note is not held by the Secretary – notify the holder of the note of such default and request holder to declare a default under the note and mortgage, and holder after receiving such notice and request, but not otherwise, at its option, may declare the whole indebtedness due, and thereupon proceed with foreclosure of the mortgage, or assign the note and mortgage to the Secretary as provided in the Regulations;

(b) Collect all rents and charges in connection with the operation of the project and use such collections to pay the Owners' obligations under this Agreement and under the note and mortgage and the necessary expenses of preserving the property and operating the project.

(c) Take possession of the project, bring any action necessary to enforce any rights of the Owners growing out of the project operation, and operate the project in accordance with the terms of this Agreement until such time as the Secretary in his discretion determines that the Owners are again in a position to operate the project in accordance with the terms of this Agreement and in compliance with the requirements of the note and mortgage.

(d) Apply to any court, State or Federal, for specific performance of this Agreement, for an injunction against any violation of the Agreement, for the appointment of a receiver to take over and operate the project in accordance with the terms of the Agreement, or for such other relief as may be appropriate, since the injury to the Secretary arising from a default under any of the terms of this Agreement would be irreparable and the amount of damage would be difficult to ascertain.

12. As security for the payment due under this Agreement to the reserve fund for replacements, and to secure the Secretary because of his liability under the endorsement of the note for insurance, and as security for the other obligations under this Agreement, the Owners respectively assign, pledge and mortgage to the Secretary their rights to the rents, profits, income and charges of whatsoever sort which they may receive or be entitled to receive from the operation of the mortgaged property, subject, however, to any assignment of rents in the insured mortgage referred to herein. Until a default is declared under this Agreement, however, permission is granted to Owners to collect and retain under the provisions of this Agreement such rents, profits, income, and charges, but upon default this permission is terminated as to all rents due or collected thereafter.

13. As used in this Agreement the term:

(a) "Mortgage" includes "Deed of Trust", "Chattel Mortgage", "Security Instrument", and any other security for the note identified herein, and endorsed for insurance or held by the Secretary;

(b) "Mortgagee" refers to the holder of the mortgage identified herein, its successors and assigns;

(c) "Owners" refers to the persons named in the first paragraph hereof and designated as Owners, their successors, heirs and assigns;

(d) "Mortgaged Property" includes all property, real, personal or mixed, covered by the mortgage or mortgages securing the note endorsed for insurance or held by the Secretary;

(e) "Project" includes the mortgaged property and all its other assets of whatsoever nature or wheresoever situate, used in or owned by the business conducted on said mortgaged property, which business is providing housing and other activities as are incidental thereto;

(f) "Surplus Cash" means any cash remaining after:

(1) the payment of:

(i) All sums due or currently required to be paid under the terms of any mortgage or note insured or held by the Secretary;

(ii) All amounts required to be deposited in the reserve fund for replacements;

(iii) All obligations of the project other than the insured mortgage unless funds for payment are set aside or deferment of payment has been approved by the Secretary; and

(2) the segregation of:

(i) An amount equal to the aggregate of all special funds required to be maintained by the project; and

(ii) All tenant security deposits held.

(g) "Distribution" means any withdrawal or taking of cash or any assets of the project, including the segregation of cash or assets for subsequent withdrawal within the limitations of Paragraph 6(e) hereof, and excluding payment for reasonable expenses incident to the operation and maintenance of the project.

(h) "Default" means a default declared by the Secretary when a violation of this Agreement is not corrected to his satisfaction within the time allowed by this Agreement or such further time as may be allowed by the Secretary after written notice;

(i) "Section" refers to a Section of the National Housing Act, as amended.

(j) "Displaced persons or families" shall mean a family or families, or a person, displaced from an urban renewal area, or as the result of government action, or as a result of a major disaster as determined by the President pursuant to the Disaster Relief Act of 1970.

(k) "Elderly person" means any person, married or single, who is sixty-two years of age or over.

