## CHAPTER 13. CHANGE IN OWNERSHIP: TRANSFER OF PHYSICAL ASSETS

### INTRODUCTION

The sale and conveyance by deed of title to a property covered by an insured mortgage necessitates a substitution of mortgagors. HUD approval of the substitution is required in every case where HUD exercises control over the mortgagor either as preferred stockholder, by regulatory agreement, or by certificate of beneficial interest. This chapter has a broader application than above, and the instructions, requirements and procedures outlined within cover not only transactions which result in the substitution of a mortgagor, but in any change in the control of a mortgagor.

### SECTION 1. DELEGATIONS OF AUTHORITY AND EXCEPTIONS

13-1. Field Office Delegations

Field Offices are authorized to grant Preliminary and Final approval to all transfer proposals. However, there are two sets of exceptions, as noted in Section 1, Paragraph 13-3 and Paragraph 13-2 where Regional Office or Headquarters approval must be sought prior to Field Office granting preliminary approval of TPAs.

13-2. Requirement for Regional Office Prior Approval

The Regional Office must approve, prior to the Field Office granting preliminary approval, any proposal exhibiting the following characteristics:

A. The project's physical and/or financial needs will not be met within 36 months from the date of the transfer. (This is expected to be a rare occurrence.);

B. The transfer provides for secondary financing secured by the project and not meeting the requirements of Section 3, Paragraph 13-15 of this Notice. In any case involving secondary financing, all secondary financing secured by a lien against the project must be approved in writing by the first mortgagee. HUD will not approve any transfer including a lien against the project without written mortgagee approval;





GOVERNMENT EXHIBIT 3
PENGAD-Bayonne, N. J.

C. The transfer provides for secondary financing which is either unsecured or secured by collateral other than the project (e.g., partnership interests), and does not meet the requirements of Section 3, Paragraph 13-15 of this Notice;

D. The transfer provides for a land contract which does not satisfy the requirements of Section 3, Paragraph 13-15 of this Notice;

E. The transfer requires approval of a workout designed to meet the physical and financial needs of the project which is not in compliance with all outstanding workout instructions;

F. The transaction involves a transfer from nonprofit to profit motivated or limited distribution ownership and calls for remuneration to the seller; or

G. The transfer documents include a plan which contemplates repayment of a flexible subsidy loan over a period of more than 24 months, in the case of a transfer from a nonprofit to a profit motivated or limited dividend owner.

13-3. Requirement for Headquarters Prior Approval
Headquarters must approve, prior to the Field Office granting preliminary approval of the application, any transfer involving any of the following circumstances:

A. Use of the Low Income Housing Tax Credit (LIHTC) when combined with other forms of HUD assistance such as flexible subsidy loans, additional Section 8 assistance, 241 supplemental loans, etc.; or

B. TPAs requiring a regulatory agreement waiver or exception of any type, if the authority to approve the waiver or exception has not been delegated to the Region or Field Office.

13-4. Documentation Required for Regional and Headquarters Reviews
In every case where Regional Office or Headquarters approval must be obtained prior to Field Office preliminary approval of a TPA, the Field Office must:





A. Ensure the TPA meets all criteria for approval

under outstanding instructions and will be approved if authorization to proceed is obtained;

B. Provide a summary of the transaction;

C. Provide form HUD-9575 and the parts of the TPA which are required to ensure an informed review, and;

D. Provide a recommendation.

13-5. Preliminary and Final Approval Actions
In every case, Preliminary and Final Approval authority rests with the Field Office. However, the Field Office is not authorized to issue either of these approvals until the Regional and/or Headquarters have approved the particular aspects of the TPA for which they have retained authority, as described in Section 1, Paragraph 13-2 and Section 1, Paragraph 13-3 above. Field Offices may not grant preliminary approval if the TPA is dependent on other commitments or approvals that have not occurred. For example, the Field Office may not grant preliminary approval if the TPA depends on some other type of assistance (e.g., flexible subsidy loan, 241 supplemental loan, additional Section 8 assistance, etc.) from HUD and the Department has not issued the appropriate approval letter or firm commitment to insure. Similarly, the Field Office may not grant preliminary approval if the TPA depends on:

- o assistance from some other unit of government (Federal, state or local);
- o an allocation of LIHTC; or
- o the proceeds of a tax credit syndication, until the appropriate commitment has been issued by the responsible unit of government or company.

Field Offices may not grant preliminary approvals that are conditioned upon other commitments being issued, but may provide an applicant with a letter stating that all other TPA requirements have been satisfied, if the unit of government/company responsible for issuing the other commitment(s) requests such a letter.

After the preliminary approval letter is issued, the real estate transaction can close and all of the documents approved by HUD can be executed and recorded. The full review TPA transaction may be completed based upon a certification by the applicant's attorney that

the documents to be executed and recorded are exactly as approved by HUD. The Form of the required certification is in Appendix A, Procedures for Processing Full Review TPAs.

The Field Office may grant final approval of a full review TPA after it has reviewed and approved the executed and recorded documents.

SECTION 2. TRANSACTIONS REQUIRING REVIEW (CATEGORIES OF REVIEW)

Transactions involving the transfer of all or a controlling interest in the ownership of a HUD-insured or HUD-held project from one individual, group of individuals or entity to another individual, group of individuals or entity constitute a Transfer of Physical Assets (TPA). This definition is broad enough to incorporate modified TPAs within the purview of this discussion. For certain of these transactions, as described below, the Department requires a Full Review. For certain other transactions only a Modified Review is required.

The review procedures do not apply to corporate restructuring mergers if there is no change in control, or first user syndications prior to final endorsement.

13-6. Transactions Not Requiring an Application Fee:

A. Substitution of individual general partners of a partnership/mortgagor; or

B. Assignment of 100 percent of the beneficial interest in a passive land trust that holds title to the project, if the assignment does not result in a change in the control of the project.

Certain complex transactions involve multiple transfers and may be subject to more than one TPA fee, such as transactions involving two transfers of title by deed. In such cases, the Field Office manager will determine whether a second fee is required after consulting with Field Counsel. If the Field Office manager determines that a transaction or series of transactions have been structured to avoid paying the application fee, the TPA application will be rejected and new application(s) will not be accepted until the required application fee(s) have been paid.





13-7. Full Review

Transactions requiring HUD's Full Review include, but are not limited to properties encumbered by HUD-insured or HUD-held mortgages demonstrating the following characteristics:

A. Transfer of title from the mortgagor/seller to the buyer including conveyance by installment sales contract, land contract and wrap-around mortgage;

B. Transfer of any interest in a partnership mortgagor which causes a dissolution of the partnership/mortgagor under applicable state law; or

C. Transfer of 100 percent of the beneficial interest in a passive trust, which results in a change in control of the asset.

The procedures for processing a Full Review TPA are set forth in Appendix A. Transactions subject to Full Review will be evaluated under the Department's Determinative Criteria set forth in Section 3. below.

13-8. Modified Review

The Department requires a Modified Review, which is a limited review, of certain transactions involving transfers of interests in entities owning properties encumbered by HUD-insured, or HUD-held mortgages. Transactions subject to HUD Modified Review include, but are not limited to the following:

A. A single transfer of in excess of 50 percent of the interest of a partnership/mortgagor which does not cause a dissolution of the existing partnership/mortgagor under state law, as certified by an attorney who has no identity of interest with the partnership/mortgagor and is licensed to practice in that state;

B. Substitution of one or more of the general partners;

C. A single transfer of an amount in excess of 50 percent of the corporate stock of the corporate mortgagor or a single transfer of an amount less than 50 percent of the total corporate stock of

the corporate mortgagor where such transfer results in a change in control of the corporate mortgagor;

D. An assignment/transfer of a portion of or all of the beneficial interest in a passive trust when there is no change in control of the project; or

E. A single transfer of an amount in excess of 50 percent of the corporate stock of a corporate General Partner or a single transfer of an amount less than 50 percent of the corporate stock of a corporate General Partner where such transfer results in a change in control of the corporate General Partner.

F. Any transaction which does not fall within any of the other categories but which, nevertheless, results in a change of control of the mortgagor.

Certain transactions subject to a Modified Review will be evaluated under the Department's Determinative Criteria set forth in Section 3. below. For example, transactions in which a significant change in control will occur or in which a large sum of money will change hands, not only through a single transfer but also a series of transfers which have the same result, may trigger review under the Determinative Criteria. In addition, where there is an indication of subsidy layering in a TPA, a complete evaluation under the Determinative Criteria is required. See discussion under questionable transactions and subsidy layering.

Transactions subject to Modified Review will be reviewed pursuant to the procedures set forth in Appendix B.

13-9. Questionable Transactions

The Department periodically receives proposals involving novel transactions. These transactions should be brought to the attention of the Regional Office. Whenever a Field Office is in doubt as to whether a transaction requires a full or modified TPA review, the Regional Office may be contacted for guidance.





When faced with a transaction which does not fall

clearly into the full or modified review category, but which the Field Office believes may warrant HUD review, the following questions should be asked: Will there be a significant change in the control of the project? Will a significant sum of money change hands in conjunction with the transaction? If either of these inquiries are answered affirmatively, a Transfer of Physical Assets Application, either Full or Modified, depending upon the nature of the transaction, should be required by the Field Office.

SECTION 3. DETERMINATIVE CRITERIA FOR REVIEW OF TPAs

The following are criteria employed by HUD to evaluate Full Review and certain Modified Review proposals:

13-10. Requirement that a Proposed Owner/Managing General Partner Obtain Previous Participation Clearance.

The proposed principal(s) must obtain previous participation clearance:

A. Proposed principal(s) must file form HUD-2530, Previous Participation Certificate; and

B. Prospective owner/managing general partner must also satisfy the Field Office that he/she has sufficient experience to operate the particular project which he/she intends to purchase. A troubled project may require an owner/managing general partner who has demonstrated the ability to successfully own and manage troubled multifamily projects.

13-11. Field Office Requirement for Management Review and Physical Inspection and a Requirement For Proposed Management Agent Previous Participation Clearance.

Management Reviews, Physical Inspections and approvals of existing or new management agents are interrelated determinations required prior to Field Office preliminary approval of a TPA.

A. Existing Management Agent

The TPA process provides the Field Office with an opportunity to influence the selection of a management agent. Field Offices should use the

flexibility provided by Handbook 4381.5 to impose necessary performance standards on a new management agent, particularly when troubled projects are involved. This requirement is directly related to ratings on management review and physical inspection reports. Management Reviews and Physical Inspections are to be conducted in a schedule required in the following sections.

B. Management Review

If the Field Office has not completed a management review of the project within one year of the date of the TPA application, it must do so prior to granting preliminary approval of a TPA, whether or not a change in management agent is proposed. The level (comprehensive or limited) and intensity of the management review is based on factors identified in this Handbook in Chapter 6, entitled Project Monitoring, and the Field Office must exercise discretion in making this determination.

If the TPA proposes to retain the existing management agent, the Field Office must review the past performance of the agent and determine whether or not the agent is performing at a satisfactory level.

C. Physical Inspection

If the Field Office has not performed a physical inspection of the project within the past year, it must do so prior to granting preliminary approval of a TPA, whether or not the mortgagee has performed an acceptable inspection.

D. A proposed new management agent must obtain previous participation clearance and must abide by other requirements:

1. Proposed management agents must file form HUD-2530, Previous Participation Certificate,

2. Proposed management agent must satisfy the Field Office that he/she has sufficient experience to enable him/her to successfully





manage the project. The type and length of

experience required will vary depending upon the degree of difficulty of managing the particular project;

3. A new or replacement agent is required to abide by the instructions contained in Handbook 4381.5, Management Agents, Documents and Fees. This includes the filing of a Management Certification and an Agent Profile.

13-12. Determination by Field Office that a Project's Physical Repair/Replacement Needs Will Be Met.

In order to approve the proposed transfer, the Director of Housing Management must determine that the project will be restored to sound physical condition within 24 months from the date of transfer. Additionally, he/she must be satisfied that requisite energy-related alterations will be completed within an acceptable time frame. (See Handbook 4350.1, Chapter 12, for a discussion of energy-related items.)

A. Extension of Time Requirements

Under certain well documented circumstances, the Field Office Manager may extend this period for up to an additional 12 months. The decision to allow additional time must be documented in the project file. The time period cannot be extended, if the sources and uses statement shows one of the following:

- o remuneration to the seller; or
- o fees to participants having priority over the needs of the project.

B. Determination of Project Physical Condition

The physical condition of the project may be determined in one of two ways:

1. If the project is ranked as a troubled or potentially troubled project, the Field Office must perform its own inspection if such an inspection had not been performed within the past year; or





2. The transfer applicant may submit to HUD at

the time of application a physical inspection report and cost analysis of needed repairs for the project, prepared by an architect or engineer who is professionally designated and licensed in the jurisdiction where the project is located.

The inspector will provide a certification as to his/her qualifications and as to the accuracy of the report and cost estimates based on his/her professional opinion.

The Chief of Loan Management will decide which approach is appropriate. In certain situations, the Field Office may also elect to do an inspection, the results of which will suggest the need for a follow-up inspection by an expert in a particular functional area, such as a structural or HVAC engineer. This follow-up inspection will clearly be the responsibility of the applicant.

C. Requirements for Acceptable Physical Inspection.

The following are minimum requirements for an acceptable physical inspection:

1. The inspection report must be in sufficient detail to list all required repairs and provide line item cost estimates for repairs;

2. The report should mandate all those repairs that are necessary to ensure that the project is structurally sound and that dwelling units and living conditions are decent, safe and sanitary. The repair listing must be complete and deal with 100 percent of the units;

3. The report should specify that the project is energy efficient, or that repairs will make it so;

4. The report must describe how the inspection was performed and any assumptions that were made by the engineer. For example, if all





the units were not inspected, what units were inspected and how were those units selected? How did the engineer go about making the

final repair list?; and

5. The engineers and architects should also provide comments on the remaining useful life of major equipment and fixtures at the project (this analysis will be important in judging the appropriateness of Reserve for Replacement funding).

The goal of a quality physical inspection and subsequent repair/replacement recommendations is not to return the project to the original condition when initially insured, but rather to ensure the long-term viability of the project.

The Field Office will have the responsibility for reviewing the applicant's inspection report and affirmatively judging its adequacy. This will require a Field Office inspector verifying the applicant's report with an on-site visit.

D. Availability of Physical Repair/Replacement Funds

Because the financial viability of the project is a critical determination in approving a TPA, the following criteria for use and availability of repair/replacement funds must be met:

1. The Field Office must be satisfied that adequate funds will be available to complete needed physical improvements/repairs. The purchaser should accomplish the repairs pursuant to a repair schedule (e.g., a MIO plan) approved by the Field Office. The repair schedule should be specific as to objectives and timing so that the progress of the repairs can be judged by the Field Office.

   The Field Office may require the purchaser to obtain a letter of credit, a bond, or place in an escrow account acceptable to the Field Office, the funds needed to complete the proposed improvements/repairs.

2. If a project is transferred within the first twelve months from the date of final





endorsement and if there are latent

construction defects, HUD's first remedy for correction of these defects is to use the bond that was posted for this purpose during the construction period. Only if the bond cannot be used or will not cover all of the latent defects should correction of these defects be addressed as part of the transfer proposal.

13-13. Determination by Field Office that a Project's Operating Financial Needs Will Be Met.

A. HUD-Insured Projects

An application for transfer of a HUD-insured project will be accepted only if the project mortgage is current or the Field Office determines it will be brought fully current as a result of the TPA at preliminary approval.

