# MANAGEMENT SERVICES AGREEMENT

BETWEEN

ASLC MANAGEMENT of RI I, LLC

AND

THE COURT-APPOINTED RECEIVER FOR MT. ST. FRANCIS ASSOCIATES, L.P.

DATED AS OF JUNE 21, 2006

rue Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

GOVERNMENT EXHIBIT
8

# TABLES OF CONTENTS


| | |
|---|---|
| ARTICLE I | RETENTION OF MANAGER .................... |
| ARTICLE II | TERM .................... |
| ARTICLE III | RIGHTS AND DUTIES OF MANAGER .................... |
| ARTICLE IV | RIGHTS AND DUTIES OF RECEIVER .................... |
| ARTICLE V | COMPENSATION AND DISTRIBUTIONS .................... |
| ARTICLE VI | TERMINATION RIGHTS .................... |
| ARTICLE VII | INDEMNIFICATION; EXPENDITURE LIMITATION .................... |
| ARTICLE VIII | CONFIDENTIALITY; NON-SOLICITATION .................... |
| ARTICLE IX | REPRESENTATIONS AND WARRANTIES .................... |
| ARTICLE X | SUCCESSORS AND ASSIGNS .................... |
| ARTICLE XI | MISCELLANEOUS PROVISIONS .................... |


rue Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

# MANAGEMENT SERVICES AGREEMENT

THIS MANAGEMENT SERVICES AGREEMENT (this "Agreement") is made and entered into as of June 21, 2006, between ASLC Management of RI I, LLC ("Manager") and Joseph P. Ferrucci as Court-appointed Receiver, and only as Receiver of Mt. St. Francis Associates, L.P. (the "Receiver").

## Introductory Statement

The Receiver has been appointed by the Rhode Island Superior Court, inter alia, to operate the Mt. St. Francis Health Center in Woonsocket, Rhode Island (the "Facility"), and in connection therewith desires to engage Manager to manage the Facility on behalf of the Receiver.

Receiver and Manager are entering into this Agreement to set forth the general terms by which the Facility will be managed by Manager.

NOW, THEREFORE, in consideration of the promises and covenants herein contained and intending to be legally bound hereby, the parties agree as follows:

## ARTICLE I

## RETENTION OF MANAGER

1.1 Retention. For and during the Term (as defined in Article II hereof) of this Agreement, Receiver hereby grants to Manager the sole and exclusive right, and employs Manager, to supervise, manage, and operate the Facility in the name and for the account of Receiver, upon the terms and conditions herein set forth; provided, however, that throughout the Term of this Agreement, Receiver or its authorized representative(s) may exercise any duties or responsibilities delegated to Manager in the event Receiver deems such action to be reasonably desirable or necessary.

1.2 Acceptance. Manager accepts such appointment and agrees that it will (a) perform its duties and responsibilities hereunder in accordance with this Agreement, (b) use commercially reasonable efforts to supervise and direct the management and operation of the Facility in an efficient and cost effective manner and comply, in all material respects, with all applicable court orders, statutes, ordinances, rules and regulations established by any court or governmental authority having jurisdiction over the Facility (the "Laws"); and (c) consult with Receiver and keep Receiver advised of all major policy matters relating to the Facility, and all other matters into which the Receiver inquires from time to time. Subject to the foregoing and to the other provisions of this Agreement, including Section 1.1 hereof, Manager, without the approval of Receiver (unless such approval is herein specifically required as to policies

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island.

and manner of operation), shall have, consistent with the Laws, the control and sole discretion with regard to the operation and management of the Facility for all customary purposes (including the exercise of its rights and performance of its duties provided for in Article III hereof), and the right to determine all policies affecting the appearance, maintenance, standards of operation, quality of service, and any other matter affecting the Facility or the operation thereof.

1.3 Receivership. Receiver shall be the holder of the respective licenses, permits and contracts pertaining to the Facility (subject to Section 3.7 hereof), and shall be the "providers" within the meaning of all third-party contracts for the Facility. Specifically, and without limitation, Receiver shall hold the Medicare provider numbers, (b) the Medicare provider agreements with the Centers for Medicare and Medicaid Services (CMS) and (c) the Medicare certifications.

ARTICLE II

TERM

The term (the "Term") of this Agreement begins on the date hereof (the "Commencement Date") and shall continue for a minimum of six months (until December ____, 2006)(the "Termination Date") until terminated as provided for in Article VI hereof.

ARTICLE III

RIGHTS AND DUTIES OF MANAGER

During the Term of this Agreement, and in the course of its management and operation of the Facility and in consultation with Receiver if so requested by Receiver:

3.1 Employees. Manager shall hire, promote, discharge, and supervise the work of the Facility's Administrator, Assistant Administrator, Department Heads, and all operating and service employees performing services in and about the Facility. All of such employees shall be employees of Receiver and the aggregate compensation, including fringe benefits, with respect to such employees shall be charged to Receiver as an expense of the operation of the Facility. The term "fringe benefits" as used herein shall include, but not be limited to, the employer's contribution of FICA, unemployment compensation, and other employment taxes, retirement plan contributions, workman's compensation, group life, accident, and health insurance premium, profit sharing contributions, disability, and other similar benefits paid or payable by Manager for the employees of the Facility. All such employees shall be covered by appropriate malpractice and/or errors and omissions insurance as approved by Manager and Receiver. The cost of same shall be charged to Receiver as an expense of the operation of the Facility. Manager shall be responsible, also, for

True Copy Attest
Office of Clerk Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

coordinating health insurance coverages (including COBRA matters) for the employees of the Facility.

Notwithstanding anything to the contrary hereinabove, Manager has the right to remove or discharge any of the employees of the Facility, including the Facility's Administrator, Assistant Administrator and Department Heads, and shall provide the Receiver with notice thereof.

3.2 Labor Contracts. Manager, if requested by Receiver, will negotiate on Receiver's behalf and at Receiver's expense, consistent with industry standards, with any labor union lawfully entitled to represent the employees at the Facility, but any collective bargaining agreement or labor contract resulting therefrom must first be approved by Receiver who shall be the only person(s) authorized to execute the same. Receiver agrees that all fees and costs of outside professionals in conducting and concluding such negotiations shall be paid by Receiver out of Facility Funds (defined herein).

