| | | |
|---|---|---|
| STATE OF RHODE ISLAND<br>PROVIDENCE, SC. | : | SUPERIOR COURT |
| ANTONIO L. GIORDANO,<br>Plaintiff | : | P.M. No.: P.B. 06-3301 |
| v. | : | |
| MT. ST. FRANCIS ASSOCIATES, L.P.<br>Defendant | : | |

**RESPONSE OF THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT TO RECEIVER'S PETITION TO SELL REAL ESTATE AND BUSINESS ASSETS FREE AND CLEAR OF LIENS**

The Secretary of Housing and Urban Development ("HUD"), by his attorney, Robert Clark Corrente, United States Attorney for the District of Rhode Island, responds to Receiver's Petition to Sell Real Estate and Business Assets Free and Clear of Liens ("Receiver's Petition to Sell"), as follows:

1. The defendant, Mt. St. Francis Associates, L.P. ("Mt. St. Francis"), is a Rhode Island limited partnership whose principal asset is a nursing home, Mt. St. Francis Health Center, located in Woonsocket, Rhode Island.

2. The plaintiff, Antonio L. Giordano ("Giordano"), is the general partner of Mt. St. Francis.

3. This nursing home owned by Mt. St. Francis is encumbered by a mortgage insured by HUD against a default by Mt. St. Francis under Section 232 of the National Housing Act ("NHA"), 12 U.S.C. § 1715w, and a supplemental mortgage insured by HUD against a default by Mt. St. Francis under Section 232 pursuant to Section 223(d) of the NHA, 12 U.S.C. §§ 1715w, 1715n(d).[1]

GOVERNMENT EXHIBIT 15

[1] HUD has raised its concerns with the Receiver and the management company for the health center, ASLC Management of RI I, LLC ("ASLC"), regarding Paragraph No. 5 in the Court's Order Granting

4. Pursuant to the mortgage insurance provisions of the NHA, 12 U.S.C. § 1715w(c), the Secretary of HUD "is authorized to insure any mortgage . . . upon such terms and conditions as he may prescribe."[2] Pursuant to 24 C.F.R. § 200.105(a), "as long as the Commissioner is the insurer or holder of the mortgage, the Commissioner[3] shall regulate the mortgagor by means of a regulatory agreement providing terms, conditions and standards established by the Commissioner, or by such other means as the Commissioner may prescribe."

5. In consideration of HUD's agreement to insure these mortgages, Mt. St. Francis entered into a Regulatory Agreement with HUD ("Regulatory Agreement") dated July 13, 1995 and recorded July 14, 1995, in Book 999, Pages 73 – 78 in the Records of Land Evidence of Woonsocket, Rhode Island, as authorized by 12 U.S.C. § 1715w(c) and 24 C.F.R. § 200.105(a). A copy of the Regulatory Agreement is attached hereto and incorporated herein as Exhibit ("Ex.") 2.

---

Receiver Permission to Enter into a Third Extension Agreement entered on January 17, 2008 ("Ct. Order"). This paragraph provides, as follows:

> ASLC shall not be obligated to continue to make monthly mortgage payments to Midland Loan Services, Inc., assignee of Suburban Mortgage Associates Incorporated ("Lender"), pursuant to those promissory notes of Defendant in favor of Lender ("Notes"), until the closing date of the real estate or forty-five (45) days from January 11, 2008, whichever shall first occur. Such suspended monthly payments shall be added to the end of the current term of the Notes.

(Ct. Order, ¶ 5.) HUD's concerns include the lack of prior notice to HUD regarding bringing this issue to the Court's attention and the potential triggering of HUD's assignment process and HUD's note sale process by the lender declaring a default if ASLC does not make timely payments in accordance with the terms of the mortgage notes, thereby preventing ASLC from acquiring the health center.

[2] Other terms and conditions set forth in the applicable insurance provisions of the NHA include: the insured "'mortgage' means a first mortgage on real estate . . ." (12 U.S.C. § 1715w(b)(4)); "the mortgage shall be executed by a mortgagor approved by the Secretary" (12 U.S.C. § 1715w(d)(1)); this mortgagor may be "regulated or restricted as to charges and methods of financing . . . ." (Id.)

[3] "Commissioner" refers to the Federal Housing Commissioner, who is also an Assistant Secretary for Housing. The Federal Housing Administration is a component of HUD.

6. HUD and Mt. St. Francis subsequently executed a First Amendment to Regulatory Agreement on June 22, 1999, upon Mt. St. Francis' obtaining an operating loss loan secured by the supplemental mortgage referenced in Paragraph No. 3 above. A copy of the First Amendment to Regulatory Agreement is attached hereto and incorporated herein as Ex. 2.

7. Giordano signed both the Regulatory Agreement and the First Amendment to Regulatory Agreement on behalf of Mt. St. Francis. (Ex. 2.)