14. This instrument shall bind, and the benefits shall inure to, the respective Owners, their heirs, legal representatives, executors, administrators, successors in office or interest, and assigns, and to the Secretary and his successors so long as the contract of mortgage insurance continues in effect, and during such further time as the Secretary shall be the owner, holder, or reinsurer of the mortgage, or obligated to reinsure the mortgage.

15. Owners warrant that they have not, and will not, execute any other agreement with provisions contradictory of, or in opposition to, the provisions hereof, and that, in any event, the requirements of this Agreement are paramount and controlling as to the rights and obligations set forth and supersede any other requirements in conflict therewith.

16. The invalidity of any clause, part or provision of this Agreement shall not affect the validity or the remaining portions thereof.

17. The following Owners: Mt. Saint Francis Associates, and any of its partners together with their respective successors*

do not assume personal liability for payments due under the note and mortgage, or for the payments to the reserve for replacements, or for matters not under their control, provided that said Owners shall remain liable under this Agreement only with respect to the matters hereinafter stated; namely:

(a) for funds or property of the project coming into their hands which, by the provisions hereof, they are not entitled to retain; and

(b) for their own acts and deeds or acts and deeds of others which they have authorized in violation of the provisions hereof.

*(To be executed with formalities for recording a deed to real estate)*

* executors, administrators, heirs and assigns

BK0999PG0177

IN WITNESS WHEREOF, the parties have set their hands and seals on the date first hereinabove written.

ATTEST:

Mt. Saint Francis Associates,
A Rhode Island Limited Partnership

By: ______________________
Antonio L. Giordano, General Partner

SECRETARY OF HOUSING AND
URBAN DEVELOPMENT acting by
And through THE FEDERAL HOUSING
COMMISSIONER

By: ______________________
Luisa G. Osborne
Director, MultiFamily
Division

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Providence, in said County, on the 13th day of July, 1995, before me personally appeared Antonio L. Giordano to me known and known by me to be the General Partner of Mt. Saint Francis Associates, A Rhode Island Limited Partnership, who executed the foregoing instrument in his said capacity, and he acknowledged the foregoing Regulatory Agreement so executed to be his free act and deed in his said capacity and the free act and deed of said partnership.

______________________
Notary Public
Eugene A. Liberati

My Commission Expires: January 7, 1996

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Providence, in said County, on the 13th day of July, 1995, before me personally appeared ----------Luisa G. Osborne Director, MultiFamily Division-----------------------, to me known and known by me to be the duly authorized agent of the Federal Housing Commissioner and the person described herein, who executed the foregoing Regulatory Agreement by virtue of the authority vested in him as such authorized agent, and he acknowledged said instrument so executed to be his free act and deed on behalf of the Federal housing Commissioner as such authorized agent.

______________________
Notary Public
Eugene A. Liberati

My Commission Expires: January 7, 1996

See Schedule A attached hereto for a description of the real property covered by this Agreement.

**DEED DESCRIPTION**

**Schedule A**

Beginning at the southwest corner of Saint Joseph Street and Maple Street, thence running northerly bounding westerly by the easterly line of Maple Street three hundred forty (340.00) feet to a corner, thence turning an interior angle of ninety ($90^{o}$-00'-00") degrees and running easterly bounding northerly by land now or formerly of Jean Baptiste, Jr. and Irene F. Ethier a distance of one hundred fifty (150.00) feet to a corner, thence turning an interior angle of two hundred seventy ($270^{o}$-00'-00") and running northerly bounding westerly by land now or formerly of Jean Baptiste, Jr. and Irene F. Ethier a distance of fifty (50.00) feet to a corner, thence turning an interior angle of ninety ($90^{o}$-00'-00") and running easterly bounding northerly by land now or formerly of Richard A. and Jeanne L. Houle a distance of one hundred fifty (150.00) feet to a corner, thence turning an interior angle of ninety ($90^{o}$-00'-00") and running southerly bounding easterly by land now or formerly of Robert A. Montanari et. al. a distance of three hundred ninety (390.00) feet to a corner and the northerly line of Saint Joseph Street, thence turning an interior angle of ninety ($90^{o}$-00'-00") and running westerly bounding southerly by the northerly line of Saint Joseph Street a distance of three hundred (300.00) feet to a corner and point and place of beginning. Said parcel containing one hundred nine thousand five hundred square feet.