B. HUD-Held Projects

In order to approve a proposed transfer of a HUD-held project, the Field Office must establish that either the mortgage will be brought current at the time of transfer or that an acceptable workout will be executed. Any workout, in conjunction with a transfer, must be executed upon preliminary approval of the transfer. Workouts that exist prior to the TPA approval must be reviewed and modified as necessary. For example, if repairs are required as part of the TPA, the repair schedule will be included in a modified or new workout.

C. All Projects

For all projects, Field Offices must assess the financial situation and make certain determinations and require certain actions be taken, as follows:

1. All accounts payable will be cleared at the time of the transfer or shortly thereafter. If deemed necessary by the Field Office, a satisfactory escrow or letter of credit may be required to ensure that this requirement is met;

2. Make a determination that the Reserve for Replacement Account is adequately funded, and will continue to be adequately funded in the foreseeable future. To determine the level of funding for the Reserve for Replacement Account, the Field Office must consider the project's present and anticipated needs. It should review the remaining useful life of major equipment and structural components and make a determination that the Reserve for Replacement is funded at a level to meet the most immediate project needs;

3. The Field Office may require lump sum contributions as part of the TPA or a plan to increase deposits to the Reserve until it is funded to an appropriate level. For both full and modified TPAs, if escrowed funds remain after completion of the required repair program, these remaining monies should be used to fund the Reserve for Replacement Account at an appropriate level. Although there are no hard and fast rules, the Field Office should follow common sense rules of thumb. For example, a 15 year old project, which has not replaced stoves, refrigerators, air conditioning, roofs, kitchen cabinets, common area and apartment amenities, such as carpeting, etc., should have a Reserve for Replacement Account balance of $1,200 to $1,500 a unit. The above yardstick is meant for reference only, and naturally jurisdictions may determine what funding level of Replacement Reserves per unit is considered appropriate and adequate for projects within their localities based on local environment, custom and practice.

4. The Field Office should review the other mortgagee controlled accounts (real estate and property insurance escrow), to make sure present balances together with monthly deposits will be sufficient to pay near term billings. Frequently, TPAs lead to reassessments that result in property tax increases the property cannot easily manage. The Field Office may decide to require an





increased deposit to these escrows, if it has

reason to believe the property will be facing a substantial increase in its property tax or property insurance bills; and

5. Field Offices should review the source and use statement provided by the applicant as a possible source of additional funds, if there is a cash shortfall in meeting the project's financial needs.

13-14. Field Office Determination Concerning HUD Legislative, Regulatory and Administrative Requirements.

The transfer of physical assets proposal must comply with HUD regulations, handbooks, administrative and legal requirements as of the date of this Notice. Relevant HUD documents include but are not limited to the following:

| HUD HANDBOOKS | TITLE/CHAPTER |
|---|---|
| HUD Handbook 4350.1 REV-1 | Chapter 4, Section 11<br>Chapter 6<br>Chapter 12 |
| HUD Handbook 4065.1 | Previous Participation |
| HUD Handbook 4355.1 REV-1 | Flexible Subsidy |
| HUD Handbook 4370.1 REV-2 | Reviewing Annual and Monthly Financial Reports |
| HUD Handbook 4370.2 REV-1 | Financial Operations and Accounting Procedures for Insured Multifamily Projects |
| HUD Handbook 4370.4 REV-1 | Basic Accounting Desk Reference for Loan Servicers |
| HUD Handbook IG 2000.4 | Consolidated Audit Guide for Audits of HUD Programs |
| HUD Handbook 4381.5 REV-1 | Management Documents, Agents and Fees |

| HUD REGULATIONS/SECTION | TITLE/CHAPTER |
|---|---|
| 24 CFR 265 | Transfer from Nonprofit to Profit-Motivated Ownership for Multifamily Housing Projects |
| 24 CFR 207.1(h) | Transfer Fee |





| MULTIFAMILY NOTICES | TITLE/CHAPTER |
|---|---|
| Notice 84-34 | Revised Policy for Projects with |

| | |
|---|---|
| | HUD-Held Mortgages |
| Notice 89-1 | Reinstating Defaulted Mortgages |
| Notice 90-17 | Combining Low Income Housing Tax Credits (LIHTC) with HUD Programs |
| Notice 90-18 | New Restrictions on Funding Actions |
| Notice 91-22 | Comprehensive Multifamily Servicing Program |
| Notice 84-37 | Appendix G: Memorandum from Charles J. Bartlett, Legal Review of Transfer of Physical Assets Proposals |

13-15. Special Circumstance Determination: Secondary Financing

Any portion of the purchase price which is not paid in cash at the time of purchase is understood to be secondary financing. Secondary financing includes all deferred financing: financing secured by the project, financing secured by collateral other than the project, or unsecured financing.

Field Offices must make certain specific determinations when secondary financing is an element. The legal and administrative requirements for approval of a TPA with secondary financing include the following:

A. HUD policy permits the use of secondary financing in connection with transfers of projects only in those situations in which the Field Office determines that the proposal does not jeopardize HUD's security, conflict with HUD's legal or programmatic interests, or unduly burden the project with financial debt.

B. If HUD-insured secondary financing is proposed as part of the TPA, it must meet the underwriting criteria of the applicable section of the Act (241 supplemental loan, operating loss loan, etc.).

C. The legal requirements controlling the use of secondary financing are set forth in the opinion of the Assistant General Counsel for Multifamily Mortgage Insurance in Appendix G of this Chapter.





Area Counsel must review all secondary financing in connection with a TPA and determine that it meets the requirements of Appendix G prior to the Field Office granting preliminary TPA approval.

D. Field Office will approve the use of secondary financing in a TPA only when the following conditions are met:

1. When the first mortgagee approves in writing any secondary financing secured by a lien against the project. Field Offices must not approve any transfer that includes a lien against the project without this written mortgagee approval;

2. When approval of the secondary financing will not increase HUD's exposure to financial risk or loss; and

3. When approval of the proposal would not violate the Department's obligation to provide housing at the least cost to the Federal government.

E. Where the consent of the first mortgagee to allow secondary financing is obtained, the original signed document must be transmitted immediately to the Office of Multifamily Housing Management at HUD Headquarters for inclusion in the project's safe instruments file.

13-16. Special Circumstance Determination: Condominium/Cooperative Conversions

Every proposal involving conversion to the cooperative form of ownership must include either the express consent of the mortgagee to the conversion or an indemnity agreement acceptable to HUD. The HUD Office of General Counsel has developed a master Indemnification Agreement, Guaranty Agreement and Letter of Credit for use in conversions to cooperative ownership without mortgagee consent. In the case of a transfer transaction involving conversion, Field Offices are referred to OGC's Multifamily Mortgage Division "at Headquarters" for relevant forms and consultation. The Housing Management Division retains responsibility for the programmatic and policy review of proposed conversions to condominiums and





cooperatives but may not grant preliminary approval without Field Counsel's legal opinion as to the legality of the proposed conversion. When conversion

to condominium or cooperative ownership is an element of the transfer, Field Counsel must review the proposed transaction.

SECTION 4. TPA INVOLVING NONPROFIT TRANSFER TO LIMITED DIVIDEND ENTITY

13-17. Field Office Statement of Necessity for TPA. The Regulations at 24 CFR Section 265.7, entitled Director's analysis and findings on the need for a transfer, require that the Field Office, before accepting an application for a transfer of physical assets, make a finding that a transfer of ownership to a profit-motivated owner is necessary to resolve the problems of the project based on one or both of the following factors:

A. The nonprofit (NP) owner is no longer capable or willing to own or operate the project successfully; or

B. There is a need for additional cash contributions to satisfy the present physical and financial needs of the project as determined by the review conducted pursuant to Section 265.6 because assistance for the project from HUD, considering other uses of this assistance, is not available in amounts necessary to satisfy these needs.

13-18. Field Office Analysis of TPA.

A. First Criterion

In making the determination in 4.I.A. that the NP owner is no longer capable or willing to own or operate the project successfully, the Field Office may use information such as, for example, the troubled or potentially troubled ranking of the project (4350.1, Chapter 6) or a signed statement by the NP owner that they are unwilling to continue to operate the project. Such determinations are the responsibility of the Housing Management Director.

If the sole basis for a proposed transfer is lack of capability or willingness of the existing nonprofit sponsor to own and operate the project





successfully, the Field Office must determine that

there is no capable, nonprofit sponsor in the area which is interested in assuming ownership of the project. This may be accomplished by obtaining from the nonprofit seller a certification that the seller has offered the project to other nonprofit entities presently operating in close proximity to the project, and has not received an offer to purchase the project.

B. Second Criterion

To determine whether there is a need for additional cash contribution the Field Office must schedule the reviews required prior to preliminary approval of any TPA in order to identify the present physical, financial, management and tenant needs, including energy-related needs of the project. Also, the Field Office must take into consideration information provided by the seller/purchaser when making this determination. This means that a Field Office may accept and review, for the purpose of making the above decision, a transfer application.

In developing the required findings for these criteria, Field Offices must make certain determinations. For the first criterion, if another nonprofit owner is found, the Field Office must determine whether this applicant has the skills and financial capacity to properly manage the project. If a nonprofit entity is willing to accept a TPA, they must be found qualified. In order to be considered qualified, an NP owner must:

o Have the proven ability to operate a multifamily housing project;

o Be in a position to make a contribution to the project equal to the present physical and financial needs of the project without utilizing any of the present resources of the project, i.e., reserve for replacement or operating accounts; and

o Have the financial capacity and willingness to execute a written pledge for an amount equal to 10 percent of the outstanding

mortgage balance. The applicant may not rely upon the receipt of federal subsidies in making this pledge.

For Field Offices to make a determination on the second criterion, they must analyze the long-term needs of the project and consider whether the project will require costly repairs and replacements that can only be funded through increased tenant rents, government rent subsidies, government grants or loans, or contributions from the nonprofit owner, all in the near future. If the investigation discloses that the project revenues will be insufficient to meet project needs, and that these needs can only be met with the foregoing funds, the second criterion set forth above will be satisfied.

The Field Office must have demonstrated that there is need for additional cash contributions to satisfy the physical and financial needs of the project. The Field Office must provide the nonprofit owner with the results of the review in writing, including a complete physical inspection report and management review report, indicating HUD's recommended corrective actions. The Field Office should augment, but not duplicate, the material generated to meet the requirements of the Paragraph 13-20.

13-19. Remuneration to Nonprofit Sellers.

A nonprofit owner/seller will be permitted to receive remuneration in connection with the transfer of a property only upon Headquarters consideration of circumstances. Section 106 of the HUD Reform Act of 1989 supersedes any previous authority granted to a Field Office/Regional Administrator regarding waiver of regulations under 24 CFR 265.4. Requests for waiver of regulations must be forwarded with good cause documentation to Headquarters, Office of Multifamily Housing Management, Director, Operations Division, for final disposition.

A nonprofit owner/seller may be allowed to receive monies associated with a TPA provided that:

A. Upon transfer, the purchaser contributes to the project an amount equal to the greater of 10 percent of the unpaid mortgage principal balance,

or an amount sufficient to meet the present physical and financial needs of the project, in addition to any assistance provided by HUD;

B. All funds required by subparagraph A, above, have been paid to the project;

C. Any remuneration accruing to the nonprofit seller must be placed in trust with a third party trustee. The trust funds must be disbursed in accordance with the terms of a trust agreement which has been approved by the HUD Field Office, for a public purpose approved by the HUD Field Office that promotes the expansion of the supply of low and moderate income housing; and

D. No remuneration may pass to any individuals connected with the nonprofit seller. This requirement applies even where the remuneration flowing to the nonprofit seller will be paid several years after the transfer.

If payments are made to a nonprofit under the terms of an installment sales contract solely for purpose of making payment on the first mortgage, these payments are not considered remuneration to the seller. This situation does not require a waiver of 24 CFR 265.13.

If it is unclear how much will be paid to the nonprofit seller, how these future payments will be disbursed, and/or for what purposes the funds will be used, HUD will approve a Trust Agreement under Paragraph 13-19C above only if the Department has the right under the Trust Agreement to approve all distributions from the Trust.

13-20. Recruited Minimum Cash Contributions.

A purchasing profit-motivated or limited distribution mortgagor must agree to minimum funding levels. The minimum contribution of the acquiring owner is the greater of 10 percent of the unpaid principal mortgage balance, or an amount sufficient to meet the present physical and financial needs of the project, in addition to any assistance provided by HUD.

13-21. Transfer Prior to Final Endorsement.

If a request is received to approve a nonprofit to

limited dividend transfer prior to final endorsement of the mortgage, the mortgage should be reprocessed, if possible, using a limited dividend mortgagor. If this is not possible or appropriate, Loan Management staff must conduct a transfer review in accordance with this Handbook Chapter. Prior to endorsing the mortgage, the field office must make certain that all statutory and regulatory requirements relating to limited dividend mortgagors have been satisfied.

13-22. Prepayment Restrictions.

Transfers from nonprofit to limited dividend mortgagor entities do not remove the 40 year prepayment restrictions in the original mortgages.

13-23. Distributions/Rent Formula.

The transfer to a limited dividend or profit-motivated mortgagor does not change the formula used in processing rents for the project. The original nonprofit rent formula is used, without including a return on equity. This does not preclude the owner from receiving a distribution as permitted by the new regulatory agreement but it is limited in any one year to six percent of the actual cash contribution.

SECTION 5. DISPOSITION OF FLEXIBLE SUBSIDY UPON TRANSFER

The following guidelines must be applied to determine the disposition of Flexible Subsidy in conjunction with the transfer of a project:

13-24. Nonprofit to Nonprofit Transfer.

The Flexible Subsidy, whether in the form of a grant or a loan, does not have to be repaid. However, an assignment of the Flexible Subsidy loan to the new nonprofit purchaser must be required in conjunction with preliminary approval. Even though the loan does not have to be repaid, the Field Office should carefully review all Sources and Uses of funds and assure that there are no funds available to repay or reduce the Flexible Subsidy loan. If the Field Office determines funds are available, a portion or all of a loan should be repaid.

13-25. Limited Dividend/Profit Motivated to Limited Dividend/Profit Motivated Transfer.

The Flexible Subsidy loan must be repaid in full at the time of transfer of the beneficial interest in the project. However, if the limited dividend entity originally received a Flexible Subsidy grant, HUD cannot require prepayment of that grant as a condition of TPA approval. Field staff should discuss the conversion of the grant to a loan as part of the TPA negotiation process or as a condition for any additional assistance from HUD. A guiding principle to aid Field staff in the negotiation process is that conversion is required unless the purchaser can demonstrate, to the satisfaction of the Field Office, that circumstances exist which would make such a conversion infeasible.

13-26. Nonprofit to Limited Dividend Transfer.

The Flexible Subsidy must be repaid in full at the time of transfer. Where the physical and financial condition of the property makes it impossible for the purchaser to repay the Flexible Subsidy at the time of transfer, HUD may approve repayment of the Flexible Subsidy assistance over a specific period, provided a minimum of one-third of the Flexible Subsidy is repaid at the time of transfer. The remaining Flexible Subsidy must be repaid according to a plan negotiated with the Field Office, and approved by the Regional Office.

The Field Office may approve Flexible Subsidy loan repayment plans which contemplate repayment of the remaining Flexible Subsidy within 24 months of preliminary approval of the transfer. Any repayment plan for a term of more than 24 months must be thoroughly documented and referred to the Regional Office for review prior to granting approval. This does not require review by the Regional Office of the full TPA application, only the Flexible Subsidy repayment plan. Any referral to the Regional Office must be accompanied by an analysis of the proposal and the Field Office's recommendation.