3.3 Concessionaires, Etc. Manager shall negotiate and consummate in the name at the expense of Receiver, consistent with industry standards, contracts or arrangements with concessionaires, licensees, tenants, and other intended users of the Facility. Any fees and expenses incurred in connection therewith shall be charged to Receiver as an expense of the operation of the Facility, provided, however, that any contract or arrangement requiring an expenditure in excess of Twenty-Five Thousand Dollars ($25,000.00) in any one (1) year, or which is for a term in excess of one (1) year and is not terminable upon thirty (30) days notice, shall be subject to the review and written approval of Receiver.

3.4 Ancillary Services, Utilities, Etc. Manager shall enter into such contracts in the name of and at the expense of Receiver as may be deemed necessary or advisable for the furnishing of all ancillary services, utilities, concessions, supplies and other services as may be needed from time to time for the maintenance and operation of the Facility, provided, however, that any contract or arrangement requiring an expenditure in excess of Twenty-Five Thousand Dollars ($25,000.00) in any one (1) year, or which is for a term in excess of one (1) year and is not terminable upon thirty (30) days notice, shall be subject to the review and written approval of Receiver.

3.5 Purchases. Manager shall supervise the purchasing by Facility staff of food, beverages, operating supplies, and other materials and supplies, in the name of and for the account and at the expense of Receiver, as may be needed from time to time for the maintenance and operation of the Facility. The Receiver shall have the right from time to time to review such purchases with Manager and to provide input with respect thereto.

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

3.6 Repairs. Subject to the Receiver's approval, Manager shall make or install or cause to be installed at Receiver's expense and in the name of Receiver any repairs, replacements, additions, and improvements in and to the Facility and the furnishings and equipment in order to keep and maintain the same in good repair, working order and condition, and outfitted and equipped for the proper operation thereof in accordance with (a) industry standards comparable to those prevailing in other similar facilities, and (b) all applicable state or local rules, regulations, or ordinances, provided, however, that any repairs, replacements, additions, and improvements that would constitute a "capital improvement" under Generally Accepted Accounting Principles, consistently applied and industry standards, shall be subject to prior review and approval by Receiver. Manager shall obtain waivers or releases of mechanics liens from any and all contractors, subcontractors and material suppliers performing any work on the Facility.

3.7 Licenses and Permits. Manager shall apply for and use commercially reasonable efforts to obtain and maintain in the name and at the expense of Receiver, all licenses and permits required in connection with the management and operation of the Facility. Receiver agrees to cooperate with Manager in applying for, obtaining, and maintaining such licenses and permits.

3.8 Governmental Regulation.

(a) Manager shall take such action as shall be reasonably necessary to insure that the Facility and the management thereof by Manager comply with all federal, state and local laws, regulations and ordinances applicable to the Facility or the management thereof by Manager, including the particular laws and regulations applicable to health care facilities.

(b) Manager shall promptly provide to Receiver as and when received by Manager, all notices, reports or correspondence from governmental agencies that assert deficiencies or charges against the Facility or that otherwise relate to the suspension, revocation, or any other action adverse to any approval, authorization, certificate, determination, license or permit required or necessary to own or operate the Facility. Subject to Receiver's prior written approval, Manager may appeal any action taken by any governmental agency against the Facility; provide, however, that Receiver shall adequately secure and protect Manager from loss, cost, damage or expense by bond or other means reasonably satisfactory to Manager in order to contest by proper legal proceedings the validity of any such statute, ordinance law, regulation or order, provided that such contest shall not result in the suspension of operations of the Facility; and, provided, further, that Receiver shall have no obligation to secure and protect Manager from any loss, cost, damage or expense that arises directly out of Manager's breach of any of its covenants, duties or obligations under this Agreement.

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

3.9 Taxes. Manager shall cause all taxes, assessments, and charges of every kind imposed upon the Facility by any governmental authority, including interest and penalties thereon (collectively, "Taxes"), to be paid when due from Facility Funds (as defined in Section 3.18 below). Manager shall not cause such Taxes to be paid if (a) such Taxes are in good faith being contested by Receiver at its sole expense and without cost to Manager, (b) enforcement for non payment of such Taxes is stayed, and (c) Receiver shall have given Manager written notice of such contest and stay and authorized the non-payment thereof, not less than ten (10) days prior to the date on which such Taxes are due and payable. Interest or penalty payments shall be reimbursed by Manager to Receiver if imposed upon Receiver by reason of the gross negligence on the part of Manager in making the payment for Taxes if funds are available therefor. Manager shall notify Receiver of all Taxes assessed against the Facility to Manager's knowledge, other than in the normal course of business.

3.10 Insurance. Manager shall apply for, obtain and maintain on behalf of Receiver, all insurance (a) necessary or required for the operation of the Facility and (b) consistent with Receiver's obligations under any agreements with holders of secured debt on the Facility. The cost of such insurance shall be charged to Receiver as an expense of the operation of the Facility and shall be paid by Receiver out of Facility Funds. Manager shall provide Receiver with Certificates of Insurance evidencing such insurance. All insurance obtained by Manager shall be effected by policies issued by insurance companies of good reputation and of sound and adequate financial responsibility. All liability insurance policies shall be carried in the name of Receiver and Manager and any losses payable under such policies shall payable to Receiver and Manager as their respective interests shall appear. The record Receiver of the Facility and any lender of secured debt on the Facility shall be named as mortgagee and, along with Receiver and Manager, additional insured (as appropriate) on the property insurance and the comprehensive general liability insurance policies. Manager shall not be liable to Receiver or any other person if it fails to obtain and/or maintain any such insurance policies if the failure is not due to Manager's negligence (e.g., it is a result of Receiver's failure to make monies available to Manager to pay the premiums on any such insurance policies).