8. The Regulatory Agreement imposes certain obligations and restrictions on Mt. St. Francis and gives HUD certain rights over the business operation of Mt. St. Francis. As set forth in the preamble to the Regulatory Agreement, Mt. St. Francis entered into the Regulatory Agreement in consideration of the loan insurance provided by HUD.[4]

9. Paragraph 6 of the Regulatory Agreement provides in pertinent part:

> Owners shall not without the prior written approval of the Secretary:
>
> (a) Convey, transfer, or encumber any of the mortgaged property, or permit the conveyance, transfer or encumbrance of such property.
>
> (b) Assign, transfer, dispose of, or encumber any personal property of the project, including rents, or pay out any funds except from surplus cash, except for reasonable operating expenses and necessary repairs.

---

[4] The preamble of the Regulatory Agreement states:

> In consideration of the endorsement for insurance by the Secretary of the above described note or in consideration of the consent of the Secretary to the transfer of the mortgaged property or the sale and conveyance of the mortgaged property by the Secretary, and in order to comply with the requirements of the National Housing Act, as amended, and the Regulations adopted by the Secretary pursuant thereto, Owners agree for themselves, their successors, heirs and assigns, that in connection with the mortgaged property and the project operated thereon and so long as the contract of mortgage insurance continues in effect, and during such further period of time as the Secretary shall be the owner, holder or reinsurer of the mortgage, or during any time the Secretary is obligated to insure a mortgage on the mortgaged property.

(Ex. A, Preamble.)

> (c) Convey, assign, or transfer . . . the interest of any general partner in a partnership owing the property, or any right to manage or receive the rents and profits from the mortgaged property.

(Ex. 2, ¶ 6.)

10. The term "Project" is defined in Paragraph 13(e) of the Regulatory Agreement to include "the mortgaged property and all its other assets of whatsoever nature or whatsoever situate, used in or owned by the business conducted on said mortgaged property, which business is providing housing and other activities as are incidental thereto . . ." (Ex. 2, ¶ 13(e).)

11. The Receiver in his Petition to Sell details the terms and conditions of the proposed sale of Mt. St. Francis Health Center and its assets to ASLC or ASLC's nominee pursuant to a Real Estate Purchase Agreement and Offer to Purchase ("Purchase Agreement"), dated January 28, 2008, and attached to the Receiver's Petition to Sell as Ex. B.

12. Section 3 of this Purchase Agreement provides that "[t]he conveyance and transfer of the Premises is expressly made subject to approval of the Providence County Superior Court . . ." and that this conveyance is "free and clear of all liens, mortgages, security interests, claims, encumbrances and interests. . . ." (Receiver's Petition to Sell, Ex. B., § 3, p. 2.)

13. Section 3 of the Purchase Agreement further provides that "[t]he conveyance of the Premises shall be subject to all restrictions, easements and conditions of record, and subject to all applicable zoning and other federal, state and municipal laws and regulations." (Id.)

14. Section 5 of the Purchase Agreement provides, as follows:

> (i). Buyer shall assume all of the existing indebtedness relating to those promissory notes originally granted by Defendant in favor of Suburban Mortgage Associates, Inc., as assigned to Midland Loan Services, Inc. (the "Notes") totaling approximately NINE MILLION THREE HUNDRED THOUSAND AND 00/100 DOLLARS ($9,300,000), which Notes are secured by mortgages on the Premises. To the extent that the Court may, at any time hereafter, conclude that some or all of the mortgage liens securing said Notes are invalid or should be subordinated to some other debt(s) or claim(s), then Buyer shall make payments on the Notes, when and as same become due and payable, directly to the Receivership Estate.

(Receiver's Petition to Sell, Ex. B, § 5(i), p. 3.)

15. Although this Purchase Agreement does not specifically state that the Receiver and ASLC must obtain HUD's prior written consent to this sale of the health center and its assets in accordance with HUD's Regulatory Agreement and the applicable provisions of the NHA, Section 3 of the Purchase Agreement as detailed in Paragraph No. 13 above appears to implicitly acknowledge the governing effect of HUD's Regulatory Agreement and the NHA.

16. Further, ASLC, Mt. St. Francis, and Giordano acknowledged the necessity to obtain HUD approval as a condition precedent to the management and the acquisition of the health center by ASLC in their June 19, 2006 agreement, as referenced in Paragraph 3 of the Receiver's Petition to Sell and attached as Ex. A to the Motion to Prove Administrative Claim of Antonio L. Giordano ("Giordano's Mot."). (Receiver's Petition To Sell, ¶ 3; Giordano's Mot., Ex. A, p.1.)

17. HUD's authority under the Regulatory Agreement continues despite this receivership action, which is a state insolvency proceeding. "Every court which has considered the question has determined that the [National Housing Act] empowers HUD to enforce its prepetition rights under a Regulatory Agreement notwithstanding the initiation of a chapter 11 proceeding by or against the NHA borrower." Indian

Motocycle Associates III Ltd. P'ship v. Massachusetts Hous. Fin. Agency, 66 F.3d 1246, 1250 (1st Cir. 1995); see also United States v. Harvey, 68 F.Supp.2d 1010, 1017 (S.D.Ind. 1998)("the importance HUD attaches to the project's ironclad observance of the terms of the Regulatory Agreement cannot be contested"). Thus, the proposed sale to ASLC or its nominee cannot occur without prior written HUD approval.