Received In Woonsocket R.I.
Date 7-14-95 Time 10:53 Am
Pauline S. Payeur, City Clerk

Mt. Saint Francis Health Center
4 St. Joseph Street
Woonsocket, R.I.
HUD Project No. 016-43077
016-15011

# FIRST AMENDMENT TO REGULATORY AGREEMENT

THIS FIRST AMENDMENT TO REGULATORY AGREEMENT made, entered into and dated as of this 22 day of June, 1999, and between MT. SAINT FRANCIS ASSOCIATES, a Rhode Island limited partnership (hereinafter referred to as the "Owner") and the SECRETARY OF HOUSING AND URBAN DEVELOPMENT and his successors and assigns (hereinafter referred to as the "Secretary").

## WITNESSETH:

WHEREAS, the Owner and the Secretary did enter into a certain Regulatory Agreement for Multi-Family Housing Projects (hereinafter referred to as the "Regulatory Agreement") dated July 13, 1995, and recorded July 14, 1995, in Book 999 at page 73 in the Records of Land Evidence of Woonsocket, Rhode Island; and

WHEREAS, the Secretary has issued its Commitment (the "HUD Commitment") dated May 26, 1999, to Suburban Mortgage Associates Incorporated ("Suburban") for the benefit of Owner to insure an Operating Loss Loan in the amount of One Million One Hundred Three Thousand Six Hundred ($1,103,600.00) Dollars under section 232 pursuant to section 223(d) of the National Housing Act, as amended; and

WHEREAS, the parties desire to amend the Regulatory Agreement to make appropriate references to the documents being executed contemporaneously herewith in connection with the Operating Loss Loan provided for in the HUD Commitment.

NOW, THEREFORE, in consideration of the premises and One ($1.00) Dollar by each of the parties hereto to the other paid, the receipt and sufficiency of which is hereby acknowledged by each of the parties hereto, and other good and valuable consideration, the parties hereto, for themselves and their respective heirs, executors, administrators, successors and assigns, hereby covenant and agree as follows:

1. The panel at the top of page one is hereby amended by replacing the information contained therein with the following:

Project No. 016-43077 and
Project No. 016-15011

Mortgagee: Suburban Mortgage Associates Incorporated

Amount of Mortgage Note: $8,622,900.00 amended to $8,616,900.00

Amount of Supplemental Mortgage Note: $1,103,600.00

Mortgage Recorded: Woonsocket, County of Providence, State of Rhode Island on July 14, 1995, in Book 999 at Page 67 as amended by Modification Agreement dated July 10, 1996, recorded on July 10, 1996, in Book 1040 at Page 46; as further amended by Second Modification Agreement dated June 22, 1999, in Book at Page ;

Supplemental Mortgage Recorded: Woonsocket, County of Providence, State of Rhode Island, on June 22 , 1999, in Book at page

Endorsed for insurance under Section 232 and under Section 232 pursuant to Section 223(d)

2. All references in the Regulatory Agreement to the term "note" shall mean and include collectively (i) that certain Note of Mt. Saint Francis Associates dated July 13, 1995, in the original principal amount of $8,622,900.00 reduced to $8,616,900.00 and (ii) that certain Supplemental Note of Mt. Saint Francis Associates dated as of June , 1999, in the principal amount of $1,103,600.00.