When reviewing transfer proposals, it should be understood that repayment of the Flexible Subsidy does not remove the low and moderate income use restrictions in the Use Agreement recorded against the project when the Flexible Subsidy assistance was originally awarded. The Use Agreement should be reviewed by Field Counsel to ensure the use restrictions are enforceable.

SECTION 6. SUBSIDY LAYERING AND EXCESS COMPENSATION

A TPA, full or modified, may involve subsidy layering, which results from combining various forms of relief or assistance within the jurisdiction of the Department with assistance from other governmental sources. Subsidy layering may result in excess compensation to some or all of the parties to a TPA. The presence of subsidy layering is not, by itself, a problem; it may reflect a wise and efficient use of scarce resources. However, subsidy layering, when combined with the Low-Income Housing Tax Credit (LIHTC) can result in excess compensation. If there is excess compensation, the Department is obligated by law to reduce the amount of assistance it will provide.

The Department has published policies and procedures governing the relationship of subsidy layering to excess compensation in the utilization of the LIHTC. All applicants are urged to read and understand these policies and how they may impact a TPA. (See Notice H-90-17 and 56 Fed. Reg. 14436, Administrative Guidelines; Limitations on Combining Other Assistance with HUD Housing Assistance.)

Generally, if the TPA involves the LIHTC but does not require any additional assistance within the jurisdiction of the Department (e.g., 241 supplemental loan, additional Section 8 units, etc.), the issues associated with excess compensation will not be present.

On the other hand, if the TPA contemplates the use of the LIHTC in conjunction with other additional assistance from HUD, the Department will address excess compensation as part of the TPA review process. If HUD determines excess compensation is present, the Department will provide a lower level of assistance.

Applicants should meet with appropriate Field Office staff prior to submitting a TPA application if the transfer involves the layering of federal subsidies and the use of the LIHTC.

SECTION 7. RELATIONSHIP TO OTHER COMMITMENTS

13-27. HUD Commitments

If the requirements HUD imposes as part of the TPA review process cannot be met without the resources produced by other independent commitments, the Field Office may not issue a preliminary approval letter until the other commitments have been made. For example, if the project's financial and physical needs cannot be met without a Flexible Subsidy loan, 241 supplemental loan, additional Section 8 assistance,

etc., the Field Office may not grant preliminary approval until the other necessary commitments have been made. In the case of a HUD-insured loan, this requirement will be satisfied with the issuance of a firm commitment; in the case of a Flexible Subsidy loan or additional Section 8 assistance, the requirement will be met at the time the Field Office receives the signed 185.1.

13-28. Other Governmental Commitments

If the requirements HUD is imposing will be satisfied from assistance provided by another governmental agency (Federal, state or local), a letter from that agency indicating its decision to provide that assistance is required, prior to the Field Office issuing preliminary approval. This includes the agency allocating the tax credits.

13-29. Low Income Housing Tax Credits (LIHTC)

If the TPA relies on the use of the proceeds of a LIHTC syndication to meet HUD imposed requirements, a letter of commitment from the syndicating group is required prior to the Field Office issuing a preliminary approval letter.

SECTION 8. RELATIONSHIP TO PRESERVATION OF LOW INCOME-HOUSING

13-30. Prepayment Restrictions

Title II of the Housing and Community Development Act of 1987 ("Title II" or "ELIHPA") and Title VI of the Cranston-Gonzalez National Affordable Housing Act ("Title VI" or "LIHPRHA") impose restrictions on the prepayment of subsidized mortgages that could otherwise be prepaid without HUD's consent. The primary categories of projects subject to Title II and Title VI are (1) section 221(d)(3) market rate projects with Section 8 project-based assistance; (2) Section 221(d)(3) BMIR projects; and (3) Section 236 projects. Title II or Title VI is applicable only if, under applicable contract or program regulations in effect prior to February 5, 1988, the mortgage is or will within 12 months or 24 months respectively become eligible for prepayment without HUD's consent. An owner who is prevented by Title II or Title VI from prepaying the mortgage may apply for "incentives" in exchange for agreeing to restrictions designed to

preserve the low-income use of the project. Such incentives are negotiated as part of a Plan of Action. Transfers of Physical Assets that are contemplated as part of a Plan of Action must be reviewed for compliance with Title II or Title VI, as applicable. Owners of such properties should consult with the Regional Director of Housing or the field office's Director of Housing Management concerning applicable Plan of Action requirements.

13-31. TPA Restrictions Applicable to Certain Subsidized Projects

Section 203(h) of the Housing and Community Development Amendments of 1978, as amended by Section 181(g) of the Housing and Community Development Act of 1987, provides that the Secretary may not approve the sale of any subsidized project that is subject to a mortgage held by the Secretary or if the TPA involves the provision of any additional subsidy funds by the Secretary or the recasting of the mortgage unless the transaction will ensure that such project will continue to operate at least until the maturity date of the mortgage in a manner that will provide rental housing on terms at least as advantageous to existing and future tenants as the terms required by the program under which the mortgage was made. A "subsidized" project includes a project receiving any of the following forms of assistance:

Section 221(d)(3) BMIR loan
Section 236 interest reduction payments
rent supplement assistance
Section 202 or 312 programs
project-based assistance under Section 23 or Section 8 regardless of the number of units assisted

Whenever a project falls into the defined category, the purchaser must agree either to execute a use agreement to maintain the project in accordance with the tenant-related provisions of the applicable mortgage program until the maturity date, or to extend the prepayment prohibition to the maturity date.

SECTION 9. MONITORING AND REPORTING

The Field Office manager/supervisor must ensure that each project is monitored after preliminary approval, or where applicable, final approval, to ensure that the conditions of approval are

satisfied.





13-32. Monitoring Schedule

Monitoring should begin at the point at which preliminary approval is issued, and continue until such time as all of the terms and conditions of the transfer have been satisfied, or for a period of at least three years following preliminary approval, whichever is longer. During this period, the physical and financial condition of the project should be monitored. It is suggested that transfers be reviewed, at a minimum, every six months during the monitoring period. The Field Office manager/supervisor is charged with responsibility for monitoring each transfer of physical assets, as well as determining the frequency of such monitoring. He/she may delegate to a subordinate the task of tracking the actions of the owner to determine whether the conditions of the transfer have been fulfilled. However, the ultimate responsibility for ascertaining whether the purchaser has satisfied the conditions of the transfer rests with the manager/supervisor.

Each transfer remains in a monitored posture until such time as the manager/supervisor certifies in writing:

- o That all of the terms and conditions agreed to at the time of preliminary approval and final approval have been satisfied, and;

- o That the project is in sound physical and financial condition.

13-33. Monitoring Procedures for Completed TPAs

A. Establish Monitoring File.
A monitoring file should be developed for each project at the time of preliminary approval of the transfer. The monitoring file should contain a copy of the preliminary approval letter and a working copy of the MIO plan or repair program. All actions taken by the Field Office to assure compliance with the TPA approval will be filed in the monitoring file. A copy of the reports or site visits, etc. should also be filed with the regular project file.

B. Areas to be Monitored

1. Cash contributions
2. Physical improvements/repairs
3. Management improvements or changes
4. Disposition of Flexible Subsidy assistance
5. All other changes to be implemented at the project.

13-34. Location and Maintenance of Monitoring File. The monitoring files should be located in one central place in the Field Office. A tickler system should be established to ensure that each project is reviewed during the month in which a contribution, change, or improvement is scheduled. Periodic site visits are necessary to determine the acceptability of physical repairs. Management changes, cash contributions, etc., can be reviewed remotely through required reports.

13-35. Non-Compliance with Transfer. If a scheduled payment or repair, etc., is not made as agreed under the terms of the transfer, the servicer assigned to monitor the transfer must provide the owner with written notice of non-compliance, and direct that appropriate corrective action be taken within the reasonable period of time specified in the written notice of non-compliance.

If the deficiency is not corrected within the period of time specified in the written notice of non-compliance, the situation should be reported to the Director of the Office of Participation and Compliance and the Director of the Office of Regional Housing. The Field Office should immediately consider all options available to it to enforce compliance. Field and Regional Counsel may be consulted and, if necessary, the office of General Counsel may be requested to participate in developing a plan of enforcement. The available remedies include Administrative Sanctions such as the use of Form HUD-2530 previous participation procedures, LDP, suspensions, etc., and affirmative litigation to enforce the conditions of the TPA.

13-36. Operational Difficulties Unrelated to Transfer Conditions. Where HUD review reveals no specific violations of the conditions for transfer, but does disclose that the project is experiencing operational difficulty, the servicer must negotiate with the project owner a plan for restoring the project to sound condition.

APPENDIX A

PROCEDURES FOR PROCESSING A FULL REVIEW TRANSFER

CONTENTS OF APPENDIX A


I. TRANSFERS REQUIRING FULL REVIEW

II. FULL REVIEW-OVERVIEW

A. Preliminary Approval

B. Final Approval

III. FULL REVIEW PROCESSING - DETAILS

A. Preliminary Approval

1. Step (1): Submission of TPA Application/Required Documentation

2. Step (2): Review of Application for Completeness

3. Step (3): Review of Application and HUD required Reports to Determine Acceptability of Transfer

4. Step (4): Issuance of Preliminary Approval OR Denial of TPA

B. Final Approval

1. Step (1): Certification of Changes

2. Step (2): Submission and Review of Executed and Recorded Documents

3. Step (3): Issue Final Approval

I. TRANSFERS REQUIRING FULL REVIEW: The following types of transfers require a Full Review and payment of a transfer fee. The Department imposes a fee of $0.50 per $1,000 of the original face amount of the mortgage to cover the costs of administrative, legal, and fiscal actions that a review entails. Applications received for Full Review, which are not accompanied by the proper fee will be returned unreviewed. For applications which are reviewed by HUD and subsequently withdrawn, the fee paid to HUD will be considered earned and nonrefundable.

A. Transfer of title from the mortgagor-seller to buyer including conveyance by installment sales contract, land contract and wrap-around mortgage.

B. Transfer of any interest in a partnership which causes a dissolution of the partnership under applicable state law.

C. Transfer of 100 percent of the beneficial interest in a passive trust, if the assignment results in a change in control of the project.

D. Transfers requiring Full Review will be examined in accordance with HUD's established Determinative Criteria.

II. Full Review-Overview. A Full Review of a transfer proposal is conducted in two phases:

A. Application for Preliminary Approval: The Field Office will review the Application for Transfer of Physical Assets, form HUD-92266, and all accompanying documentation as set forth in Section III below. At the end of the review process, if the transfer proposal is acceptable, HUD issues a letter granting Preliminary Approval of the application. It is at this point that the parties to the transaction are authorized to transfer possession of and beneficial interest in the project. THE PURCHASER IS NOT AUTHORIZED TO TRANSFER ANY INTEREST IN, TAKE POSSESSION OF, OR ASSUME THE BURDENS AND BENEFITS OF OWNERSHIP OF THE SUBJECT PROJECT WITHOUT THE PRIOR WRITTEN APPROVAL OF HUD. If this requirement is violated, the Department will pursue all administrative, legal, civil and criminal remedies.

B. Final Approval: Processing: Review documents approved at Preliminary Approval to make sure that they have been executed and changed.

III. FULL REVIEW PROCESSING - DETAILS

Upon learning that a TPA is being considered, the Field Office should schedule a meeting with the proposed purchaser. At this meeting the requirements for TPAs may be briefly reviewed.

HUD recommends that a purchaser contact the Field Office early, before submitting the TPA application to discuss the Field Office's requirements for submission. Delays due to incomplete packages or inadequate number of application packages may be avoided.

The purchaser should use the meeting to explain the TPA transaction and the Field Office should take advantage of the opportunity to explain the review process and any expectations it may have.

A. Preliminary Approval

1. Step 1: Submission of TPA Application/Required Documentation - commences with the submission of a minimum of two copies of the - TPA Application (form HUD-92266) and the required documentation, as applicable and described more fully below. The Field Office may require additional copies of the entire application. At least one set of documents must show original signatures.

The application must also be accompanied by the information required by Housing Notice H 90-17, Combining Low Income Housing Tax Credits (LIHTC) with Other HUD Programs, or any modification or substitute Notice.

The contents of the Application for Preliminary Approval are listed below:

1. TPA Application (form HUD-92266)
2. Purchaser's Letter
3. Purchaser's Certificate of Previous Participation (form HUD-2530)
4. Purchaser's Resume

5. Source and Application of Funds
6. Executed but unrecorded Sale Contract, Option Contract or Land Contract
7. Executed Seller/Purchaser Affidavit
8. Executed But Unrecorded Regulatory Agreement
9. Executed But Unrecorded Modification Agreement
10. Executed But Unrecorded Secondary Financing Documents
11. Interim Financial Statement
12. Pro-forma Balance Sheet
13. Mortgagee's Statement of Escrow and Reserve Account
14. MIO Plan
15. Proposed But Unrecorded Deed
16. Proposed Bill of Sale and Assignment
17. Proposed Management Certification, and Entity Profile, if applicable, and form HUD-2530 for Management Agent
18. Title Report
19. Mortgagor's Oath
20. Proposed Rental Schedule (form HUD-92458)
21. Executed Organizational Documents of Purchaser
22. Attorney's Certification
23. Byrd Amendment Certification
24. Purchaser's Personal Financial Statement (FHA Form 2417)

A discussion of each of these items follows:

1. TPA Application consists of a properly executed form HUD-92266. Note that if a lien is being created, the mortgagee must sign the application.

2. Purchaser's Letter - "Purchaser" is defined to include all individuals purchasing as individuals or as principals in a joint venture, all general partners in a purchasing partnership, or a corporation. The letter must be signed by an authorized principal of the purchasing entity.

   The Purchaser's letter must describe in detail all financial consideration flowing to the project and the mortgagor/seller as a result of the transfer. This letter must detail all funds allocated to project operations as well

as those funds designated for use in correcting the physical needs of the project.

The letter should describe the entire transaction, including but not limited to:

- o how the transaction complies with the Determinative Criteria;
- o an explanation of the organization and structure of the purchasing entity;
- o an explanation of the business transaction reflected in the Source and Use of Funds Statement;
- o the Purchaser's motivation for acquiring the project;
- o an explanation of its relationship to the management agent and whether it expects to make changes in the management of the project, particularly within the first year following preliminary approval;
- o an explanation of why it believes the proposed repair program and/or deposit to the reserve for replacement account will be adequate to maintain the project in safe, decent and sanitary condition; and
- o an explanation of how it will correct any financial deficiencies reflected in the interim financial statement, including eliminating payables at closing and making sure the various escrows (property tax, insurance) and trust accounts (tenant security deposit) will be properly funded as a result of the TPA.

The letter must state that if the project is HUD-insured the project mortgage is current or will be brought current as a result of the transfer approval. If the mortgage is held by HUD, the letter must state that the mortgage is either current or it must describe a plan for bringing the mortgage current.

All workout plans must comply with HUD workout policies in effect at the time the TPA application is submitted for Preliminary Approval.

3. Purchaser's Certificate of Previous Participation (HUD Form 2530) - A Certificate of Previous Participation (HUD Form 2530) must be filed for all general partners and all individuals and/or entities who own an interest in the project of 25 percent or more or who own 10 percent or more of the corporate stock of the corporation purchasing the project.

4. Purchaser's Resume - This is to be submitted where the purchaser has no previous participation with the HUD Field Office where the application for transfer is submitted. The Resumes for each principal of the purchaser should be submitted and should be in sufficient detail for HUD to understand the nature of their real estate experience.