Unless otherwise set forth herein to the contrary, Receiver and Manager each hereby waive any right of recovery against the other party for any claims that may be brought for any loss which is covered by fire and extended coverage insurance upon or relating to the Facility and the furnishings and equipment thereon. This waiver of subrogation shall be valid and binding only in the event it is recognized and accepted by the fire and hazard insurance companies issuing policies required hereunder. Each party further agrees that its sole source of reimbursement of loss or damage shall be the insurance proceeds of the policies to be provided hereunder and that the other party shall not be liable for any damage or loss in excess of such insurance coverage. Nothing contained herein shall be deemed by either party to be a release, relinquishment and/or

forfeiture of subrogation rights, if any, exercisable by any insurance carriers under the terms and conditions of insurance policies applicable to the matters contained in this paragraph.

Subject to the provisions of this Section 3.10, Manager shall secure certificates of such insurance for the Facility, shall maintain the original of all such policies at the office of the Manager, if requested, shall deliver copies of such original policies to Receiver. Manager shall provide prompt written notice to Receiver of any modification, termination or cancellation of any insurance policy for the Facility.

Subject to the prior review and written approval of Receiver, any insurance of the character described in the foregoing provisions of this Section 3.10 may be effected by Manager through policies of blanket insurance or through self-insurance programs which may cover other properties or locations of Manager and its subsidiaries or affiliates, the premium or other cost for which will be prorated among the various properties, including the Facility covered by said policies and such allocated portion of said premium cost shall be borne by Receiver.

3.11 Legal Actions. Manager shall promptly notify Receiver of all threatened or pending legal actions to which Manager has knowledge. Subject to Receiver's prior written approval, Manager shall institute, in Receiver's name and at Receiver's expense, any and all legal actions or proceedings to collect charges, rent, or other sums due the Facility or to lawfully oust or dispossess tenants or other persons in possession under, or lawfully cancel, modify, or terminate any lease, license, or concession agreement for the breach thereof or default thereunder by the tenant, licensee, or concessionaire. Additionally, subject to Receiver's prior written approval (not to be unreasonably withheld), Manager may take, at Receiver's expense, appropriate steps to protect and/or litigate to final judgment in any appropriate court any violation or order affecting the Facility.

3.12 Management Services. Without limitation, Manager shall provide the Facility with all of the customary management services and techniques which it employs in operating other healthcare facilities which it manages and consistent with industry practices which may be applicable to and beneficial to the Facility.

3.13 Statements. Manager shall prepare or cause to be prepared the following statements:

(a) A monthly balance sheet, income statement and statement of cash flows for the operations of the Facility, in a form reasonably acceptable to Receiver, to be delivered to Receiver not later than thirty (30) days after the end of each month.

A True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol

(b) Annual compiled or reviewed financial statements for the Facility prepared by a firm of independent public accountants reasonably acceptable to Receiver, to be delivered to Receiver not later than one hundred twenty (120) days after the end of the fiscal year for the Facility.

(c) Manager shall select accountants reasonably acceptable to Receiver for the preparation of all federal and state tax returns for the Facility if and to the extent the same may be required to be filed during the Term of this Agreement, and the costs of preparation of all such returns shall be charged to Receiver as an expense of the operation of the Facility and shall be paid by Receiver out of Facility Funds. If reasonably requested by Receiver, Manager shall prepare any reports that may be required to be made during the Term of this Agreement, or otherwise relating to Manager's operation of the Facility pursuant to this Agreement, under Medicaid or Medicare or by the state in which the Facility is located, with any necessary and reasonable expenses for assistance from outside data processing, tax and cost report consultants being charged to Receiver as an expense of the operation of the Facility and shall be paid by Receiver out of Facility Funds.

(d) Manager shall deliver to Receiver on a monthly basis within thirty (30) days after the end of each month of the following reports:

(i) a detailed statement of income and expenses which include the average daily census and patient mix of the Facility;

(ii) aged accounts receivable report for the Facility subdivided into thirty (30), sixty (60) and ninety (90) day periods and by payor source;

(iii) a written calculation of the Base Management Fee for such month; and

(iv) any other reports customarily prepared by Manager in connection with the operation of its health care facility.

e Copy Attest
ice of Clerk of Superior Court
unties of Providence & Bristol
ovidence, Rhode Island

(e) Any statements or reports reasonably requested by Receiver that in turn are requested by landlords to the Facility or the holders of secured debt on the Facility.

(f) Manager shall deliver to Receiver within ten (10) days of filing thereof a copy of each Medicaid or Medicare cost report, amended costs report and all supplemental materials filed with a governmental agency in respect of the Facility.

(g) Manager shall promptly deliver to Receiver written notice of any material action, proposal or investigation by any agency or entity, or complaint to such

agency or entity, known to Manager, the result of which would reasonably be expected to (i) create a material adverse effect on Receiver and/or the Facility, or (ii) modify in a way materially adverse to Manager or Receiver or revoke or suspend or terminate, or fail to renew or fully continue in effect, any Medicare and/or Medicaid certification, license or certificate or operating authority pursuant to which Manager or Receiver operates the Facility, or (iii) suspend, terminate, materially adversely modify, or fail to renew or fully continue in effect any cost reimbursement or cost sharing program by any state or federal governmental agency, including, but not limited to, Medicaid or Medicare or any successor or substitute therefor, or seek return of or reimbursement for any funds previously advanced or paid pursuant to any such program, or (iv) impose any bed hold, limitation on resident admission, denial of payment for new admissions or similar restriction on the Facility, or (v) prosecute any party with respect to the operation of any activity on the Facility or enjoin any party or seek any civil or criminal penalty in respect thereof.