18. HUD has requirements for Transfer of Physical Assets ("TPA"), which are transactions involving the change in the ownership of a project upon which there is a mortgage loan insured or held by HUD. The proposed transfer of the health center and its assets from Mt. St. Francis and its receiver to ASLC or ASLC's nominee is a TPA that falls under HUD requirements for a TPA.

19. These TPA requirements are set forth in Handbook 4350.1-REV-1, entitled Multifamily Asset Management and Project Servicing. (See http://www.hud.gov/offices/adm/hudclips/handbooks/hsgh/4350.1/index.cfm.) The specific instructions and procedures for TPAs are detailed in Chapter 13 of this handbook, entitled Change in Ownership: Transfer of Physical Assets. (Ex. 13.) Chapter 13 contains the form HUD-92266, Application for Transfer of Physical Assets, and its underlying instructions, as well as procedures for processing a full review transfer, procedures for processing modified review transfers and procedures for legal review of TPA proposals.[5] (Ex. 13.) A copy of form HUD-92266, Application for Transfer of Physical Assets, is attached hereto and incorporated herein as Ex. 14.

---

[5] There are other miscellaneous administrative guidance on TPAs, including Housing Notice H 95-66, on the subject, "Requirements for Accepting Limited Liability Companies and Partnerships as Mortgagor Entities for Insured Multifamily Housing Projects." This notice implements instructions regarding a TPA to a limited liability company ("LLC") and the transfer of interests to new members in a LLC mortgagor.

20. The TPA process involves both the Preliminary Approval Process and the Final Approval Process as detailed in Ex. 14. HUD's review of a TPA incorporates multiple facets, such as mortgage payments, assumption of mortgage debt, purchaser's previous participation in HUD programs and completion of the 2530 process, management agent, capital repairs, replacement reserve funding, organizational structure.

21. Thus, HUD is not per se opposed to a sale of Mt. St. Francis and the continuation of the operation of Mt. St. Francis for the benefit of its residents, but any sale is subject to the Regulatory Agreement which requires HUD approval through its TPA process.

For the foregoing reasons, the Secretary of HUD asserts that any proposed sale of Mt. St. Francis Health Center and its assets must be subject to the prior written approval of HUD pursuant to the terms and conditions of the NHA and HUD's TPA requirements.

Respectfully Submitted

ROBERT CLARK CORRENTE
United States Attorney

LY T. NGUYEN
Assistant U. S. Attorney
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5017 (Fax)

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify on this 7th day of February, 2008, that a copy of the within RESPONSE OF THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT TO RECEIVER'S PETITION TO SELL REAL ESTATE AND BUSINESS ASSETS FREE AND CLEAR OF LIENS and attached exhibits were sent, by regular mail, to the following:

Christopher Little, Esq.
Little, Medeiros, Kinder, Bulman & Whitney, P.C.
72 Pine Street, 5th Floor
Providence, RI 02903

Charles A. Lovell
Partridge Snow & Hahn LLP
180 South Main Street
Providence, RI 02903

Genevieve M. Martin, Esq.
Assistant Attorney General
150 South Main Street
Providence, RI 02903

Jonathan Savage, Esq.
Schechtman Halperin Savage
1080 Main Street
Pawtucket, RI 02860

Terry Biafore, Sr.
Babcock & Hellwell, Inc.
138 Main Street
Wakefield, RI 02879

Deborah B. Buffi, Esq.
Deputy Chief Legal Counsel
R.I. Department of Human Services
600 New London Ave., BDG 57
Cranston, RI 02920

Lisa Daniels-Burgo, Esq.
HUD
121 South Main Street, Ste. 300
Providence, RI 02903

Allan M. Shine, Esq.
Winograd Shine & Zacks
123 Dyer Street
Providence, RI 02903

Marc D. Wallick, Esq.
Wallick & Associates Ltd.
51 Jefferson Boulevard
Warwick, RI 02888

Jane E. Joly
Accounting Manager Client Rep
MMJUA of RI
10 Weybosset Street, Ste. 502
Providence, RI 02903

Maureen Hobson, Esq.
R.I. Department of Health
3 Capital Hill, Room 404
Providence, RI 02908

Division of Taxation
State of Rhode Island
1 Capitol Hill, Ste. 7
Providence, RI 02909

Douglas A. Giron, Esq.
Schechtman Halperin Savage LLP
1080 Main Street
Pawtucket, RI 02906

I further certify on the 7th day of February, 2008, that a copy of the within RESPONSE OF THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT TO RECEIVER'S PETITION TO SELL REAL ESTATE AND BUSINESS ASSETS FREE AND CLEAR OF LIENS and attached exhibits were hand-delivered to the following:

Edward L. Maggiacomo, Esq.
Adler Pollock & Sheehan P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-1345

Jeffrey Brenner, Esq.
Nizxon Peabody LLP
One Citizens Plaza, Ste. 500
Providence, RI 02903

Joseph Ferrucci, Esq.
Ferrucci Russo P.C.
55 Pine Street
Providence, RI 02903