Section 3. All references in the Regulatory Agreement to the term "mortgage" shall mean and include collectively (a) that certain Mortgage of Mt. Saint Francis Associates dated July 13, 1995, and recorded in the Records of Land Evidence of Woonsocket, Rhode Island, in Book 999 at page 67; (b) the Modification Agreement between Owner and Suburban dated July 10, 1996, and recorded in said Records in Book 1040 at page 46; and (c) that certain Supplemental Mortgage of Mt. Saint Francis Associates dated June 22, 1999, and recorded or to be recorded in the aforesaid Recorder's Office, and the Second Modification Agreement between Owner and Suburban dated June 22, 1999, and recorded or to be recorded in the aforesaid Recorder's Office.

Section 4. Except as herein specifically modified and amended, all of the terms, covenants, conditions and

agreements of the said Regulatory Agreement shall remain in full force and effect.

Section 5. All of the terms, covenants, conditions and agreements hereof shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective successors and assigns.

Section 6. Nothing herein contained shall otherwise alter, waive, annul, vary or affect any provision, condition or covenant in the Regulatory Agreement, it being the intention of the parties hereto that the terms and provsions of the Regulatory Agreement shall continue in full force and effect as modified hereby.

Section 7. This Agreement shall be binding upon the parties hereto and upon their successors and assigns.

IN TESTIMONY WHEREOF, the parties hereto have caused this instrument to be duly executed in their respective names as of the date hereinabove first written.

| | |
|---|---|
| Witness: | Mt. Saint Francis Associates, a Rhode Island limited partnership |
| [signature] | By: [signature] Antonio L. Giordano, General Partner |
| Witness: | Secretary of Housing and Urban Development, by the Federal Housing Commissioner |
| [signature] | By: [signature] Authorized Agent |

State of Rhode Island
County of Providence

In Providence, in said County, on the 22 day of June, 1999, before me personally appeared Antonio L. Giordano, known to me and known by me to be the General Partner of Mt. Saint Francis Associates, a Rhode Island limited partnership, who executed the foregoing instrument in his said capacity, and he acknowledged said instrument by him so executed to be his free act and deed and the free act and deed of said partnership.

Notary Public

My commission expires: 8/1/01

State of Rhode Island
County of Providence

In Providence, in said County, on the 22 day of June, 1999, before me personally appeared Joseph Crisafulli, known to me and known by me to be the duly authorized agent of the Rhode Island State Office, Department of Housing and Urban Development, and the person described herein who executed the foregoing instrument by virtue of the authority vested in him as such authorized agent, and he acknowledged said instrument so executed to be his free act and deed as Agent of the Rhode Island State Office, Department of Housing and Urban Development, for and on behalf of the Secretary of Housing and Urban Development.

Notary Public

My Commission Expires: 8/1/01

DEED DESCRIPTION

Beginning at the southwest corner of Saint Joseph Street and Maple Street, thence running northerly bounding westerly by the easterly line of Maple Street three hundred forty (340.00) feet to a corner, thence turning an interior angle of ninety (90°-00'-00") degrees and running easterly bounding northerly by land now or formerly of Jean Baptiste, Jr. and Irene F. Ethier a distance of one hundred fifty (150.00) feet to a corner, thence turning an interior angle of two hundred seventy (270°-00'-00") and running northerly bounding westerly by land now or formerly of Jean Baptiste, Jr. and Irene F. Ethier a distance of fifty (50.00) feet to a corner, thence turning an interior angle of ninety (90°-00'-00") and running easterly bounding northerly by land now or formerly of Richard A. and Jeanne L. Houle a distance of one hundred fifty (150.00) feet to a corner, thence turning an interior angle of ninety (90°-00'-00") and running southerly bounding easterly by land now or formerly of Robert A. Montanari et. al. a distance of three hundred ninety (390.00) feet to a corner and the northerly line of Saint Joseph Street, thence turning an interior angle of ninety (90°-00'-00") and running westerly bounding southerly by the northerly line of Saint Joseph Street a distance of three hundred (300.00) feet to a corner and point and place of beginning. Said parcel containing one hundred nine thousand five hundred square feet.