5. Sources and Uses of Funds - This shows ALL expected sources of funds and ALL expected uses of these funds. A suggested format is in Appendix F. The applicant may modify this format to suit the particular transaction, but the modification may not be less detailed or combine items to avoid specificity.

   ALL PURCHASERS ARE REQUIRED TO INCLUDE A SOURCES AND APPLICATION OF FUNDS. THERE ARE NO EXCEPTIONS.

6. Executed but Unrecorded Sale Contract, Option Contract or Land Contract - Submit the applicable sale document in its entirety.

7. Executed Seller/Purchaser Affidavit - The parties must submit with the sale contract a sworn statement to the effect that the sale contract recites all of the consideration moving to the seller or any person identified therewith.

8. Executed but Unrecorded Regulatory Agreement Proposed Regulatory Agreement executed by the Purchaser, as appropriate.

9. Executed but Unrecorded Modification Agreement or Release and Assumption Agreement - Proposed Modification Agreement, Proposed Release and Assumption Agreement, as appropriate.

10. Unexecuted Secondary Financing Documents - If the proposed secondary financing involved creates a lien against the project or personalty thereof a consent statement from the holder of the first mortgage must be submitted. See Appendix H, Legal Review of Transfer of Physical Assets Proposals.

11. Interim Financial Statement - Unaudited interim financial statement (prepared period from the date of the last audited financial statement to the date of application.

12. Pro Forma Balance Sheet - Pro forma balance sheet (prepared according to Handbook 4370.2). This Balance Sheet will show how the project accounts are expected to appear the day after the expected date of closing.

13. Mortgagee's Statement of Escrow and Reserve Account. The mortgagee should provide an opinion as to the adequacy of the present escrow balances (taxes, property insurance) and present monthly deposits to meet the next anticipated tax and insurance bills.

14. Management Improvement and Operating (MIO) Plan - Where the project will have physical, management, or financial needs or changes at the time of the transfer, a MIO plan or another plan acceptable to HUD must be submitted, which describes the timing and extent of planned repairs and financial contribution and the timing for all management or procedural changes.

15. Proposed but Unrecorded Deed

16. Proposed Bill of Sale and Assignment - See form HUD-92266a, Instructions for Preparation of the Application for Transfer of Physical Assets, for fuller explanation.

17. Proposed Management Certification and Form HUD-2530 - Where a change of management is contemplated by the transfer, a copy of the proposed new management certification must be included. This certification must be completed in conformity with HUD Handbook 4381.5 REV-1. If not already on file with the Field Office, a Management Agent Profile must also be submitted. If the proposed agent has not previously managed properties in the jurisdiction where the project is located, a brief summary or resume of the agency and its principals should be included. Also, the new management company must receive previous participation clearance by filing Form HUD 2530.

18. Title Report - See FHA Form 2226 or equivalent

19. Mortgagor's Oath - See FHA Form 2478 or equivalent

20. Proposed Rental Schedule (Form HUD-92458) - original and completed form. NOTE: The approval of this rental schedule in conjunction with a TPA is not an approval to raise the rents at the project. All rent increases must be processed under existing procedures.

21. Executed Organizational Documents of Purchaser - See form HUD-92266a, Instructions for Preparation of the Application for Transfer of Physical Assets, for fuller explanation.

22. Attorney's Certification - The Purchaser's attorney must certify that, following HUD's preliminary approval, all documents requiring execution and/or recordation will be executed and, as required, recorded in the form reviewed and approved by HUD. The attorney must use the form entitled Attorney's Certification, (Appendix A-12).

23. Byrd Amendment Certification - Regarding disclosure to report lobbying. HUD will provide statement and accompanying form, if necessary, to be completed for this purpose.

24. Purchaser's Personal Financial Statement HUD will provide the form to be completed for this purpose (FHA Form 2417).

    The above documentation must be complete and accurate. The documentation must be submitted directly to the appropriate Field Office. Upon receipt of this initial package, the Field Office immediately provides the applicant with a letter acknowledging receipt of the application (See Handbook 4350.1, Chapter 13). This acknowledgement does not indicate acceptance of the application as to form or content.

2. Step (2): Review of Application for Completeness

   a. The Field Office logs in the application and reviews the submission for completeness. Following the initial review a deficient application may be returned to the applicant. (The sample found at Appendix A-2 entitled, Return of Deficient Submission, should be used for this task.) Alternatively, if the deficiencies are not serious, the Field Office should alert the applicant as to the missing documents (see Appendix A-3 Request for Correction of Deficient Submission). The Field Office has the responsibility to determine if a TPA application should be returned or if the missing pieces should be requested and processing delayed.

   b. When a complete application is obtained, the Field Office:

      (1) Dates the application. (The date a complete package is received by the Field Office.)

      (2) Forwards the application to the appropriate servicer for review.

      (3) Forwards one copy to the Field Counsel or other division or branch having been designated as part of the review process. Use the sample in Appendix A-4 to request the other office's review.

c. Processes Form 2530 pursuant to Handbook 4065.1.

d. Request necessary inspections and reports (e.g., physical inspection, management review).

e. Initiate other inquiries needed.

f. Complete form HUD-9575, entitled Transfer of Physical Assets Information Sheet (Appendix E).

3. Step (3): Review of Application and HUD Reports to Determine Acceptability of Transfer

a. During this step the Field Office servicer, field counsel, or other division/branch simultaneously review the application, the results of all HUD inspections and reports, the physical inspection and cost analysis, if applicable, submitted by the applicant. Meetings and negotiations are held, if necessary, among HUD and the purchaser and seller.

The Field Office may seek guidance from regional housing at any point during Step 3. However, the Field Office is urged to contact regional housing as soon as it determines that guidance is necessary. All requests for guidance or review by the regional office (except requests from field counsel) should be made to the Regional Director of Housing. The Field Office should use the sample entitled Request for Guidance from Regional Housing, Appendix A-6 in transmitting this request. The servicer should provide all attachments required for ease of review.

If field counsel desires regional counsel to review an aspect of the transaction requiring legal review, it should request this review using the sample at Appendix A-7. Copies of the request should be provided to the Chief, Loan Management Branch.

b. During Step 3, the reviews not delegated to the Field Office or the aspects of the transaction requiring regional and Headquarters approval take place. The Field Office cannot proceed to Step 4 until it has received these approvals.

4. Step (4): Issuance of Preliminary Approval, OR Denial of TPA

a. The office prepares the preliminary approval letter. Use the sample entitled, Preliminary Approval at Appendix A-8. The letter should state all terms and conditions of the approval, including the requirements imposed by the Regional Office or Headquarters, and, where applicable, should include as a requirement, receipt of the applicant's attorney's additional certification (see paragraph B, 1 below and Appendix A-13). The letter should also include a disclaimer stating that

> "This approval should in no way be construed as evidence that HUD has approved or reviewed the entire contents of the Preliminary Prospectus of ___________________________, dated __________. Said Prospectus is considered merely a selling aid and is not a required TPA document subject to HUD approval".

b. If the office denies the transfer proposal, use the sample letter entitled, Letter Transmitting Decision to Deny TPA Proposal at Appendix A-9.

B. Final Approval

1. Step (1): Certification of Change in Documents Prior to Final Execution and Recordation - if HUD required any changes to the documents submitted during the Preliminary Approval review, the applicant's attorney must certify to HUD that the required changes have been made. (See Appendix A-13).

2. Step (2): Submission and Review of Executed and Recorded Documents and other Phase II Documents - The applicant has 45 working days from the date of preliminary approval to submit all executed and recorded documentation to the Field Office. The preliminary approval shall be the date on the letter. Where the applicant finds that he/she is unable to submit the appropriate documentation within the required time period, he/she should submit a written request for an extension of time to the Field Office. Such extension must explain the reason for the delay.

   Phase II documentation consists of the following:

   (1) All recorded documents; (2) unrecorded executed documents; (3) audited interim financial statement; (4) purchaser's balance sheet; (5) mortgage statement; (6) title policy; (7) original regulatory agreement; (8) attorney's opinion; (9) rental schedule. These documents are discussed below:

   a. All Executed Recorded Documents - One certified (by the recording officer) and one conformed copy of all recorded documents -- except the recorded Regulatory Agreement, which is dealt with below.

   b. All Unrecorded Executed Documents - Copies, certified by the purchaser, trustee or other responsible person to be true copies, of all unrecorded executed documents used in connection with the transfer.

   c. Original Regulatory Agreement - Where applicable, the original executed and recorded Regulatory Agreement and one copy.

   d. Audited Interim Financial Statement - Audited Interim Financial Statements must cover the period from the date of the last audited report furnished to HUD to date of transfer.

e. Purchaser's Balance Sheet - Actual Condition Purchaser's Balance Sheet, as of the date of the transfer of title to the purchaser, along with copies of any deferred payment notes approved by the Secretary and certified to be true copies by the holder thereof.

f. Mortgagee's Statement - Mortgagee Statement of all trust and escrow accounts as of date of transfer of title to the purchaser.

g. Title Policy - Title Policy or endorsement, as appropriate. If the mortgagor-seller is to be released, a proposed title binder or letter from the company issuing the original mortgagee's policy shall show that after the transfer the mortgage will remain a first lien on the property and the mortgagee will still be protected by a mortgagee's title policy.

h. Attorney's Opinion - Attorney's Opinion stating that the transaction has been legally consummated and that the purchaser is legally authorized to operate the project and is obligated to abide by the terms of the Regulatory Agreement. The opinion must also state that the documents that were executed and/or recorded are the same, in form and content, as those approved by HUD in the preliminary review process. The attorney shall not have an identity of interest with the purchaser or seller.

i. Rental Schedule -Rental Schedule and or Budget Worksheet if Applicable (form HUD-92458) dated after the date of transfer of the project. The Rental Schedule must show the names of all principals for which HUD approved a 2530 in connection with the TPA. The rental schedule may not exceed the current rents most recently approved by the Field Office, if the rents have not been deregulated.

3. Step (3) - Field Office Review of Final Approval Submission:

If the documentation is acceptable, final approval of the transfer is issued and the sample letter

entitled Final Approval is forwarded to the applicant (Handbook 4350.1, Chapter 13).

When recording or other deficiencies are discovered during Phase II, the purchaser will be notified to immediately correct the deficiencies and resubmit the corrected documents for review.





Acknowledgement of Receipt of Submission

ADDRESSEE

Dear: ______________________________

Subject: Project Name: ____________________________
Project No: ____________________________

We have received your application for a transfer of physical assets on the subject project. Your application will be processed pursuant to our standardized procedures for the review of such transactions.

During the course of the review, HUD staff may find it necessary to contact you for further information or for an explanation of information you have already provided as part of your application. Your cooperation and immediate attention to our inquiries will help assure expeditious processing of your application.

Please be advised that you are not authorized to transfer, take possession of, or assume the burdens or benefits of ownership of the subject property until such time as you receive a letter signed by (Manager or Supervisor or Deputy Manager) authorizing you to do so. Such letter will constitute preliminary approval of the transfer. Verbal authorization to transfer or written authorization signed by other than (the Office Manager, Supervisor or Deputy Manager) is NOT sufficient.

I look forward to working with you in this matter and assure you that every effort will be made by my staff to provide you with prompt and courteous service. Inquiries which you may have concerning your submission should be directed (name of loan

servicer) at (phone number).

Sincerely,

NAME
Chief,
Loan Management Branch





Return of Seriously Deficient Submission

ADDRESSEE

Dear: ____________________

Subject: Project Name: __________________________________
Project No: ___________________________________

The transfer of physical assets proposal involving the subject property which you submitted to our office on _________________________ is being returned to you inasmuch as the submission is seriously deficient. No further review of your proposal will be conducted by our staff at this time. The deficiencies found in your submission are as follows:

List all missing, incomplete or improperly prepared documentation. Indicate the deficiency.

1.
2.
3.
4.
5.

Should you wish to resubmit your application in complete and properly prepared form, my staff and I will be pleased to accept and review your application. Please submit the application in its entirety; do not submit only the missing or improperly prepared exhibits.

All inquiries concerning this matter should be directed to (name of loan servicer) at (phone number).

Sincerely,

NAME
Director,
Housing Management Division

Request for Correction of Deficient Submission

ADDRESSEE

Dear: ______________________

Subject: Project Name: ____________________________
Project No: _____________________________

The transfer of physical assets proposal involving the subject project, which you submitted to our office on _______________________ is found to be deficient in the following manner:

1.
2.
3.
4.

Due to the nature of the deficiencies HUD is retaining your original submission at our office. If we do not receive the above documentation within the next 30 calendar days, we will assume you do not wish to pursue this proposal and shall return your documentation to you.

If there are any questions concerning this matter, please contact (name of loan servicer) at (Telephone number).

Sincerely,

NAME
Director,
Housing management Division





Request for Legal or Other Review

MEMORANDUM FOR: (Chief Counsel, Valuation Chief, etc.)

FROM: NAME, Director, Housing Management Division,

SUBJECT: Transfer of Physical Assets
Project Name: ____________________
Project No: ____________________

Attached please find one copy of the (identify contents of the attachment; e.g. one copy of the transfer proposal, etc.) submitted to our office for review. Preliminary review of the proposal indicates that the submission is complete.

Please review the enclosed pursuant to outstanding instructions relating to the processing of transfers of physical assets. Questions regarding this matter should be addressed to (name of loan servicer).





Request for Guidance from Regional Office

MEMORANDUM FOR: Name, Regional Director of Housing

FROM: Name, Director, Housing Management Division

SUBJECT: Transfer of Physical Assets
Project Name: ____________________
Project No: ____________________

An application for the transfer of the subject property has been received by our office. A copy of the proposal is attached to this memorandum.

____ While our office is reviewing the proposal, we request your assistance in resolving the following issue(s) pertaining to the proposal.

Describe in full the issue(s) and provide the Field office analysis and recommendations.

____ The entire proposal should be reviewed by your office because of the following:

Provide the reasons why Regional Office review is required and the Field Office recommendation for action and analysis.

Attached is copy of form HUD-9575, which provides basic

information about the project and the proposal. If there are questions regarding this matter, please contact (name of loan servicer) at (phone number).

Attachments





Form Memo to Regional Counsel

MEMORANDUM FOR: Name, Regional Counsel

FROM: Name, Chief Counsel

SUBJECT: Transfer of Physical Assets
Project Name: ____________________
Project No: ________________

This is to request your review of the transfer of physical assets for the subject property. Our review of the transfer proposal indicates the following:

____ The proposal, except to the extent it involves standard documents or pertains to local law should be reviewed by your office because the transfer involves the following matters:

Describe in full all areas which need Regional Counsel review and provide recommendations and analysis

____ While our office is reviewing the proposal, we request your assistance in resolving the following issue(s), which have been previously discussed with your office.

Summarize the issue(s) and provide analysis and recommendations

If you have questions, please call (attorney adviser) at (phone).

Preliminary Approval

ADDRESSEE

Dear: ______________________

Subject: Project Name: ____________________
Project No: ______________________

Please be advised that the transfer of physical assets proposal which you submitted to our office on __________________ is hereby granted preliminary approval subject to the following terms and conditions:

Specify all requirements, actions, changes, etc. that are conditions to the approval. REMEMBER, include the requirement for an attorney's opinion in the event changes to the documents are a condition of approval.

This approval should in no way be construed as evidence that HUD has approved or reviewed the entire contents of the Preliminary Prospectus of ________________________________, dated __________. Said Prospectus is considered merely a selling aid and is not a required TPA document subject to HUD approval.