(h) As soon as available but in any event within thirty (30) days after the Commencement Date,, Manager shall prepare and deliver to Receiver an itemized budget for the Facility for the ninety (90)-day period following, to be updated monthly thereafter for rolling ninety (90)-day periods, which budgets shall be subject to the written approval of Receiver, which consent shall not be unreasonably withheld. The itemized budget shall cover all projected revenues and expenses of the Facility for the applicable budget period. Once Receiver has approved the proposed budget in writing (the "Approved Budget"), then Manager shall be entitled to incur all expenses and liabilities described in this Agreement in substantial compliance with the Approved Budget. Except under exigent circumstances, Manager shall not, without the prior written consent of Receiver, incur any expenses or liability on behalf of Manager, the Facility or Receiver in material deviation from the Approved Budget. Manager shall be available to meet with Receiver at Manager's offices on a regular basis to review the Approved Budget relative to actual results of operations of the Facility. If in the reasonable opinion of Receiver Manager has not achieved or under the circumstances it appears the Manger will not achieve substantial compliance with a budget or budgets, or in the event that it appears the Facility cannot be operated on a positive cash flow basis, or Receiver's accountant advises that the cash flow of the Facility is such that continuing business operations is not financially responsible, Receiver shall have the right upon appropriate motion to the appointing court to seek instructions as to, among other things, modification or termination of this Agreement.

3.14 Books and Records. Manager on behalf of Receiver shall supervise and direct the keeping of full and accurate books of account and such other records reflecting the results of operation of the Facility as required by law. All such books and records shall be the property of Receiver.

A Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

3.15 Payment of Expenses. All expenditures of every kind by Manager authorized or required under this Agreement are for Receiver's account ("Receiver Expenditures"), except for Manager's Staff Services (described below). Receiver will review and authorize payment of all Receiver Expenditures from Facility Funds. Receiver shall pay directly (or reimburse Manager promptly if Manager advances funds for) any Receiver Expenditures not paid from Facility Funds. Manager's "Staff Services", which are not reimbursable by Receiver, means only the salaries and benefits of Manager's officers and home office staff, as well as Manager's home office overhead that is not specifically allocable to the Facility. Receiver shall have the right to approve the issuance of all checks in connection with the foregoing.

3.16 Data Processing. Manager shall oversee and consult with Receiver regarding the data processing required to maintain the financial, payroll, and accounting records of the Facility.

3.17 Cooperation and Transition to a New Manager. In respect of the termination or expiration of this Agreement and upon notification from Receiver that a new manager ("New Manager") to manage the Facility has been chosen, Manager agrees to use commercially reasonable efforts and take such actions as shall be reasonably necessary to insure that the management and operation of the Facility is transitioned to New Manager in an efficient and complete manner. Manager agrees to fully cooperate and comply with all reasonable requests by Receiver and New Manager for information and assistance on the Facility and its operations, including, but not limited to, employee matters, payables information, accounts receivable information, insurance matters, status of litigation involving the Facility, licensure matters, reimbursement contracts and the books and records of the Facility. Manager's obligations under this Section 3.17 shall survive the termination or expiration of this Agreement. For any activities of Manager requested under this Section 3.17 after the Termination Date that do not involve obligations of Manager already required under this Agreement but not as yet completed prior to the Termination Date, including, but not limited to, the delivery of any financial statements or information under Section 3.13 hereof, Manager will be reimbursed by Receiver for any of Manager's actual and documented out of pocket expenses incurred and will be reasonably compensated by Receiver for any material efforts made at the request of Receiver.

3.18 Facility Funds. For purposes hereof, "Facility Funds" shall be defined as all uncommitted funds, except the Administrative Reserve Fund, available in the operating account of the receivership estate resulting from Manager's operation of the Facility.

3.19 Financial and Operational Responsibilities. Manager hereby covenants and agrees with Receiver to undertake, pay, perform and discharge all its obligations as set

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol

forth in Section 2 of that certain Mt. St. Francis Agreement by and among Mt. St. Francis Associates, L.P., Antonio L. Giordano and Manager dated June 19, 2006.

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

ARTICLE IV

RIGHTS AND DUTIES OF RECEIVER

During the Term of this Agreement and subject to Receiver's rights set forth in Section 1.1 hereof:

4.1 Right of Inspection. Receiver shall have the right to enter upon any part of the Facility upon reasonable advance notice to Manager for the purpose of examining or inspecting same or examining or making extracts of books and records of the Facility, but the same shall be done with as little disruption to the business of the Facility as possible. However, the books and records of the Facility shall not be removed from the Facility without the express written consent of Manager. Receiver acknowledges that some books and records will be maintained at Manager's principal place of business and Receiver shall have access thereto as if such books and records were maintained at the Facility.

Receiver shall direct all inquiries regarding operations, procedures, policies, employee relations, patient care, and all other matters concerning the Facility to the President and CEO of Manager.

4.2 Cooperation with Manager. Receiver will cooperate in all reasonable respects with Manager in operating and supervising the operations of the Facility.

4.3 Administrative Reserve Fund. From the cash presently on hand at the Commencement Date, the Receiver shall segregate the sum of Seventy-Five Thousand Dollars ($75,000.00), to which Manager shall add the sum of One Hundred Twenty-Five Thousand Dollars ($125,000.00)by July 15, 2006, to comprise an Administrative Reserve Fund of Two Hundred Thousand Dollars ($200,000.00). Said Administrative Reserve Fund shall not be used for operating expenses of the Facility, unless agreed to by Receiver and approved by the appointing court, and shall be available to the Receiver, upon Court approval, for fee applications of the Receiver, for professional fees incurred by the Receiver, and for other administrative expenses of the Receivership Estate. Said Administrative Reserve Fund shall be replenished on a regular basis to the sum of Two Hundred Thousand Dollars ($200,000.00).

4.4 Operating Capital. Consistent with Manager's obligation under that certain Agreement by and among it, Antonio L. Giordano and Mt. St. Francis Associates, L.P. dated June 19, 2006, Manager agrees to provide operating capital loans to the Receiver, subject to appropriate documentation and in such amounts and on such

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

terms as the Receiver shall approve, and subject to the approval of the appointing court, for the continued operations of the Facility during the term of this Agreement. Such operating capital loans shall be repaid on a priority basis as an administrative expense of the Receivership Estate, and shall bear interest at the rate of eight percent (8%) per annum.