You have 45 working days from the date of this letter in which to conform all relevant documentation and activity to the terms and conditions recited above, to execute and record that documentation, and to submit such documentation and/or evidence of required activity to our office. Preliminary approval authorizes you to take possession of and assume the burdens and benefits of ownership of the project, provided you comply with all the conditions set forth in this approval letter.

I look forward to receipt of your Final approval submission within 45 days. If you find that you are unable to provide the required documentation to our office within the prescribed period, a request for extension of this period must be made, in writing, prior to the expiration of the 45 day period, but as soon as possible after you learn of a delay. Provide specific reasons for the delay and a target date for completion.

If there are questions, please call (loan servicer) at (phone).

Sincerely,

NAME
Manager

Rejection of Proposed TPA

ADDRESSEE

Dear: ____________________

Subject: Project Name: ____________________
Project No: ____________________

Please be advised that the transfer of physical assets application which you submitted to our office on (date) is denied for the following reasons:

List the reasons for rejection.

If there are questions, please call (loan servicer) at (phone).

Sincerely,

NAME
Manager





Request for Full Regional or Headquarters Review

MEMORANDUM FOR: Name, Director, Office of Regional Housing

FROM: Name, Director, Housing Management Division

SUBJECT: Transfer of Physical Assets
Project Name: ____________________
Project No: ____________________

A proposal for the transfer of the subject property was received on (date) by our office. We have attached a copy of the proposal to this memorandum.

The entire proposal needs review by your office for the reasons discussed below:

Our recommendations regarding this transaction are discussed below:

Attachment

Final Approval

ADDRESSEE

Dear: ____________________

Subject: Project Name ______________________
Project No. _____________________

Final Approval of your proposal for the transfer of the subject property, which was submitted to our office on (date) is herewith granted by HUD inasmuch as the terms and conditions of the transaction and the documentation supporting such terms and conditions are found to be acceptable to HUD. This approval is conditioned upon strict compliance with the terms and conditions of this transfer as agreed by HUD.

Sincerely,

NAME
Manager





Attorney's Certification on Execution and Recordation

U. S. Department of Housing and Urban Development

Subject: Project Name
Project Number
Project Location

Dear: (insert name of Field Office manager)

This firm represents the purchaser of the above referenced project. This letter is submitted in connection with an application for transfer of physical assets of the project.

I hereby certify that the following documents submitted for review (list all documents) are in the form in which they will be executed and, if appropriate, recorded. I certify that these documents will not be changed in any way following HUD review and

prior to execution and/or recordation without HUD's prior specific approval. As to any document changes required by HUD following its review, I agree to submit an additional letter within ten working days of receipt of preliminary approval by HUD in which I will certify that: (1) the documents have been changed precisely as required by HUD, (2) no additional changes will be made prior to execution and/or recordation of the revised documents.

I further certify that I have advised my client that the following events will cause HUD to seek a reconveyance to the seller and to seek administrative sanctions for an unauthorized transfer of physical assets: (1) execution and/or recordation (without HUD's prior approval) of documents which vary in any degree from the documents submitted for HUD review with this letter, and (2) execution and/or recordation of the documents submitted for HUD review prior to HUD approval of the transfer of physical assets application.

Sincerely,

Attachments





Attorney's Certification of Changes

U. S. Department of Housing and Urban Development

Subject: Project Name:
Project Number:
Project Location:

Dear: ______________________

This firm represents the purchaser of the above referenced project. This letter is submitted in connection with the application for transfer of physical assets of the project.

During HUD's review of the TPA application, HUD required changes to the following transfer documents (list all documents). Regarding those changes, I certify that: (1) the documents have been changed precisely as required by HUD and (2) no additional changes will be made prior to execution and/or recording of the revised documents.

Sincerely,

PROCEDURES FOR PROCESSING A MODIFIED REVIEW TRANSFER

CONTENTS OF APPENDIX B

I. TYPES OF TRANSFERS REQUIRING A MODIFIED REVIEW

II. DOCUMENTATION REQUIRED FOR A MODIFIED REVIEW

III. PROCESSING A MODIFIED REVIEW





I. Types of Transfers Recruiting a Modified Review:
The following types of transfers require a limited review. A transfer fee of $0.50 per $1,000 of the face amount of the original mortgage is charged for transactions covered by A or C below, as required by 24 CFR 207.1(h). TPA applications that do not include the fee will be returned unprocessed.

A. A single transfer of in excess of 50 percent of the interests of a partnership/mortgagor which does not cause a dissolution of the partnership under applicable state law.

B. Substitution of one or more general partners of a partnership/mortgagor.

C. A single transfer of an amount in excess of 50 percent of the corporate stock of a corporate mortgagor or a single transfer of an amount less than 50 percent of the total corporate stock of a corporate mortgagor where such transfer results in a change in control of the corporate mortgagor.

D. A single transfer of an amount in excess of 50 percent of the corporate stock of a corporate General Partner or a single transfer of an amount less than 50 percent of the corporate stock of a corporate General Partner where such transfer results in a change of control of

the corporate General Partner.

E. Any transaction which does not fall within any of the other categories but which, nevertheless, results in a change of control of the mortgagor.

These categories include not only a single transfer, but a series of transfers which have the same result.

II. Documentation recruited for a modified review: The following documentation must be submitted by the purchaser to the HUD Field Office when a Modified Review is required.

A. Documentation required for ALL transfers subject to modified review:





1. The mortgagor must notify the Field Office in writing that the transaction is imminent. A synopsis of the transaction must be provided;

2. Previous Participation (form HUD-2530) application must be submitted for individuals and/or legal entities who will own 25 percent or more of the partnership interests, or 10 percent or more of the corporate stock and for all incoming general partners;

3. A completed form HUD-92458, Rental Schedule and Information on Rental Project must be submitted. The rents may not exceed those last approved by the Field Office, unless the rents have been deregulated;

4. The certification and information required by Notice H 90-17, Combining Low Income Housing Tax Credits (LIHTC) with HUD Programs, as modified by any subsequent HUD notices or requirements; and

5. Sources and Uses of Funds Statement showing ALL funds and ALL expected uses of funds (See Appendix F for a sample format).

The purchaser must submit a letter addressing the Determinative Criteria of the Notice for all modified TPA's where a significant amount of money will change hands.

6. A copy of the amended partnership agreement for all transactions involving transfers of interests in the owning entity, including the substitution of one or more general partners.

B. Additional Documentation required only for a transfer of 50 percent or more of the corporate entity, corporate General Partner, Partnership or Beneficial trust.

1. The applicant must provide a letter addressing the determinative criteria.





2. The applicant must provide copies of any proposed amendments to the existing partnership agreement and/or additional financing documents.

3. A partnership applicant must submit an attorney's opinion that the transfer does not cause a dissolution of the partnership under applicable state law.

C. Documentation required only for the substitution or addition of one or more general partners.

- A resume of the incoming general partner(s) must be provided.

D. Additional documentation required only for the transfer of less than 50 percent of the corporate stock, which results in a change in control of the corporate mortgagor or corporate general partner.

1. A meeting between the stock purchaser(s) and the HUD staff in which the following is discussed.

a. The projects physical and financial condition. If the project is suffering physical, management or financial deficiencies, a plan for remedying the deficiencies will be discussed. A target date for delivery of a written plan for correcting all physical and financial problems will be agreed to by all parties.

b. The duties of the owner (stockholders) under

the Regulatory Agreement and the mortgage documents.

III. Processing a Modified Review. If the Field Office determines that the applicant opted for a modified review to avoid the more stringent requirements of the full review process, the Field Office should impose the appropriate full review requirements, including the preliminary and final approval processing sequences. The Field Office may wish to require interim financial statements, a detailed purchaser's letter, satisfaction of the determinative criteria, (including meeting the project's physical and financial needs) etc. in such cases.





INSTRUCTIONS FOR PREPARATION OF THE APPLICATION
OF TRANSFER OF PHYSICAL ASSETS

These instructions are for the preparation of the application for the transfer of physical assets. The application and instructions have been developed to facilitate the expeditious processing of proposals to transfer projects encumbered by HUD-held and HUD-insured mortgages. Parties are cautioned against introducing amendments or deviating from the instructions unless such measures are absolutely necessary to make the entire transaction effective. Nonconforming documents and deficient information will, at best, result in delays and added expense. The final paragraph of this application must be signed by the mortgagee in every instance where the transfer will result in the creation of a lien against the project.

A formal application must be executed by the purchaser, the seller, and normally by the mortgagee. If the mortgagee refuses to execute the application, the reason for such refusal must be known to HUD in writing. Copies of any correspondence to or from the mortgagee must be attached to the application. If the mortgage has not been finally endorsed for insurance, the application will not be accepted without the mortgagee's execution. In instances in which the proposal to transfer involves the creation of a lien against the property, the mortgagee must consent to the transfer.

The Department of Housing and Urban Development, under 24 CFR 207.1(h), imposes a fee of $0.50 per $1,000 of the original face amount of the mortgage to cover the cost of legal, administrative, and fiscal actions which such a transfer entails. The fee is to be paid with the filing of the application. For

applications reviewed by HUD and subsequently withdrawn, the fee paid to HUD will be considered earned and nonrefundable.

The Application of Transfer of Physical assets must be used in connection with transfers of properties encumbered by mortgages insured by HUD as well as by mortgages owned by the Secretary of HUD.





Instructions for Preparation of Required Instruments for Application for Preliminary Approval.

Below is a brief description of the more routine requirements of the TPA application. Please see Appendix A for a more complete description of these and other TPA requirements.

1. Purchaser's Letter Describing Financial Considerations Flowing to Project and to HUD -- This must be a letter from the purchaser describing in full detail all of the financial considerations to flow to the project and to HUD as a result of the transfer. This letter must detail all funds allocated to project operations as well as those funds designated for use in correcting the physical needs of the project. See Appendix A, Purchaser's Letter, for the complete list of items the letter must address.

2. Form HUD-2530 for All Appropriate Parties -- This form must be filed for all general partners, proposed management agents, and individuals and/or entities who own an interest in the project of 25% or more or who own 10% or more of the corporate stock of the corporation owning the project. It must also be filed for new management agents and certain categories of consultants (see HUD Handbook 4065.1).

3. Purchaser's Resume -- This is a self-styled resume which describes the purchaser's background and qualifications to own the project. It should at a minimum, reference all of the purchaser's previous experience in the multifamily housing industry.

4. Purchaser's Personal Financial Statement -- HUD will provide the form to be completed for this purpose (FHA Form 2417).

5. Sources and Application of Funds -- This is to be provided in all cases. See Appendix F for a suggested format.

6. Executed but UNRECORDED Sale Contract, Option Contract, or Land Contract -- All consideration moving to the seller must be recited.





7. Executed Seller/Purchaser Affidavit -- This is a sworn statement to the effect that the sale contract recites all of the consideration moving to the seller or any person identified therewith.

8. Proposed Release and Assumption, and Modification Agreements -- These are to be provided only when the purchaser is assuming the existing Note and Mortgage. These forms are provided by HUD. They are to be completed and signed by the mortgagor and mortgagee and submitted to HUD for execution in preparation for preliminary approval. If the transaction requires the execution of a new Regulatory Agreement, e.g., NP-LD transfer, the purchaser must submit a proposed New Regulatory Agreement. Furthermore, the Modification Agreement, the instrument that incorporates the regulatory agreement into the existing mortgage, should be used in any case where there is a new regulatory agreement. If the transaction does not require the execution of a new Regulatory Agreement, the purchaser must submit a proposed Release and Assumption Agreement.

9. New Proposed Regulatory Agreement -- This is to be provided where the parties are taking subject to the existing Note and Mortgage or as explained at 8 above. The appropriate agreement will be provided by HUD. It must be executed by the Purchaser.

10. Unexecuted Secondary Financing Documents -- These include all notes, deeds of trust, mortgages, financing statements, agreements creating interests in personalty and/or all other agreements evidencing deferred financing except Land Contracts. These documents must conform with outstanding administrative and legal requirements and must be UNEXECUTED.

11. Interim Financial Statement -- The statement of the seller is to be prepared in accordance with HUD Handbook 4370.2 and cover the period from the date of the last annual report furnished to HUD to the date of the application.

12. Pro forma Balance Sheet -- The pro forma balance sheet must reflect the proposed financial structure of the

purchaser immediately following the transfer, including all current and fixed assets and liabilities, and all classes of capital stock or shares in the mortgagor entity. The balance sheet must show that the expected





cash on hand will equal or exceed current liabilities and prepaid income. Cash representing security deposits shall be shown in a separate fund as required by the Regulatory Agreement. The balance sheet shall be substantially as prescribed in HUD Handbook 4370.2 and reflect the financial structure as it relates to this property only.

13. Mortgagee Statement of Escrow and Reserve Accounts -- This must be a statement certified by the mortgagee which reflects the balance in the escrow and reserve accounts at the time of application. This is not required where the mortgage is held by HUD.

14. MIO Plan -- This is to be submitted in every instance in which the project to be transferred has physical or financial needs. The purchaser can either use the HUD forms developed for evidencing an improvement plan (Forms HUD-9835, -9835A, -9835B) or the purchaser can develop a form of its own which clearly indicates the improvements and/or contributions to be made and the dates such improvements and/or contributions are to be made.

15. Proposed Management Certification -- This is to be provided where a change of management is proposed.

Preliminary Approval

If upon examination the application and the attached instruments are found in order, preliminary approval will be given to the transaction by the appropriate official at the Area or Multifamily Service Office responsible for processing the application. This approval will be conditioned upon necessary changes in the submitted documents and will authorize the execution of all remaining instruments required.

The mortgagor-seller and purchaser have agreed by the terms of the application to take any steps necessary to reconvey the property to the mortgagor-seller if the terms of the preliminary approval are not met within 45 working days from the date of the issuance of preliminary approval, unless further time is granted by the Commissioner in writing. Until HUD give preliminary approval of the TPA in writing, the transaction may not take

place. HUD will prosecute to the fullest extent possible, any unauthorized TPAs.





Application for Final Approval

1. Executed HUD Approved Sale Contract -- This contract must reflect the amendments required at preliminary approval. This contract must be resubmitted with the application for final approval.

2. Executed Secondary Financing Documents -- These documents must reflect the amendments required at preliminary approval.

3. Executed Deed -- Self-explanatory.

4. Executed Bill of Sale and Assignment -- Proposed Bill of Sale and Assignment shall describe all personal property conveyed and should be on the form provided by HUD.

5. Executed Release and Assumption Agreement -- This must be submitted where the mortgagee has consented to the transfer and the purchaser is assuming the mortgage. This must reflect all amendments required at preliminary approval.

6. Executed Modification Agreement -- This must reflect the amendments required at preliminary approval.

7. Title Policy -- If the mortgagor-seller is to be released, a proposed title binder or letter from the company issuing the original mortgagee's policy shall show that after the transfer the mortgage will remain a first lien on the property and the mortgagee will still be protected by a mortgagee's title policy.

8. Mortgagor's Oath - (Use Form FHA-2478.) Not required for projects insured under Sections 231 or 232 of the National Housing Act.

9. Proposed Rental Schedule (Form HUD-92458) -- A copy of the proposed Rental Schedule and information on Rental Project shall be submitted by purchaser. It shall show the names of all owners, including beneficiaries, stockholders, or general partners. If stock is held by a purchasing corporation, principal stockholders of that corporation shall be shown. The Rental Schedule shall not exceed the

maximum allowable rents approved for the project by the service office director for projects subject to rent regulation. In nursing home and elderly housing cases, use Form HUD-92458-A, appropriately adapted, giving the same information and, in addition, an operating budget.