4.5 Break-Up Fee. Provided that Manager shall have submitted a bid to acquire the Facility for a price of not less than $8 Million, Receiver and Manager agree, that Manager shall be entitled to recover from the sale proceeds the sum of $250,000.00 as a break-up fee ("Break-Up Fee"). The Break Up fee shall be paid in the event that Manager is not the successful bidder or in the event that the next highest bid is $250,000.00 greater than the Manager's initial bid, whether or not Manager is the successful bidder. In such event, if Manager is the successful bidder, Manager shall be entitled to credit the Break-Up Fee to the purchase price approved by the court at closing. In the event that the Manager is not the successful bidder, the Manager shall be paid the Break-Up Fee from the sale proceeds at closing. The parties acknowledge that any competitive bid process will require as a condition an initial "topping" bid of at least in excess of $250,000.00 in order for that bid to be considered by the court.

## ARTICLE V

## COMPENSATION AND DISTRIBUTIONS

5.1 Management Fees. As full and exclusive compensation for all of the services to be rendered by Manager during the Term of this Agreement, assuming sufficient monies are available to the Receiver in excess of the Administrative Reserve Fund, Receiver shall pay to Manager on the first day of each calendar month, beginning on July 1, 2006, at its principal office, or at such other place as Manager may from time to time designate in writing:

(a) A monthly fee (the "Base Management Fee") equal to six percent (6%) of Gross Revenues of the Facility derived for each calendar month (or portion thereof) of the Term. The Base Management Fee shall be calculated based upon the Gross Revenues of the Facility during the preceding month (or portion thereof) as set forth in the monthly statements delivered by Manager to Receiver under Section 3.13 hereof.

For the purposes of determining the Base Management Fee, "Gross Revenues" means, for any period, all revenues and income of any kind actually realized directly and indirectly by Receiver during such period, including rental or other payment from concessionaires, licensees, tenants, and other users of the Facility managed by Manager pursuant to this Agreement, and from the sale of products and/or the furnishing of services, but excluding therefrom all bequests, gifts, or similar donations, as determined

on an accrued basis in accordance with standard accounting procedures consistently applied, less any overpayments or repayments and further excluding:

(i) federal, state, and municipal excise, sales and use taxes collected directly from patients as a part of the sales prices of any goods or services;

(ii) proceeds of any life insurance policies;

(iii) gains or losses arising from the sale or other disposition of capital assets;

(iv) any reversal or accrual of any contingency or tax reserve;

(v) any discounts granted;

(vi) advances or other borrowed funds; and

(vii) interest earned on sinking fund, special security accounts, bonds funds, etc. originally and specifically formed as a requirement of any bond issue (if any) utilized to finance the Facility.

5.2 Carryover of Unpaid Management Fees. In the event that any portion of the Management Fees are not paid when due, interest shall accrue on such unpaid amount at a rate per annum equal to the prime rate of Citibank, N.A. then in effect, plus two percent (2%), and such total amount shall be carried over and be payable on the immediately succeeding Payment Date. When past due Management Fees are paid, the fees shall be paid in the order in which they were earned. Any and all accrued and unpaid Management Fees shall become immediately and fully payable by Receiver upon the expiration or any termination of this Agreement, regardless of the availability of Facility Funds. In the event that Manager submits a bid to acquire the Facility, Manager shall be entitled to credit against said bid the amount of any unpaid Management Fees due and owing at the time of the bid. If Manager is the successful bidder, it shall be entitled to credit against the purchase price the amount of any unpaid management fees, if any, due and owing at the time of closing.

ARTICLE VI

TERMINATION RIGHTS

6.1 Termination by Receiver. If at any time or from time to time during the Term any of the following events shall occur and, if applicable, not be remedied or agreed to by Manager within the applicable period of time herein specified, namely:

(a) Manager shall apply for or consent to the appointment of a receiver, trustee, or liquidator of Manager of all or a substantial part of its assets, file a voluntary petition in bankruptcy, make a general assignment for the benefit of creditors, file a petition or an answer seeking reorganization or arrangement with creditors or take advantage of any insolvency law, or if an order, judgment or decree shall be entered by any court of competent jurisdiction, on the application of a creditor, adjudicating Manager as bankrupt or insolvent or approving a petition seeking reorganization of Manager or appointing a receiver, trustee or liquidator of Manager or of all or substantial part of its assets, and such order, judgment or decree shall continue unstayed and in effect for any period of sixty (60) consecutive days;

(b) Manager shall fail to keep, observe, or perform any material covenant, agreement, term or provision of this Agreement to be kept, observed, or performed by Manager, and such default shall continue for a period of thirty (30) days after written notice thereof by Receiver to Manager;

(c) Manager shall, in the performance of its services hereunder, engage in self-dealing activities that involve terms and conditions that are not arms-length, commit fraud, or engage in any act (or any failure to act) that constitutes willful misconduct or gross negligence; or

(d) Any other event for which the Court determines there exists cause to terminate this Agreement;

then in case of any such event and upon the expiration of the period of grace (if any) applicable thereto, this Agreement shall terminate at Receiver's option and upon five (5) days written notice to Manager (except for a termination under Section 6.1(c), in which case said termination shall be effective upon delivery of notice). Notwithstanding the foregoing, Receiver may terminate this Agreement without cause and for no reason upon ninety (90) days prior written notice to Manager, which notice cannot be given sooner than ninety (90) days after the Commencement Date.