10. Organizational Documents of Purchaser -- Unless the purchaser is an individual, full details on the entity acquiring the project shall be provided. If the purchaser is a corporation, trust, or partnership, two certified copies of the charter, trust, or partnership agreement should be furnished. In all such cases, the charter or agreement shall show that the corporation, partnership, or trust is authorized to operate the project and execute and be bound by the Regulatory Agreement. The charter, agreement, or other proper document or minutes of meetings should establish clearly the authority of persons executing the Regulatory Agreement and other papers for the purchaser.

11. Regulatory Agreement Executed by Purchaser -- This is to be submitted again with the Application for final approval.

12. Executed Management Certification -- This is to be submitted where a change of management is proposed.





APPLICATION FOR TRANSFER OF PHYSICAL ASSETS

Project Number:______________________________________ Date:_______

Project Name:_____________________________________________________

Mortgagor-Seller:_________________________________________________

Project Purchaser (includes Form of Ownership, e.g., Individual, Partnership, Corporation, Trust:______________________

Mortgagee of Record:____________________________________________
Address:______________________________________________________

Servicing Agent:________________________________________________
Address:______________________________________________________

Mortgage Recorded:______________ State:________ County:_________
Date:_________________ Book:________________ Page:____________

To the Secretary, Department of Housing and Urban Development:

The above-named mortgagor-seller and the project purchaser submit herewith the required fee of $________ and apply to the Department of Housing and Urban Development for permission to transfer the project from the mortgagor to purchaser and, in support of said request represent to the Secretary as follows:

I. All real and personal property of the mortgagor-seller will be conveyed to the purchaser.

II. After the transfer purchaser will own said real and personal property free and clear of all liens, encumbrances or project obligations except the insured mortgagor and those expressly approved by you in writing as to form, content, terms and amount.





In further support of this request there are attached:

Application for Preliminary Approval
1. Purchaser's Letter (See Appendix A for requirements).
2. Form HUD-2530 for all appropriate parties (Certificate of Previous Participation).
3. Purchaser's Resume.
4. Purchaser's Personal Financial Statement.
5. Sources and Application of Funds.
6. Executed but Unrecorded Sale Contract, Option Contract, or Land Contract.
7. Executed Seller's/Purchaser's Affidavit.
8. If Parties Assume Existing Notes and Mortgage:
   Where change in the Regulator Agreement is required,
   Proposed New Regulatory Agreement
   Proposed Modification Agreement
   Where no change in the Regulatory Agreement is required,
   Release and Assumption Agreement
9. If Parties Take Subject to Existing Note and Mortgage:

New Proposed Regulatory Agreement

10. Where Secondary Financing is Involved:
All unexecuted secondary financing documents (notes, deeds of trust, mortgages)

11. Interim Financial Statements.

12. Pro forma Balance Sheet.

13. Mortgagee Statement of Escrow and Reserve Accounts.

14. MIO Plan, as Appropriate.

15. Proposed Management Certification and 2530 for Management Agent (and Entity Profile, if appropriate).

16. Proposed but Unrecorded Deed.

17. Proposed Bill of Sale and Assignment.

18. Title Report.

19. Proposed Mortgagor's Oath.

20. Proposed Rental Schedule.

21. Executed Organizational Documents of Purchaser.

22. Attorney's Certification.

23. Byrd Amendment Certification

It is understood and agreed that within 45 working days of the issuance of preliminary approval the following attachments will, with such changes as you may require and no others, be delivered to you. Unless said documentation is delivered to HUD within the specified (45 working days) or unless further time for completing the transaction is granted in writing by you. HUD may require that the TPA be unwound and any interest already conveyed in the property be reconveyed to the above-named mortgagor.





Application for Final Approval

1. The following executed, or executed and recorded, documents must be submitted as previously approved by HUD for execution and recordation:

(1) Executed HUD-approved Sale Contract.
(2) Executed secondary financing documents (e.g. notes, deeds of trust, security instruments, etc.).
(3) Executed Deed.
(4) Executed Bill of Sale and Assignment.
(5) Executed Release and Assumptions Agreement.
(6) Executed Modification Agreement.
(7) Title Policy.
(8) Mortgagor's Oath.
(9) Executed Rental Schedule.
(10) Organizational Documents of Purchaser (executed partnership agreement, recorded certificate of limited partnership, etc.)

(11) Regulatory Agreement as executed by purchaser (amended or new), as approved by HUD.
(12) Executed Management Agent Certification.

2. One certified (by the recording officer) and one conformed copy of all recorded documents except recorded Regulatory Agreement. The original and one copy of recorded Regulatory Agreements, if applicable.

3. A copy, certified by the Purchaser, trustee, or other responsible person, to be a true copy of all unrecorded, executed documents used in connection with the transfer.

4. An audited interim Financial Statement of the seller covering the period between the date of the Application and the date of the actual transfer of the project to the owner.

5. An actual balance sheet of the purchaser as of the date of the transfer of title to the purchaser, along with copies of any deferred payment notes approved by the Secretary and certified to be true copies by the holder thereof.

6. Mortgagee's statement of all trust and escrow accounts as of the date of transfer of title to the purchaser.





7. If the mortgagor-seller is to be released from the note obligation, a new title policy or a letter from the title company issuing the original title policy showing that after the transfer the insured mortgage will remain a valid first lien on the property and that the existing title policy is still in full force and effect.

8. Attorney's comprehensive opinion showing that the transaction has been fully consummated and that the purchaser is legally authorized to operate the project and abide by the terms of the Regulatory Agreement.

9. Form HUD-92458, Rental Schedule and information of Rental Project or Form HUD-92458a, dated after date of transfer of project to Purchaser.

Mortgagee's Statement

If the above transfer is approved by the Secretary, Department of Housing and Urban Development, the mortgagee agrees to execute a Release and Assumption Agreement or a Mortgage Modification

Agreement incorporating the Regulatory Agreement in the mortgage. It is understood that the mortgagee's consent to this transfer will in no way prejudice its rights under its contract of insurance with HUD.

Executed this ______ day of _____________, 19___.

_______________________________________________________ Mortgagee

By ______________________________________________________________
Name/Title

In the event the consent of the mortgagee to the transfer is not evidenced by endorsement of this application, please provide the following information:

Date Consent Requested: ________________________________________

Party to whom Request Directed: ________________________________





Reason for Refusal to Consent: ________________________________
______________________________________________________________
______________________________________________________________
______________________________________________________________
______________________________________________________________
______________________________________________________________

Mortgagee's Consent to the Creation of a Lien Against the Project

Mortgagee hereby consents to the creation of a lien(s) against the real property known as (project no.) ______________________, (project name) _______________________________________________ in connection with this transfer. Mortgagee waives its right to assign the mortgage and claim insurance benefits by the reason of the creation of such lien(s).

Executed this _________ day of _________________, 19___.

_______________________________________________________ Mortgagee

By ______________________________________________________________
Name/Title

__________________________________________
Mortgagor-Seller Date

__________________________________________

By

______________________________________
Purchaser Date

______________________________________
By





## TPA SUBMISSION CHECKLIST
## PRELIMINARY REVIEW

| | YES | NO | NA |
|---|---|---|---|
| 1. TPA Application (form HUD-92266) | | | |
| filled out completely | _____ | _____ | _____ |
| signed by purchaser | _____ | _____ | _____ |
| signed by seller | _____ | _____ | _____ |
| signed by mortgagee | _____ | _____ | _____ |
| 2. Consent by Mortgagee (required only where the proposal involves conversion to condominium or cooperative or where a lien against the property is created in connection with the transfer --- FORWARD ORIGINAL DOCUMENT TO HUD, WASHINGTON HQ-- OFFICE OF MULTIFAMILY HOUSING MANAGEMENT) | _____ | _____ | _____ |
| 3. Fee submitted | _____ | _____ | _____ |
| correct amount | _____ | _____ | _____ |
| 4. Purchasers letter describing financial considerations flowing to project and to HUD. (See Appendix A, Purchaser's Letter for additional checklist items.) | | | |
| Shows: Funds to project operations | _____ | _____ | _____ |
| Funds for repairs | _____ | _____ | _____ |

mortgage status
_____ current ___ workout ___ restoration plan

| | YES | NO | NA |
|---|---|---|---|
| 5. Completed HUD 2530 for: | | | |
| all general partners | _____ | _____ | _____ |
| limited partners > 24% | _____ | _____ | _____ |
| holders of common stock with an interest 10% | _____ | _____ | _____ |

| | | | |
|---|---|---|---|
| new management agent | | | |
| all principals as defined in 2530 instructions | ______ | ______ | ______ |
| all consultants and/or packagers for profit | ______ | ______ | ______ |





| | YES | NO | NA |
|---|---|---|---|
| 6. Purchaser's resume | ______ | ______ | ______ |
| 7. Purchaser's personal financials | ______ | ______ | ______ |
| 8. Purchaser's credit information | ______ | ______ | ______ |
| 9. Sources and uses of funds | ______ | ______ | ______ |
| 10. Executed sale or land contract | ______ | ______ | ______ |
| 11. Executed seller's/purchaser's affidavit | ______ | ______ | ______ |
| 12. If parties assume existing note and mortgage - Proposed Release and Assumption Agreement | ______ | ______ | ______ |
| Proposed Modif'n Agreement | ______ | ______ | ______ |
| 13. If parties take subject to the existing note and mortgage New proposed Regulatory Agrmt | ______ | ______ | ______ |
| 14. Where secondary financing is involved: | | | |
| A. all unexecuted secondary financing documents (notes, deeds of trust, mortgages) | ______ | ______ | ______ |
| B. written consent of mortgagee (where a lien against the property is created) | ______ | ______ | ______ |

FORWARD ORIGINAL WRITTEN CONSENT TO OFFICE OF MULTIFAMILY HOUSING MANAGEMENT IN HEADQUARTERS

| | | | |
|---|---|---|---|
| 15. Interim financial statements | ______ | ______ | ______ |
| 16. Pro forma balance sheet | ______ | ______ | ______ |
| 17. Mortgagee statement of escrow | | | |

| | YES | NO | NA |
|---|---|---|---|
| and reserve accounts | ____ | ____ | ____ |





| | YES | NO | NA |
|---|---|---|---|
| 18. MIO plan, as appropriate | ____ | ____ | ____ |
| 19. Management certification and profile | ____ | ____ | ____ |
| 20. Proposed unrecorded deed | ____ | ____ | ____ |
| 21. Proposed bill of sale and assignment | ____ | ____ | ____ |
| 22. Title report | ____ | ____ | ____ |
| 23. Mortgagor's oath | ____ | ____ | ____ |
| 24. New rental schedule (form HUD-92458) | ____ | ____ | ____ |
| 25. Organizational documents of the purchaser | ____ | ____ | ____ |
| 26. Attorneys certification of execution and recording | ____ | ____ | ____ |





FINAL REVIEW

| | YES | NO | NA |
|---|---|---|---|
| 1. Copies of all executed and recorded documents | | | |
| Deed | ____ | ____ | ____ |
| Assumption agreement | ____ | ____ | ____ |
| Modification agreement | ____ | ____ | ____ |
| Release agreement | ____ | ____ | ____ |
| Secondary financing documents | ____ | ____ | ____ |

| | | | |
|---|---|---|---|
| 2. Original Regulatory Agreement Executed and Recorded | ______ | ______ | ______ |
| 3. Interim audited financial statements | ______ | ______ | ______ |
| 4. Purchasers balance sheet | ______ | ______ | ______ |
| 5. Mortgagee's statement of escrows and reserves | ______ | ______ | ______ |
| 6. Title Policy | ______ | ______ | ______ |
| 7. Attorney's opinion | ______ | ______ | ______ |





SOURCES AND USES OF FUNDS STATEMENT

Click Here to Download/Open Appendix F (PDF File)

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON D.C. 20410

OFFICE OF THE GENERAL COUNSEL

MEMORANDUM FOR: All Regional Counsel
All Chief Counsel
All Chief Attorneys

FROM: Charles J. Bartlett, Assistant General Counsel
Multifamily Mortgage Division, GHM

SUBJECT: Legal Review of Transfer of Physical Assets Proposals

This memorandum is intended to be the new primary source of guidelines for field counsel on the legal review of transfer of physical assets proposals. In this memorandum, we have revised and updated our legal requirements to adapt to the most recent administrative procedures (to be issued in a separate memorandum.) This Division's prior memorandum dated December 6, 1982 entitled "Review of Transfer of Physical Assets Proposals" is cancelled.

In revising our legal requirements, we have taken into account new developments in the sales of multifamily projects subject to HUD-insured or HUD-held mortgages. Furthermore, we have adopted new legal requirements designed to assist field counsel in the review of the new "expedited" TPA's such as transfers in escrow. (Therefore, this memorandum should be read in conjunction with the forthcoming memorandum on administrative requirements for TPA's.) Although we have made some changes in the arrangement of required language in secondary financing documents, this memorandum adopts the format used in our December 6, 1982 memorandum and contains three Sections: (I) Transfer of Physical Assets Review; (II) Secondary Financing; and (III) Other Transfer Related Issues.

I. REVIEW OF TRANSFER OF PHYSICAL ASSETS

A. Definition. A transfer of physical assets is a change in the ownership of a project upon which there is a mortgage loan insured or held by HUD. Although a conveyance of title from the mortgagor-seller to the buyer is a transfer of physical assets, the Department also treats the sale of a project by means of a land contract as a transfer of physical assets even though legal title remains in the mortgagor-seller. Similarly, where a passive trust holds title to a project, an assignment of 100 percent of the beneficial interest in that trust, resulting in a significant change in the control and management of the

project, is subject to transfer of physical assets review although legal title remains in the trustee. Moreover, the transfer of 50 percent or more of the interests in a partnership to a separate entity constitutes a transfer of physical assets whether or not the assignment causes the dissolution of the partnership. Once a particular proposal is determined to be a transfer of physical assets, applicable requirements set forth in Form HUD-92266, Application for Transfer of Physical Assets hereinafter Application , and Form HUD-92266A, Instructions for Preparation of HUD-92266-Application for Transfer of Physical Assets, hereinafter Instructions , will be utilized in processing the proposal. (We anticipate that the Application and instructions will be revised and supplemented with checklists, worksheets, etc.) Background information regarding transfer procedures is found in Chapter 4, Section 11 of HUD Handbook 4350.1. Insured Project Servicing, and Chapter 3 of HUD Handbook 4360.1 Supp 1, HUD-Held Project Servicing. (The HUD Handbook procedures for TPA's are in the process of being revised to reflect changes in Departmental policy.)

In addition, significant changes in a mortgagor which are less than a full transfer of physical assets may require administrative review by Housing. Housing has developed a "modified review" for the transfer at any one time of an amount in excess of 50 percent and up to 100 percent of the interest of the partnership mortgagor provided such transfer does not constitute a dissolution of the partnership under state law. (Dissolution of the partnership would be subject to a full review.) The issue of whether such 100 percent transfer would cause a dissolution under state law should be resolved by field counsel. Other transfers which require modified review procedures include: Substitution of one or more of the general partners; transfer at any one time of an amount in excess of 50 percent of the corporate stock of the corporate mortgagor and transfer of an amount less than 50 percent of the total corporate stock of the corporate mortgagor where such transfer results in a change in the control of the corporate mortgagor. Field counsel should be aware of the current administrative requirements with respect to "modified review", procedures.