6.2 Termination by Manager. If at any time from time to time during the Term any of the following events shall occur and not be remedied within the applicable period of time herein specified, namely:

(a) Receiver shall fail to keep, observe, or perform any material covenant, agreement, term or provision of this Agreement to be kept, observed, or performed by Receiver (except for a payment default described in Section 6.2(b) below) and such default shall continue for a period of thirty (30) days after written notice thereof by Manager to Receiver;

True Copy Attest
Office of Clerk of Superior Courts for Providence & Br

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

(b) Receiver shall fail to make any payment required hereunder and such default shall continue for a period of thirty (30) days after written notice from Manager to Receiver;

(c) The Facility or any portion thereof shall be damaged or destroyed by fire or other casualty and (i) Receiver shall fail to undertake to repair, restore, rebuild, or replace any such damage or destruction with in forty-five (45) days after such fire or other casualty, or shall fail to complete such work diligently, and (ii) Receiver shall fail to permit Manager to undertake to repair, restore, rebuild, or replace, at Receiver's expense, any such damage or destruction within forty-five (45) days after such fire or other casualty;

(d) All or any portion of any Management Fee which is earned (including interest accrued thereon) remains unpaid to Manager after the date that is ninety (90) days after the last day of the month to which such Management Fee relates; or

(e) The Facility is no longer covered by professional liability and general liability insurance policies;

then in case of any such event and upon the expiration of the period of grace (if any) applicable thereto, this Agreement shall terminate at Manager's option and upon five (5) days written notice to Receiver. Notwithstanding the foregoing, Manager may terminate this Agreement upon written notice, without cause and for no reason, such termination to be effective on the date specified in the notice at any time after the expiration of one hundred eighty (180) days after the Commencement Date; provided, however, that Manager shall continue to perform its duties hereunder for such time as is reasonably necessary for the Receiver to obtain a replacement manager.

6.3 Termination Upon Acquisition by Manager. This Agreement shall terminate automatically and shall be null and void, in the event that Manager is the successful bidder to acquire the Facility, and upon the completion of a Closing on said acquisition.

6.4 Surviving Rights Upon Termination. If either party exercises its option to terminate pursuant to this Article VI, each party shall account for and pay to the other all sums due and owing pursuant to the terms of this Agreement within thirty (30) days after the effective date of termination. Without limiting the generality of the foregoing, within thirty (30) days after the effective date of termination of this Agreement, Receiver shall be obligated to pay to Manager all accrued and unpaid Base Management Fees, and the reimbursable expenses of Manager, together with all accrued and unpaid interest thereon, notwithstanding the available Facility Funds may not be sufficient for such purposes. All other rights and obligations of the parties under this Agreement

shall terminate (except as set forth in Article VII, Article VIII, Section 3.17, Section 6.4 and Section 6.5 hereof).

6.5 Cooperation After Termination. Upon the expiration or earlier termination of this Agreement, Manager shall cooperate fully with Receiver in effecting an orderly transition to avoid any interruption in the rendering of the above-described services to the Facility and, in such event, shall promptly surrender to Receiver or New Manager all keys, contracts, other documents and records maintained by Manager in connection with the operations of each Facility as soon as practical but in no event later than three (3) days from the Termination Date. In addition, upon the expiration or earlier termination of this Agreement, Manager shall return to Receiver or New Manager all original documents and all copies thereof, except for one copy which Manager may maintain for record purposes only, which relate in any way to the performance of services hereunder, and the operation and maintenance of the Facility, including, without limitation, personnel records, resident records, purchase orders, material receiving reports, checks, vouchers, and all bills of accounts however maintained, whether in written form or magnetic media, in the possession, custody or control of Manager. Further, Manager shall cooperate fully with Receiver and Receiver's accountants and other representatives in respect of the preparation of annual financial statements or other reports that may be required for the Facility relating to Manager's operation of the Facility during the period covered by the Term of this Agreement; provided, however, that any requests of Manager made after the Termination Date that do not involve obligations of Manager already required under this Agreement but not as yet completed prior to the Termination Date, including, but not limited to, the delivery of any financial statements or information under Section 3.13 hereof, Manager will be reimbursed by Receiver for any of Manager's accrual and documented out of pocket expenses incurred and will be reasonably compensated by Receiver for any material efforts made at the request of Receiver.

ARTICLE VII

INDEMNIFICATION; EXPENDITURE LIMITATION

7.1 Indemnification of Receiver by Manager. Manager shall indemnify and hold Receiver and Receiver's officers, directors, shareholders, members, managers, employees and affiliates harmless from any and all claims, losses, judgments, damages, expenses and liabilities whatsoever (including reasonable attorneys' fees) incurred by any of them in connection with, by reason of, or arising out of: (a) the breach or failure of any representation, warranty, covenant or obligation of Manager that is contained in this Agreement or (b) any third party claims which are caused by Manager in whole or in part through any negligent act, willful omission, fraud or self-dealing activities that involve terms and conditions that are not arms-length in connection with the

Office of Clerk of Superior Court

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

performance of Manager's duties or obligations under this Agreement. Manager's obligations under this Section 7.1 shall survive termination of this Agreement.

7.2 Indemnification of Manager by Receiver. Receiver shall indemnify and hold Manager and Manager's officers, directors, shareholders, employees and affiliates harmless from any and all claims, losses, judgments, damages, expenses and liabilities whatsoever (including reasonable attorneys' fees) incurred by any of them in connection with, by reason of, or arising out of: (a) Manager's performance of services or undertaking of responsibilities in compliance with the terms and conditions of this Agreement; (b) the breach or failure of any representation, warranty, covenant or obligation of Receiver that is contained in this Agreement; or (c) any damage to property, or injury or death to persons, occurring in or with respect to the Facility; excluding, however, for clauses (a), (b) and (c) any matters covered by Manager's indemnity under Section 7.1 hereof. Receiver's obligations under this Section 7.2 shall survive termination of this Agreement, but only until such time as the Court terminates or closes the Receivership case (except to the extent that the Court retains jurisdiction or reopens the case).

7.3 Control of Defense of Indemnifiable Claims. The indemnified party shall promptly notify the indemnifying party of any such claim and shall provide the indemnifying party with all available evidence to enable the indemnifying party to defend such claim. The indemnifying party shall have the sole and exclusive right to select counsel and shall pay all expenses of the defense, including, without limitation, attorneys' fees and court costs. If necessary, the indemnified party shall join as a party to the suit, but shall be under no obligation to participate except to the extent that such participation is required as a result of being a named party to the suit. The indemnified party shall offer reasonable assistance to the indemnifying party in connection therewith at no charge tot he indemnifying party except for reimbursement of reasonable out-of-pocket expenses incurred by the indemnified party in rendering such assistance. The indemnified party shall have the right to participate and be represented in any such suit by its own counsel at its own expense. The indemnifying party shall not settle any such suit is such settlement would have an adverse effect on the rights of the indemnified party without obtaining the prior written consent of the indemnified party, which consent shall not be unreasonably withheld. It is the intention of the parties that, in the event that the indemnifying party wrongfully denies its indemnification obligations hereunder, and the indemnified party is required to enforce the indemnifying party's obligation hereunder, then the indemnified party shall be entitled to recover its reasonable attorneys' fees and costs incurred therein.