Finally, a transfer of physical assets is possible prior to final endorsement. A transfer of the project during this period would necessitate the execution of both HUD transfer and development forms. In general, all transfer of physical assets requirements established in the Application should be followed. However, a reprocessing of the application for mortgage loan

insurance using revised information set forth by the buyer in FHA Form No. 2013, Application for Project mortgage insurance, may be required in lieu of a transfer. Because a reprocessing usually results in a change in the mortgage amount, certain development documents (e.g., Building Loan Agreement, Construction Contract) also must be revised to reflect the change. Other development documents executed by the mortgagor may also require an assignment or reexecution if the transfer occurs during the construction period.

The transfer of physical assets procedure is not applicable to first user syndications (i.e. the sale of interest units in an existing limited dividend partnership mortgagor which occurs at or prior to final endorsement.) First user syndications should be reviewed in accordance with the administrative requirements for substitution of partners. Furthermore, some transactions which involve changes in the mortgagor entity are not transfers of physical assets. Field counsel should contact this Division with questions concerning whether certain changes in a mortgagor entity constitutes a transfer of physical assets. (Note, that 24 C.F.R. 5207.1(h) requires payment of a transfer fee in all cases involving substitution of mortgagors.)

B. Review of Field Counsel. All proposals should first be substantively reviewed by field counsel regardless of whether legal review by this Division is required.

This Division will review all transfers which are forwarded to Central Office under outstanding administrative criteria or which present legal issues which this Division should examine. For example, transfers involving conversions to the cooperative form of ownership; long-term leases with options to purchase; and conversions from the cooperative form of ownership to operation as a rental project each require review by this Division.

Generally, multiple transfers and transfers involving land contracts no longer require review by this Division. However, if necessary, field counsel should contact this Division for assistance in reviewing these proposals.

Occasionally, this Division approves standard TPA documents in connection with a particular purchaser. Any substantive changes to these previously approved documents should be discussed via telephone with a Division attorney in order to expedite field office review.

C. Review of Application. The following legal issues frequently arise during the review of the TPA application:

1. Regulatory Agreements. A new Regulatory Agreement should be executed whenever the transfer is "subject to" the existing note and mortgage. In Cases where the purchaser is assuming the existing note and mortgage, the purchaser may also assume the existing Regulatory Agreement. A new Regulatory Agreement must be executed in connection with any transaction which involves a change in the type of a mortgagor entity (i.e. a NP-LD transfer or cooperative or rental conversion) or in cases where the existing Regulatory Agreement has been superseded by a more recent version. Where the project subsidy is converted to Section 8, a new type of Regulatory Agreement may be required which combines parts of the original Regulatory Agreement with the Section 8 Regulatory Agreement. Please contact this Division for assistance in formulating such a "hybrid" Regulatory Agreement.

   Regulatory Agreements executed in connection with a transfer by land contract should be executed by both the seller and the purchaser. Additionally, the Regulatory Agreement should contain "Rider A" to the Regulatory Agreement.

2. Mortgagee Consent. Mortgagee consent to the TPA is required whenever the purchaser is assuming the existing note and mortgage. This consent is evidenced by the mortgagee's execution of the TPA application. In such cases the mortgagee must also execute an Assumption Agreement and a Modification Agreement. A "subject to" transfer does not require mortgagee consent. However, present administrative procedures require evidence of the mortgagee's failure to consent to the transfer. (See TPA application instruction form.) Where a "subject to" transfer involves any of the following, mortgagee consent is required: Secondary financing secured by a lien against the project, land contracts, and long-term leases with options to purchase. (Mortgagee consent is discussed in greater detail in Part II of this memorandum.)

3. Secondary Financing. If the transfer involves financing creating a lien against the project and the mortgagee consents to the creation of this lien, the phrase in clause II of the Application which states

that the buyer will "own said real and personal property free and clear of all liens or encumbrances except the insured mortgagee . . ." should be deleted.

4. Organizational Documents. Field counsel review of the buyer's organizational documents submitted with the Application should be similar to the review of the mortgagor's documents submitted in connection with an FHA initial closing.

In general, the organizational documents should expressly indicate that the duration of the acquiring entity is at least coextensive with the remaining term of the mortgage. Furthermore, the documents must include a provision stating that the terms of the Regulatory Agreement take precedence in the event of any conflict with the terms of the organizational documents. In addition, it should be clear from the documents that the buyer has authority to enter into the transaction.

With respect to the review of a limited partnership agreement, it has come to our attention that the form language required by the Regulatory Agreement Instructions may have to be modified in jurisdictions adopting the Uniform Limited Partnership Act or Revised Uniform Limited Partnership Act. The Regulatory Agreement instructions currently provide that " a ny incoming partner shall as a condition of receiving an interest in the partnership property agree to be bound by the note, mortgage, and Regulatory Agreement . . . ." The Uniform Acts provide that a partner does not own an interest in the property of the partnership, but in the partnership itself.

FIELD COUNSEL SHOULD REVIEW THE ORGANIZATIONAL DOCUMENTS OF ANY ACQUIRING PARTNERSHIP TO MAKE CERTAIN THAT THEY CONTAIN THE REQUIRED LANGUAGE SET OUT AT SECTION II, SUBSECTION G. infra ("Secondary Financing Secured by Assets of the Acquiring Partnership") AND DO NOT OTHERWISE CONFLICT WITH ANY HUD REQUIREMENTS.

5. Deed. The form of deed shall be reviewed by field counsel for compliance with local law. The form of deed must be a special warranty deed or its equivalent (i.e. a deed which includes a covenant against the acts of the grantor.)

## II. SECONDARY FINANCING

Secondary Financing is used when the mortgagor-seller does not receive the full purchase price at the time of the transfer and agrees to its payment over a period of time. The method of securing payment of the deferred purchase price may create a lien against the project. HUD reviews all financing in connection with the transfer although HUD requirements differ between secondary financing which creates a lien against the project and that which does not. The following legal requirements controlling the use of secondary financing must be satisfied before approval of the use of secondary financing may be permitted for subsidized and unsubsidized projects:

A. Deferred Cash Payments Many transfers which involve syndication of the project provide for mandatory deferred cash payments to the mortgagor-seller of the project to be made within the first five years of the transfer. This arrangement is legally acceptable provided that the sales agreement or other documents expressly states that these payments are to be derived from the capital contributions of the syndicating limited partnership and not from project income.

B. Mortgagee Consent -- Secured Secondary Financing. The holder of the first mortgage must consent in writing to all financing secured by the project (i.e., where a lien is created against the project by the secondary financing.)

C. Mortgagee Consent -- Unsecured Secondary Financing. If the secondary financing is not secured by the project, the purchaser should try to obtain consent to the financing from the holder of the first mortgage. Failure to obtain mortgagee consent when the secondary financing is not secured by the project, however, does not mean that HUD will not consent to the transfer. If the mortgagee does not respond to the request for consent, the purchaser or purchaser's attorney must certify that an attempt was made to obtain mortgagee consent. The purchaser is not required to produce a letter from the mortgagee.

D. Subordination of Secondary Financing. The second mortgage or security agreement must be subordinate to the HUD-held or HUD-insured mortgage. The following language, as appropriate, must be included:

> Security Agreement: Secured Party, for itself and its successors and assigns, covenants and agrees that all of its rights and powers under this security agreement are subordinate and subject to the rights

of (identify mortgagee) under that certain mortgage (deed of trust) dated __________ and recorded (date, office of recordation) and under that certain Security Agreement dated ______________, and the rights of the Secretary of Housing and Urban Development under that certain Regulatory Agreement dated ________________ and incorporated by reference in the above described mortgage.

Second or Wrap-Around Mortgages: Mortgagee, for itself and its successors and assigns, covenants and agrees that all of its rights and powers under this mortgage are subordinate and subject to the rights of (identify first mortgagee) under that certain mortgage (deed of trust) dated _____________ and recorded (date, office of recordation) and under that certain Security Agreement dated ___________, and the rights of the Secretary of Housing and Urban Development under that certain Regulatory Agreement dated _________________ and incorporated by reference in the above described mortgage.

E. Prohibition Against Attaching or Assigning Rents and Other Income. Assignment of rents or other income of the project subject to a HUD-insured or HUD-held mortgage to any party other than the HUD mortgagee is prohibited by the terms of the first mortgage unless there is written mortgagee consent to the assignment. Furthermore, the attachment of rents or other project income in the event of foreclosure of a second or wrap-around mortgage also is prohibited. The following language must be included in the second or wrap-around mortgage;

Mortgagee, for itself and its successors and assigns, further covenants and agrees that in the event of the appointment of a receiver or of the appointment of the mortgagee as mortgagee-in-possession, in any action by the mortgagee, its successors or assigns, to foreclose the mortgage, no rents, revenue or other income of the project collected by the receiver or by the mortgagee-in-possession shall be utilized for the payment of interest, principal or any other charges due and payable under this mortgage, except from surplus cash available for distribution, if any, as the term is defined in the Regulatory

Agreement; and further, the receiver or mortgagee-in-possession shall operate the project in accordance with all the provisions of the first mortgage and the Regulatory Agreement.

F. Payment Only from Surplus Cash. Notes evidencing secondary (deferred) financing must provide that any payments from project income can only be made from surplus cash (if the project has a profit-motivated mortgagor) and permissible distributions from surplus cash - - e.g., 6, 8 or 10% (if the project has a limited distribution mortgagor.) The following language must be in the Note or Wrap-Around Note:

1. Note Secured by a Lien Against the Project: As long as the Secretary of Housing and Urban Development, or his success or assigns, is the insurer or holder of the mortgage on (insert project name and FHA Project No.), any payments due from project income under this Note shall be payable only from permissible distributions from (omit "permissible distributions from" if a profit-motivated mortgagor) surplus cash of the said project, as that term is defined in the Regulatory Agreement dated ____________________ between the Secretary of Housing and Urban Development and (insert name of mortgagor-seller). The restriction on payment imposed by this paragraph shall not excuse any default caused by the failure of the maker to pay the indebtedness evidenced by this Note.

2. Note Not Secured by a Lien Against the Project: As long as the Secretary of Housing and Urban Development, or his successor or assigns, is the insurer or holder of the mortgage on (insert project name and FHA Project No.), any payments due from project income under this Note shall be payable only from permissible distributions from (omit "permissible distributions from" if a profit-motivated mortgagor) surplus cash of the said project, as that term is defined in the Regulatory Agreement dated ________________ between the Secretary of Housing and Urban Development and

(insert name of mortgagor-seller). The restriction on payment imposed by this





paragraph shall not excuse any default caused by the failure of the maker to pay the indebtedness evidenced by this Note. Holder has no claim, and will not later assert any claim for payment against the mortgaged property, the mortgage proceeds, any reserve or deposit made with the mortgagee or another required by the Secretary in connection with the mortgage transaction, or against the rents or other income from the mortgaged property.

3. Wrap-Around Note Secured by a Lien Against The Project: As long as the Secretary of Housing and Urban Development, or his successor or assigns, is the insurer or holder of the mortgage on (insert project name and FHA Project No), any payments under this Wrap-Around Note will be made in the following manner. First, the maker of this Note (insert name of buyer) will segregate all project income as required under the Regulatory Agreement dated ________________ between the Secretary of Housing and Urban Development and (insert name of mortgagor-seller). Second, the maker of this Note will deliver to the holder of this Note all sums due or currently required to be paid under the terms of any mortgage or note insured or held by the Secretary of Housing and Urban Development and all amounts required to be deposited in the Reserve Fund for Replacements. Holder, in turn, will apply these funds as required under the aforesaid first mortgage and Regulatory Agreement. Third, in the event of surplus cash as that term is defined in the aforesaid Regulatory Agreement, the maker will deliver to the holder of this Note permissible distributions from (omit "Permissible distributions from" if a profit-motivated mortgagor) surplus cash to the extent available to satisfy any current or deferred amounts to be paid under this Note. The restriction on payment imposed by this paragraph shall not excuse any default caused by the failure of the maker to pay the

indebtedness evidenced by this Note.

4. Wrap-Around Note Not Secured by a Lien Against the Project. As long as the





Secretary of Housing and Urban Development, or his successor or assigns, is the insurer or holder of the mortgage on (insert project name and FHA Project No.), any payments under this Wrap-Around Note will be made in the following manner. First, the maker of this Note (insert name of buyer) will segregate all project income as required under the Regulatory Agreement dated ________________ between the secretary of Housing and Urban Development and (insert name of mortgagor-seller). Second, the maker of this Note will deliver to the holder of this Note all sums due or currently required to be paid under the terms of any mortgage or note insured or held by the Secretary of Housing and Urban Development and all amounts required to be deposited in the Reserve Fund for Replacements. Holder, in turn, will apply these funds as required under the aforesaid first mortgage and Regulatory Agreement. Third, in the event of surplus cash as that term is defined in the aforesaid Regulatory Agreement, the maker will deliver to the holder of this Note permissible distributions from (omit "permissible distributions from" if a profit-motivated mortgagor) surplus cash, to the extent available to satisfy any current or deferred amounts to be paid under this Note. The restriction on payment imposed by this paragraph shall not excuse any default caused by the failure of the maker to pay the indebtedness evidenced by this Note. Holder has no claim for payment and will not later assert any claim against the mortgaged property, the mortgage proceeds, any reserve or deposits made with the mortgagee or another requited by the Secretary in connection with mortgage transactions, or against the rents or other income from the mortgaged property.

G. Secondary Financing Secured by Assets of the Acquiring Partnership. Proposals involving secondary financing

secured by pledges of the assets of the acquiring partnership should include the following language in the partnership's organizational documents:

1. If the partnership will assume the HUD note and mortgage:





The partnership is bound, to the same extent as the original executing party, by the mortgage note, mortgage, Regulatory Agreement and other documents that have been executed in connection with the HUD insured mortgage loan affecting the partnership property. Upon any dissolution, no title or right to possession and control of the partnership property financed under such HUD-insured mortgage loan, and no right to collect the rents therefrom, shall pass to any person who is not so bound in a manner satisfactory to the Secretary of Housing and Urban Development.

2. If the partnership will not assume the HUD note and Mortgage:

The Partnership, and any incoming General Partners or Limited Partners, shall, as a condition of receiving an interest in the Partnership or its property, agree to be bound to the same extent as the original executing party (except as to obligations for payments) by the terms of the HUD mortgage and Regulatory Agreement and any other documents that have been executed in connection with the HUD-insured mortgage loan on the project. Upon any dissolution, no title or right to possession and control of the partnership property financed under such HUD-insured mortgage loan, and no right to collect the rents therefrom, shall pass to any person who is not bound in a manner satisfactory to the Secretary of Housing and Urban Development.

3. The organizational documents of the partnership should provide for HUD approval of an amendment thereto:

As long as the Secretary of Housing and Urban Development, or his successors or assigns, is the insurer or holder of the mortgage on (insert project name and FHA Project No.), no amendment to this (name of the document) which





results in any of the following shall be of force or effect without the prior written consent of HUD: (1) any amendment which modifies the duration of the (partnership agreement) (corporate charter); (2) any amendment which results in the requirement that a HUD prior participation certification be obtained for any additional party; and (3) any amendment which in any way impacts or affects the HUD mortgage or Regulatory Agreement.