7.4 Limitation of Expenditure Obligation. Notwithstanding anything to the contrary in this Agreement, Manager shall have no obligation whatsoever to make any advance to or for the account of Receiver, or to pay any amount contemplated for, or required of, Manager under this Agreement, or to incur any expenditure obligation –

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

whether ordinary or capital - except to the extent that funds are available for such purpose (in Manager's reasonable judgment) either from working capital or capital funds provided by Receiver, from operating capital loans of Manager as referenced in Section 4.4 hereof, or otherwise from the facility Funds. Moreover, if Manager so requests, from time to time, Receiver shall sign, as principal, any contract or agreement which Manager is authorized or required to execute pursuant to this Agreement to evidence that Manager is acting with the Authority of the Receiver.

## ARTICLE VIII

## CONFIDENTIALITY; NON-SOLICITATION

8.1 Non-Disclosure of Confidential Information. Receiver acknowledges that Manager's business involves the development and use of Confidential Information (defined below) and that Manager will make available such Confidential Information to Receiver and to the Facility in connection with Manger's duties under this Agreement. Manager acknowledges that Receiver and the Facility business involves the development and use of Confidential Information and that Receiver and the Facility will make available such Confidential Information to Manager in connection with Manager's duties under this Agreement. Except as Receiver and Manager may disclose to landlords to the Facility or the holders of secured debt on the Facility or to its respective lenders, investors or advisors or in fulfillment of their duties and responsibilities under this Agreement or as may be required to be disclosed by Receiver, the Facility and Manager by law, the parties and their respective officers, directors, employees or agents shall not, at any time during or after the term of this Agreement, divulge, furnish or make accessible Confidential Information to any person or entity for any purpose whatsoever. "Confidential Information" means any confidential or proprietary information, including, without limitation, manuals, forms, policies and procedures, computer programs, system documentation and related software, patient records and patient information and any other information of any kind with respect to the finances, business plans or business operations of the parties, provided, however that Confidential Information does not include information which (a) is generally available to the public other than as a result of disclosure by the receiving party, (b) was available to the receiving party on a non-confidential basis prior to its disclosure to the receiving party by the disclosing party, or (c) becomes available to the receiving party on a non-confidential basis from a source other than the disclosing party.

8.2 Non-use and Return of Materials. Effective upon a termination of this Agreement for any reason whatsoever, the parties and their respective officers, directors, managers, employees and agents shall not use any Confidential Information of the other party for any purpose whatsoever, including, but not limited to, use in connection with the operation and management of the Facility.

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

8.3 Non-Solicitation. In the event that Manager is the successful bidder to acquire the Facility, Receiver agrees that for the entire Term of this Agreement and for twelve (12) months after the date that this Agreement is terminated, Receiver shall not entice, induce, directly or indirectly, any employee to leave the employ of Manager to work with or for Receiver, or to work with any persons or entity with whom Receiver becomes affiliated. Manager acknowledges that Receiver with court approval will market the Facility and its assets for sale and Manager hereby acknowledges that such marketing is not inconsistent with the terms hereof.

8.4 Remedies. The parties agree that an aggrieved party who is the beneficiary of any restriction contained herein may not be adequately compensated for damages for a breach of the covenants contained in this Article VIII, and such aggrieved party shall be entitled to injunctive relief and specific performance in addition to all other remedies. If the appointing court shall finally determine that the restraints provided for in this Article VIII, are too broad as to the activity, geographic area or time covered, said activity, geographic area or time covered will be reduced to whatever extent the court deems necessary, and such covenant shall be enforced as to such reduced activity, geographic area or time period.

8.5 Nothing contained herein shall restrict the Receiver from disseminating information relating to the financial performance of the Facility, including the reports, budgets and other financial data generated by Manager or any other party in connection with this Agreement or otherwise.

ARTICLE IX

REPRESENTATIONS AND WARRANTIES

9.1 Organization and Standing of Receiver. Receiver represents and warrants to Manager that it is the duly appointed receiver for Mt. St. Francis Associates, L.P., and that the Receiver is authorized to enter into this Agreement in accordance with the Order appointing him and the Order approving this Agreement.

9.2 Absence of Conflicting Agreements. Receiver represents and warrants to Manager that, to the best of the Receiver's knowledge, information, and belief, neither the execution or delivery of this Agreement, including all Exhibits hereto, or any of the other instruments and documents required or contemplated hereby and thereby (collectively, the "Transaction Documents") by it, nor the performance by it of the transactions contemplated hereby and thereby, conflicts with, or constitutes a breach of or a default or requires the consent of any third party (except consents already obtained) under (a) the Articles of Incorporation, Bylaws or Partnership Agreement of it; or (b) to the best of its knowledge, any applicable law, rule, judgment, order, writ,

injunction, or decree of any court, currently in effect; or (c) to the best of its knowledge, any applicable rule or regulation of any administrative agency or other governmental authority currently in effect; or (d) any agreement, indenture, contract or instruments to which it is now a party or by which it assets are bound.

9.3 Organizing and Standing of Manager. Manager represents and warrants to Receiver that Manager is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Rhode Island. Manager has the power and authority to own the property and assets now owned by it and to conduct the business presently being conducted by it.

9.4 Absence of Conflicting Agreements. Manager represents and warrants to Receiver that, to the best of Manager's knowledge, information, and belief, neither the execution or delivery of this Agreement, including all Exhibits hereto, or any of the Transaction Documents by Manager, nor the performance by Manager of the transactions contemplated hereby and thereby, conflicts with, or constitutes a breach of or a default or requires the consent of any third party (except consents already obtained) under (a) the operating agreement of Manager; or (b) to the best of its knowledge, any applicable law, rule, judgment, order, writ, injunction, or decree of any court, currently in effect; or (c) to the best of its knowledge, any applicable rule or regulation of any administrative agency or other governmental authority currently in effect; or (d) any agreement, indenture, contract or instrument of which Manager is now a party or by which the assets of Manager are bound.