H. Acquisition by Deed-in-Lieu of Foreclosure. In the event the Secretary acquires title by deed-in-lieu of foreclosure, the second lien created by a second or wrap-around mortgage will terminate. The following language must be included in the second or wrap-around mortgage:

"In the event the Secretary acquires title to the project by a deed-in-lieu of foreclosure, the lien of the second wrap-around mortgage will automatically terminate subject to the conditions hereinafter described. The holder of the second wrap-around mortgage may cure a default under the first mortgage prior to a conveyance by deed-in-lieu of foreclosure. The Secretary shall give written notice to the holder of the second wrap-around mortgage of a proposed tender of title in the event (1) the Secretary decides to accept a deed-in-lieu of foreclosure or (2) the Secretary receives notice from the holder of the HUD-insured mortgage of its election to accept a deed-in-lieu of foreclosure. The Secretary will give such written notice if, at the time of the placing of the subordinate lien against the project, the Secretary receives a copy of an endorsement to the title policy of the mortgagor or holder of the HUD mortgage which indicates

that (1) the second wrap-around mortgage has been recorded; and (2) the Secretary is required to give notice of any proposed election to or tender of a deed-in-lieu of foreclosure. Such notice shall be given at the address stated herein or such other address as may subsequently, upon written notice to the Secretary, be designated by the holder of the second





wrap-around mortgage as its legal business address. The second mortgage holder shall have thirty (30) days to cure the default after the notice of intent to accept a deed-in-lieu of foreclosure is mailed."

I. Secondary Financing with Balloon Payments Provisions In all TPA's, field counsel may approve unsecured notes evidencing secondary financing which contain balloon payment provisions. This policy is limited by the following: (1) The balloon second note shall not result in the creation of an earlier maturity date for the HUD note and mortgage. (Under the National Housing Act, an insured multifamily mortgage must provide for full amortization. See e.g., 12 U.S.C. 1713(c)(3). Thus, a balloon mortgage which wrapped an existing HUD-insured mortgage and which became due prior to prepayment or maturity of the HUD mortgage or the termination of mortgage insurance would not be permissible because it would have the effect of decreasing the term of the HUD mortgage. Under Section 446 of of the Housing and Urban-Rural Recovery Act of 1983 (HURRA), however, the National Housing Act was amended to authorize the Secretary to insure mortgages that do not provide for full amortization. Regulations implementing this statutory provision presently are being drafted by the Office of Regulations for publication in 24 C.F.R. Parts 207,220 and 231. Until the "Insurance of Partially Amortizing Mortgages and Mortgages with Call Provisions" regulations become effective, however, the Department will continue to implement its present policy.) (2) The balloon payment second note shall not create an equitable lien against the project which could result in the mortgagee's assignment of the mortgage. Field Counsel shall review the default remedies of the note to determine if such equitable lien is created under state law and shall advise the purchaser to obtain the mortgagee's consent if necessary. THIS IS OF UTMOST IMPORTANCE. If field counsel cannot ascertain that a lien is not created, this office should be contacted immediately. (3) The standard language that the

Department utilizes in protecting its interest when approving secondary financing in connection with a transfer of physical assets must be used. (See Section II. F. supra).

J. Conflict with Mortgage and Regulatory Agreement. The proposed documents must not conflict with the HUD-held or HUD insured first mortgage or the Regulatory Agreement.

K. Requirements for Sales Involving Land Contracts. Proposals involving a Land Contract (i.e., Installment Sale Contract or Contract for Deed) must comply with the following requirements:





1. The insured mortgagee must consent in writing.

2. The purchaser must sign a new Regulatory Agreement.

3. The seller must remain on the existing Regulatory Agreement and agree to be bound by the new Regulatory Agreement to the extent it differs from the existing Regulatory Agreement.

4. The Land Contract must be subordinate to the mortgage. The following language must be included in the Land Contract:

> Buyer and Mortgagor-Seller agree that the land contract is subordinate to the HUD-held or HUD-insured mortgage.

5. The seller must agree not to attach project income for failure of the purchaser to make payments under the contract. The following language must be included in the Land Contract:

> Mortgagor-Seller agrees not to file a lien against the project income for the failure of Buyer to make the required payments under the land contract.

6. The mortgagor-seller must remain bound to its obligations under the mortgage, mortgage note, and Regulatory Agreement until such time as there is a release executed, as well as an assumption of these obligations by the purchaser, with the necessary acquiescence of all principals. The following language must be included in the Land Contract:

Buyer and Mortgagor-Seller agree that in the event of a monetary default by Mortgagor-Seller under the HUD-held or HUD-insured mortgage, Buyer may cure such default and elect to take title to the project. In the event of such an election by Buyer , Mortgagor-Seller will execute a release and deed to the project and Buyer will concurrently execute an assumption of the HUD mortgage, note, and the Regulatory Agreement.





7. The Land Contract must clearly reflect that the mortgagor's obligation to continue making payments on the underlying mortgage is not contingent on the receipt of the installment payments from the purchaser under the Land Contract. The following language must be included in the Land Contract:

   The obligation of Mortgagor-Seller to continue to make payments and comply with all covenants under the HUD-held or HUD-insured mortgage is not contingent on the receipt of the installment payments from Buyer under this land contract.

8. The Land Contract along with the new Regulatory Agreement must be recorded. (Any alternative arrangement must be approved by HUD.)

9. The Land Contract must contain a provision that forbids the purchaser's assigning, mortgaging, or in any other way encumbering its interest without the prior written approval of the Secretary. The following language must be included in the Land Contract:

   Buyer must not assign, mortgage, or in any way encumber its interest without the prior written approval of the Secretary of Housing and Urban Development.

10. There must be a provision in the Land Contract that obligates the purchaser to operate and maintain the transferred property in accordance with the Department's regulations and procedures while the property remains subject to a HUD-held or HUD-insured mortgage. The following language must be included in

the Land Contract:

> Buyer and Mortgagor-Seller agree that the project will be operated strictly in accordance with the Regulatory Agreement, the HUD-held or HUD-insured mortgage, the National Housing Act, and the regulations promulgated thereunder while HUD is the insurer or holder of the mortgage. In the event of any conflict between the land contract and the HUD-insured mortgage documents and HUD regulations, such HUD documents and regulations





> shall control as long as HUD holds the mortgage or as long as the HUD contract of mortgage insurance remains in effect.

11. There must be a provision in the contract whereby the parties agree to inform the Secretary in advance of any action they propose to take against the property; of any adverse action taken by any party of which they have knowledge; or of any other event that affects the property or that may affect the Secretary's interest therein. The following language must be included in the Land Contract:

> Buyer and Mortgagor-Seller agree to inform the Secretary in advance of any action they propose to take against the property, or of any adverse action of which they have knowledge taken by any party, or of a default, or of any other event that affects the property or that may affect the Secretary's interest therein.

12. The following payment provision must be included in the Land Contract:

> While the Secretary of Housing and Urban Development, or his successor or assigns, is the insurer or holder of the first mortgage on (insert project name and FHA Project No.) payments under this land contract will be made in the following manner. First, Buyer will segregate all project income as required under the Regulatory Agreement dated______________________

between the Secretary of Housing and Urban Development and Mortgagor-Seller. Second, Buyer will deliver to Mortgagor-Seller all the sums due or currently required to be paid under the terms of any mortgage or note insured or held by the Secretary of Housing and Urban Development and all amounts required to be deposited in the Reserve Fund for Replacements. Mortgagor-Seller, in turn, will apply these funds as required under the aforesaid first mortgage and Regulatory Agreement. Third, in the event of surplus cash, as that term is defined





in the aforesaid Regulatory Agreement, Buyer will deliver to the Mortgagor-Seller permissible distributions (omit "permissible distributions from" with profit-motivated mortgagor) from surplus cash to the extent available to satisfy any current or deferred amounts to be paid under this land contract.

## III. OTHER LEGAL ISSUES RELATING TO TRANSFER OF PHYSICAL ASSETS

The following issues frequently arise in connection with an application for approval of a transfer of physical assets:

A. Conversion from Non-Profits to Profit-Motivated Ownership. Many proposed transfers involve the transfer of ownership from non-profit owners to such profit-motivated owners as limited dividend mortgagors. A common arrangement, which is acceptable to the Department, involves the non-profit mortgagor retaining an ownership interest in the project as a managing general partner in the partnership purchasing the project.

The review of non-profit to profit-motivated transfers will involve the application of 24 C.F.R. Part 265 if the project is assisted under Sections 236 or 221(d) (3) of the National Housing Act, Section 101 of the Housing and Urban Development Act of 1965, or Section 8 of the United States Housing Act of 1937. See 24 C.F.R. 265.2 (1982). If 24 C.F.R. Part 265 is applicable, it is our understanding that Housing will consider waiving the current 24 C.F.R. 265.13 prohibition against remuneration to the non-profit seller. For example, Housing has allowed remuneration in the form of secondary financing to the non-profit owner provided that a trust agreement in a form

acceptable to the Department is used. Inasmuch as a waiver of the Part 265 regulations requires an administrative determination of acceptability from Central Office, field counsel should advise that any recommendation with respect to a requested regulatory waiver should be thoroughly documented in writing.

B. Cooperative Conversion. Present HUD administrative procedure requires Central Office approval of all projects converting to ownership by a cooperative corporation. Such TPA's are approved on a project-by-project basis. HUD does not consider a TPA to a cooperative mortgagor as a "change of use," as that term is used in the HUD form mortgage or deed of trust. Therefore, mortgagee approval for cooperative conversions is not a prerequisite to TPA approval by HUD. However, this issue is currently being litigated. (Note, however, that on October 26, 1984 the



---



United States District Court in Massachusetts granted summary judgment in favor of HUD in Boston Five Cents Savings Bank v. Samuel J. Pierce, Jr. et al. and agreed with HUD's defense on several issues including that a change in the form of ownership of a project is not a "change in use." We do not now know whether or not an appeal will be taken. In the event that the Department's policy regarding cooperative conversions is changed, we will notify field counsel immediately.) In view of this litigation, in cases where mortgagee consent to the TPA is not obtained, HUD requires a letter of credit under an indemnification agreement in a form acceptable to HUD to protect HUD from any loss because of its approval of this conversion. A copy of the current approved form of indemnification agreement is available from this Division. This Division's review of cooperative conversion TPA's is limited to review of the indemnification agreement and to review of any unusual legal issues which are raised in field counsel review.

Central Office administrative policy also requires review of cooperative projects which are converting to rentals. Such TPA applications should be forwarded to Central Office for approval. The TPA package must include a substantive legal review by field counsel.

Some field offices are approving rental conversions where the project will continue to operate as a cooperative and the tenants will be required to execute occupancy agreements and become Members of the cooperative. Such "rental/cooperative" conversions require written administrative approval from the Office of Multifamily Housing Management. Field counsel review of

such "hybrid" conversions should also include an opinion concerning whether such an arrangement is permissible under state law. Additionally, field counsel should analyze the flow of project funds under such a hybrid conversion.

C. Assignment or Transfer of Subsidy Contracts. Certain legal problems are presented by assignments of rent supplement or rental assistance payments (RAP) contracts to purchasers that do not assume the HUD mortgage and take the property under a deed conveyance. The "project owner" of a project with a RAP subsidy and a "housing owner" of a project with rent supplement subsidy are the mortgagors of the project for purposes of eligibility for such subsidies. Therefore, "subject to" TPA's and TPA's involving land contracts can not include an assignment of the rent supplement contract or RAP contract because the new owners are not mortgagors and consequently, are not eligible to execute or assume rent supplement or RAP





contracts. Field counsel should contact this Division in order to resolve legal issues raised by the assignment of such subsidy contracts.

In "subject to" TPA's or TPA's involving land contracts, it is legally permissible for the mortgagor-seller of a rent supplement or RAP project to designate a financial institution as trustee and the mortgagor's agent for receipt of such subsidy payments. The trustee would then credit such payments to the account of the buyer. Any questions concerning the form of the trustee agreement should be referred to this Division.

Unlike the rent supplement and RAP contracts, a Section 8 housing assistance payments contract may be legally transferred from the original owner to a buyer even though the buyer has taken the project subject to, rather than assuming, the HUD mortgage. However, if the housing assistance payments contract was assigned to the mortgagee to secure the financing, the consent of the mortgagee to the transfer must be obtained.

Field Counsel also should review the transfer to assure that all rights and obligations under the housing assistance payments contract have been effectively transferred to the buyer and that all requirements of state and local law have been met. (Questions arising in connection with the transfer of the housing assistance payments contract to a buyer should be addressed to the Assistant General Counsel for Assisted Housing.)

situations, however, more than one transfer fee may be in order. For example, we have recently analyzed several proposals involving corporate mergers and acquisitions (between parents and subsidiaries) prior to the transfer to the purchaser. Because two transfers of title by deed are involved, two fees are required. However, the two transactions can be combined in one application with minimal review required of the first (2530 clearance, for example) in order to expedite the HUD review process. This same rationale is also applicable to any other interim "status" transfers by deed. To expedite the review of particularly complex multiple transfers, field counsel should contact this Division with questions. In particular, questions often arise with respect to the amount of time between transfers.

G. Unauthorized Transfers. In the past, several projects have been transferred without HUD approval. An unauthorized transfer of physical assets violates Section 6(a) of the Regulatory Agreement, which provides that " o wners shall not without the prior written approval of the Commissioner ... c onvey, transfer or encumber any of the mortgaged property, or permit the conveyance, transfer or encumbrance of such property.. ." This broad prohibition includes the transfer of the beneficial or





equitable interest in the project to the buyer prior to HUD approval except in a transfer in escrow. If field counsel learn of any unauthorized transfer of physical assets, the Office of Multifamily Housing Management should be advised. This office will then make a determination whether to approve such transfer. Furthermore, field offices must follow the procedures for dealing with unauthorized TPA's set forth in the May 4, 1983 joint memorandum "Enforcement Remedies for Unauthorized Transfers of Physical Assets" by the Associate General Counsel for Program Enforcement, John P. Kennedy, and by then-Deputy Assistant Secretary for Multifamily Housing Programs, Maurice L. Barksdale. All unauthorized TPA's which are submitted to Central Office must include the results of a substantive review by field counsel, as well as the results of field counsel review for compliance with the joint memorandum on unauthorized TPA's.

For all TPA's other than transfers in escrow and to preclude the mortgagor-seller from transferring beneficial interest in future cases, the Department will require the following language to be included in the sales agreement establishing the terms and conditions of the proposed transfer:

"This (describe document) is expressly conditioned upon preliminary approval by HUD of the transaction as set forth in Form HUD 92266, Application for Transfer of Physical Assets, and supporting documents submitted to HUD. No transfer of any interest in the project under this sale agreement shall be effective prior to such HUD approval. Buyer will not take possession of the project nor assume benefits of project ownership prior to such approval by HUD. The Buyer, his heirs, executors, administrators or assigns, shall have no right upon any breach by Seller hereunder to seek damages, directly or indirectly, from the FHA Project which is the subject of this transaction, including from any assets, rents, issues or profits thereof, and Buyer shall have no right to effect a lien upon this project or the assets, rents, issues, or profits thereof."

If the transfer is by means of a land contract, the following sentence should be added to the above





language: "Buyer will not take possession or control of the project prior to approval by HUD."

H. Workout Agreements. In general, the terms and conditions of a workout agreement with the new buyer must be established prior to submission of the transfer package. All transfer documents must be consistent with the workout agreement executed by HUD.

I. Prepayment Restrictions on Multifamily Rental Housing. In the event that a transfer involves the prepayment of the underlying HUD-insured or HUD-held mortgage subsequent to the time of the transfer, field counsel should contact this Division immediately for advice.

If you have any questions regarding this memorandum, please contact Gains Hopkins, Chief Attorney, Financing, Origination and Development Unit, at FTS 755-7090, Roberta Beary, at FTS 755-6975, Michael Bylsma or Millicent Potts of his staff at FTS 755-7067.