## ARTICLE X

## SUCCESSORS AND ASSIGNS

10.1 Assignments by Manager. Manager, without the consent of Receiver, shall have the right to assign this Agreement to a wholly or majority owned subsidiary of Manager; provided, however, that Manager shall not thereby be released from its obligations hereunder, and provided, further, that any such assignment shall be subject to Court approval. In the event that all or substantially all the assets of Manager or its limited liability company membership interests shall during the term of this Agreement be acquired by another corporation or other entity (hereinafter referred to as the "Acquiring Corporation") as a result of a merger, consolidation, reorganization, or other transaction, and the Acquiring Corporation assumes all of the obligations of Manager then accrued hereunder, if any, then Manager shall be relieved of all such obligations (and such Acquiring Corporation shall be relieved of liability hereunder if it subsequently is involved in such acquisition), and such transaction shall be subject to court approval. Except as otherwise permitted herein, Manager shall have no right to assign this Agreement.

Office of Clerk of Superior Court
Counties of Providence & Bristol

10.3 Binding Effect. This Agreement shall be binding upon the respective successors, assigns and legal representatives of the parties hereto and shall inure to the benefit of and be enforceable by the parties hereto and their respective successors, assigns and legal representatives.

ARTICLE XI

MISCELLANEOUS PROVISIONS

11.1 Notices. Any notice or communication by any party to the other shall be in writing and shall be given and be deemed to have been duly given, upon the date delivered if delivered personally (including by commercial express service or by facsimile transmission (with a copy sent by regular mail)) or upon the date received if mailed postage pre-paid, registered express, or certified mail, addressed as follows:

To Manager: ASLC of RI I, LLC
3 College Avenue, Suite 3
Frederick, MD 21701
Attention: Jeffrey A. Barnhill, CFO
Facsimile Number: (717) 938-9131

To Receiver: Joseph P. Ferrucci
55 Pine Street
Providence, RI 02903
Facsimile Number: (401) 455-7778

True Copy Attest
Office of Clerk of Superior Cou
Counties of Providence & Brist
Providence, Rhode Island

or to such other address, and to the attention of such other person or officer as any party may designate in writing by notice.

11.2 No Partnership or Joint Venture. Nothing contained in this Agreement shall constitute or be construed to be or create a partnership or joint venture between Receiver, its successors, or assigns on the one part and Manager, its successors, or assigns on the other part. Notwithstanding the foregoing, the parties hereby agree that they shall each have a duly to act in good faith and to deal fairly with the other party hereto.

11.3 Modifications and Changes. This Agreement cannot be changed or modified except by another agreement in writing signed by Receiver and Manager, and approved by the appointing court.

11.4 Understanding and Agreements. This Agreement constitutes the entire understanding and agreement of whatsoever nature or kind existing between the

True Copy Attest
Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island

parties with respect to Manager's management of the Facility and all prior negotiation and agreements (if any) pertaining to the subject matter hereof are merged into this Agreement.

11.5 Headings, Etc. The article and paragraph headings contained herein are for convenience of reference only and are not intended to define, limit, or describe the scope or intent of any provision of this Agreement. The Exhibits attached hereto form part of this Agreement.

11.6 Approval of Consent. Whenever under any provisions of this Agreement, the approval or consent of each party is required, the decision thereon shall be promptly given and such approval or consent shall not be unreasonably withheld, unless this Agreement expressly provides that a decision shall be made in a party's sole discretion. For all purposes under this Agreement, Manager shall determine solely from the latest such notification received by it the person or persons authorized to give such approval or consent. Manager shall rely exclusively and conclusively on the designation set forth in such notification, notwithstanding any notice of knowledge to the contrary.

11.7 Governing Law. THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE AND SHALL BE CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF RHODE ISLAND , WITHOUT REGARD TO ITS LAWS REGARDING CONFLICTS OF LAW. THE PARTIES HERETO AGREE THAT ANY SUIT, ACTION OR OTHER LEGAL PROCEEDING IN CONNECTION WITH THIS AGREEMENT SHALL BE BROUGHT IN THE COURTS OF STATE OF RHODE ISLAND OR IN THE COURTS OF THE UNITED STATES FOR THE STATE OF RHODE ISLAND. THE PARTIES HERETO WAIVE ANY OBJECTION TO SUCH JURISDICTION AND VENUE IN ANY OF SUCH COURTS.

11.8 Enforceability. Should any provision of this Agreement be unenforceable as among the parties, such unenforceability shall not affect the enforceability of the other provisions of this Agreement.

11.9 Counterparts. This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

11.10 No Personal Liability. The parties hereto agree that the liability of Manager under the terms of this Agreement shall be limited solely to assets of Manager, it being intended that no officers, managers or members of Manager shall be deemed personally liable for any judgment, costs or damages incurred by Manager hereunder, and that the liability of Receiver under the terms of this Agreement shall be limited solely to the assets of the receivership estate, it being intended that neither Receiver nor

its representatives, agents, offices and professionals shall be deemed personally liable for any judgment, costs or damages incurred by Receiver hereunder, or for any Break-Up Fee for which insufficient Facility Funds.

11.11 Approval of this Agreement. This Agreement shall be subject to the approval of the Rhode Island Superior Court.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Management Agreement as of the date first above written.

MANAGER:

ASLC Management of RI I, LLC

By: ____________________
Name: Jeffrey A. Bartlett
Title: CFO

JOSEPH P. FERRUCCI, as RECEIVER and only as RECEIVER for MT. ST. FRANCIS ASSOCIATES, L.P.

____________________ Receiver

True Copy Attest

Office of Clerk of Superior Court
Counties of Providence & Bristol
Providence, Rhode Island